## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**ANTONY VO,**

       **Defendant.**

**Case No. 1:21-cr-0509 (TSC)**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INFORMATION

Dated: June 29, 2022

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
D.C. Bar No. 1031486
625 Indiana Ave. NW, Ste. 550

Nandan Kenkeremath
DC Bar No. 384732

*Counsel for Defendants*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………i

**BACKGROUND**…………………………………………………………………………...1

**ARGUMENT**…………………………………………………………………………....3

**I.    Legal Standard**…………………………………………………………………3

*A.   Initial General Standard for a Motion to Dismiss for Failure
to State an Offense*……………………………………………………………3

*B.   The I&A Must Sufficiently Allege Facts Regarding All Necessary
Elements Which, If Proven, Would Constitute A Crime Under the
Relevant Criminal Statutes*……………………………………………………3

*C.   Courts Apply Doctrines that Limit Ambiguous Terms or Broad Reading
When Construing the Reach of Criminal Statutes*……………………………6

**II.   The I&A Fail to Provide Necessary Allegations of Fact
to Properly State an Offense Under 18 USC §1752(a)(1)**……………………7

*A.   The I&A Fail to Allege the Elements Required to Identify that Mr. Vo
Entered a "Restricted Area" Under 18 USC §1752(a)(1) By Not
Identifying the Necessary Posting, Cordon or Other Restriction Present
at the Time of Mr. Vo's Alleged Offense*………………………………………..7

*B.   The I&A Fail to Allege that Mr. Vo Had Knowledge He Was Entering
or Remaining in A Restricted Area*……………………………………………10

*C.   The 18 U.S.C. §1752 Counts Also Fail to State an Offense because
the United States Secret Service is the Entity that May Designate
"Restricted Areas" Under the Statute, Not the United States Capitol Police*…………11

*D.   The I&A Fails to State an Offense Under 18 U.S.C. §1752 because
Mike Pence was not "Temporarily Visiting" the Capitol Building
on January 6, 2021*……………………………………………………………..14

**III.  The I&A Fail to Provide Necessary Allegations of Fact to Properly
State an Offense Under 18 USC §1752(a)(2)**………………………………..16

*A.   The I&A Fails to Properly Identify the Restricted Area Connected to
a Time Mr. Vo Entered or Remained, which is a Necessary
Element of 18 USC §1752(a)(2)*………………………………………………..16

    **B.** *The I&A Do Not Allege Any Facts to Identify Any*
    *"Disorderly or Disruptive Conduct" Under 18 U.S.C.§1752(a)(2)* ........................16

    **C.** *The I&A Do Not Allege Any Facts to Identify That There Was*
    *the Conduct of Government Business or Official Functions Under*
    *18 U.S.C.§1752(a)(2) Occurring at the Time Mr. Vo Was in the Capitol* ...............17

    **D.** *The I&A Do Not Allege Any Facts to Show That*
    *"Disorderly or Disruptive Conduct" of Mr. Vo, "In Fact", Impeded or*
    *Disrupted the Orderly Conduct of Government Business or Official*
    *Functions Under 18 U.S.C.§1752(a)(2)* .....................................................18

**IV.** **The I&A Fail to Provide Necessary Allegations of Fact to Properly**
    **State an Offense Under 40 USC §5104(e)(2)(D)** ...........................................18

    **A.** *The I&A Do Not Allege Any Facts to Identify*
    *"Disorderly or Disruptive Conduct"* ........................................................18

    **B.** *The I&A Do Not Allege Any Facts to Identify That There Was*
    *the Necessary Conduct of Business of Congress within the Meaning*
    *of §5104(e)(2)(D) at the Time Mr. Vo Was in the Capitol Building* ....................19

    **C.** *The I&A Have Not Alleged Facts to Support that Mr. Vo*
    *Willfully and Knowingly Understood that Peacefully Entering*
    *the Capitol, Without Disobeying Any Instruction of the Many*
    *Police Officers Present, Was Conduct that Would Disrupt a Proceeding* ..............19

**V.** **The I&A Fail to Provide Necessary Allegations of Fact to Properly**
    **State an Offense Under 40 USC §5104(e)(2)(G)** ............................................20

    **A.** *The Allegations of Fact in the I&A Do Not Identify Relevant Conduct*
    *That Meet the Terms "Parade, Demonstrate, Or Picket" in Any*
    *of the Capitol Buildings* ........................................................................20

    **B.** *Congress Articulated Where Entering or Remaining in Certain*
    *Areas of the Capitol Buildings Could Constitute A Violation; Merely*
    *Entering and Remaining Cannot Be Transformed into*
    *"Parade, Demonstration or Picket"* ...........................................................20

    **C.** *The I&A Lacks Specificity by Failing to Identify Statutory Terms*
    *Allegedly Violated and Identifying the Actions That Constitute that*
    *Violation with Respect to 40 USC §5104(e)(2)(G)* ........................................20

    **D.** *The Underlying Conduct That Constitutes the Terms Parade,*
    *Demonstrate and Picket Must Be the Same on Any Given Day* ..........................20

E. *Mr. Vo's Alleged Conduct Does Not Meet the Standard in
United States v Bradley of Intruding on the Senses*………………………………………22

F. *The Allegations of Fact In the I&A Do Not Provide That
Mr. Vo Willfully and Knowingly Engaged in Conduct in the Capitol
That Was A Parade, Demonstration, or Picket*……………………………………………23

G. *A US District Court for the District of Columbia Has Ruled That A
Broad Construction of 40 USC §5104(e)(2)(G) Which Fails to Require
"Disruptive" Conduct Would Not Survive the First Amendment*……………………..23

H. *The District of Columbia Courts Apply the "Tourist Standard" When
Interpreting the Same Statutory Language Under the DC Code to
Save the Provision from Being Overbroad Under the Constitution;
The Government Has Not Alleged Conduct Beyond the Tourist
Standard*………………………………………………………………………………………24

VI. **Application of 40 USC §5104(e)(2)(G) to the Alleged Conduct
of Mr. Vo Is Unconstitutional**………………………………………………………... 26

A. *Under the First Amendment, the Legitimate Objectives of Security
and Order in the Capitol Buildings Should Be Addressed Without
Directly and Only Proscribing Certain First Amendment Activity
as Under 40 USC §5104(e)(2)(G), Particularly to the Thin
Argument Concerning Mr. Vo's Alleged Conduct*……………………………….……..26

B. *The Capitol Grounds Are a Common Site of Constitutionally
Protected Activities; Statutory Interpretation Must Not Chill Legitimate
Assembly by Connecting Lawful Assembly Outside the Capitol Building
as Basis for Defining Parade, Demonstrate or Picket Inside the Capitol*…………..26

C. *The Lack of Allegation of Verbal Police Communication to Mr. Vo
Distinguishes the Instant Case from the Other Cases Cited*…………………………..27

D. *A Broad Interpretation Applying 40 USC §5104(e)(2)(G) to Mr. Vo's
Conduct in the Capitol Is Overbroad under the First Amendment and
Violates the Fifth Amendment Requirements of Due Process Since,
in Context, the Provision is Vague, Without Standards,
and Lacks Fair Notice*……………………………………………………………………..28

VII. **The Information Should Be Dismissed for Multiplicity**……………………………..29

A. *Protections Against Multiplicity Protect Against Double Jeopardy and
the Improper Threat of Multiple Penalties for the Same Offense*………………………..29

***B.   The I&A Fail the Rules Against Multiplicity in Many Ways and the Court
Should Dismiss the I&A on Such Basis***………………………………………………….31

**CONCLUSION**………………………………………………………………………………….32

## BACKGROUND

Defendant Antony Vo was arrested on July 21, 2021 and has been charged with criminal

violations under provisions 18 U.S.C.§§1752(a)(1) and (2) and 40 U.S.C. §§5104(e)(2)(D) and

(G).  *See* ECF No. 1, Attachment 1 (Affidavit); ECF No. 8, Information.

Notably absent in the Affidavit are specific allegations concerning Mr. Vo's specific

actions either in the Capitol Building or Capital Grounds.  There are no allegations in the

Affidavit that Mr. Vo challenged or disobeyed an order of the police.  There is no allegation that

Mr. Vo, himself or in connection with a group, forcibly did anything. There is no indication or

allegation any other conduct by Mr. Vo other than the implied actions of walking, standing, and

taking pictures.

¶5 of the Affidavit does state, in part, that:

Members of the Capitol police attempted to maintain order and keep the crowd from
entering the Capitol; however, around 2:00 pm., individuals in the crowd forced entry
into the U.S. Capitol including by breaking windows and by assaulting members of the
U.S. Capitol Police, as others in the crowd encouraged and assisted in those acts.

There is no allegation in the Affidavit that Mr. Vo was at the Capitol at the time, that he

was among individuals in the alleged crowd that allegedly forced entry into the U.S. Capitol, or

that Mr. Vo encouraged and assisted in those acts.  There is no allegation that Mr. Vo operated in

collusion with anyone described in ¶5.  The only allegations in ¶5 are that people, other than the

Defendant engaged in illegal or problematic conduct.

¶7 of the Affidavit alleges that during national news coverage of the aforementioned

events, video footage which appeared to be captured on mobile devices of persons present on the

scene depicted evidence of violations of local and federal law, including scores of individuals

inside the U.S. Capitol building without authority to be there.  However, ¶7 does not specify how Mr. Vo was in violation of local or federal law.

There is no allegation that Mr. Vo brought aerosol containers, non-aerosol sprays, any pointed object, any bag larger than 18" wide x 14" high x 8.5" deep, electric stun guns, martial arts weapons or devices, guns, replica guns, ammunition, fireworks, knives of any size, mace, pepper spray, razors, or box cutters.  There is no allegation that Mr. Vo talked loudly; touched art objects including sculptures, statues, walls, and cases; leaned on walls, display cases, or pedestals; sat on displays or sculptures; blocked doorways or aisles or sat on stairs or floors; crossed into areas that are roped off; ran, pushed shoved, or took any actions that may endanger other visitors or works of art.   There is no allegation that Mr. Vo used language, an utterance, or gesture, or engaged in a display or act that is obscene, physically threatening or menacing, or done in a matter that is likely to inflict injury or incite an immediate breach of the peace.

Furthermore, there is no allegation that a Congressional proceeding was underway at the time that Mr. Vo was alleged to be in the Capitol and Capitol Grounds. Indeed, the allegations in the Affidavit at ¶ 6 state that the joint session of the United States Congress was effectively suspended at about 2:20 and did not resume until shortly after 8:00 pm.

Lastly, the Affidavit does not identify any sign, police, or barriers in any picture. The Affidavit does not allege facts that identify relevant signs, police, or barriers cordoning off any area that were there for Mr. Vo to observe at the time of any alleged conduct. The Affidavit does not allege that Mr. Vo knowingly saw a sign or crossed a cordon.

# ARGUMENT

## I.   Legal Standard

### A.   *Initial General Standard for a Motion to Dismiss for Failure to State an Offense*

Before trial, a defendant in a criminal case may move to dismiss the charging document for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016)(Citations omitted). The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. *Ankinyoyenu* at 9-10. *See United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C.2012); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C.2011). Moreover, in analyzing this, "a district court is limited to reviewing the face of the charging document and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)(emphasis original).

### B.   *The Information and Affidavit (I&A) Must Sufficiently Allege Facts Regarding All Necessary Elements Which, If Proven, Would Constitute A Crime Under the Relevant Criminal Statutes*

A valid information must set out "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62,67 (D.C. Cir. 2004). The government must state the essential elements of the crime and allegations of "overt acts [constituting the offense] with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional provisions. First, it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the accused may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016

(D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764 F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted). That is, the allegations must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular Defendant to identify if the Defendant were later charged with the same offense that double jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true. *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. *See Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017). The Supreme Court explained:

> "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

> The Supreme Court also noted:

> "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, `includes *generic* terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — it must descend to particulars.'" *Id*. (emphasis added).

The Supreme Court made it clear that allegations that are generic and not specific to a specific defendant are not sufficient.

An indictment not framed to apprise the defendant "with reasonable certainty, of the nature of the accusation against him . . . is defective, although it may follow the language of the statute." *United States* v. *Simmons*, 96 U.S. 360, 362 (1877).  The charging document may use "the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements ..." *Hamling*, 418 U.S. at 117. The Fifth and Sixth Amendments and Rule 7(c)(1) generally require that the elements be combined with allegations of fact that establish the offense when assumed true. *Hamling*, 418 U.S. at 117-118; Fed. R. Crim. Proc. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential <u>facts</u> constituting the offense charged...") (emphasis added). The D.C. Circuit has also ruled on the necessity of factual allegations. *See United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing where the indictment failed to make necessary factual allegations).

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the Circuit Court examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful-assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding and

obstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw.  As stated by the

*Hunter* Court:

> [i]t is elementary that an information or indictment must set out the **facts** constituting the
> offense, with sufficient clearness to apprise the defendant of the charge he is expected to
> meet, and to inform the court of their sufficiency to sustain the conviction. ... In other
> words, when the accused is led to the bar of justice, the information or indictment must
> contain the elements of the offense with which he is charged, with sufficient clearness to
> fully advise him of the **exact** crime which he is alleged to have committed. *Id.* at 409, 410
> (emphasis added) (internal quotation marks and citation omitted).

The *Hunter* Court also observed that the defendants in that case could have engaged in a

number of acts that fell outside the scope of the statute, and thus, by failing to specify the

defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the

requirements of the established rules of criminal pleading," which in turn rendered it

"insufficient in law." *Id.* at 410.

Lastly, in *United States v. Miller*, Criminal Action 1:21-cr-00119 (CJN) (D.D.C. May.

27, 2022)[1], Judge Nichols further describes these standards in his opinion on a motion for

reconsideration of the Court's prior decision on the scope of 18 U.S.C. § 1512(c)(2). *See* Opinion

at 3-12.  In *Miller*, the indictment states

> …..that Miller "attempted to, and did, corruptly obstruct, influence, and impede an
> official proceeding." Indictment at 2.  The charge provides no further detail as to what
> conduct by Miller the government …. Considers the *actus reus*.  But that act is an
> essential element of the crime. [footnote omitted]. Opinion at 10.

## C.  *Courts Apply Doctrines that Limit Ambiguous Terms or Broad Readings When Construing the Reach of Criminal Statutes*

Federal courts "traditionally exercise restraint in assessing the reach of a federal criminal

statute." *United States v. Aguilar*, 515 U.S. 593, 600 (1995).  The Supreme Court has urged this

---

[1] https://casetext.com/case/united-states-v-miller-1282

restraint "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'" *Id*. at 600 (citations omitted); *cf Sessions v Dimaya*, 139 S. Ct. 1204, 1223-28 (2018) (Gorsuch, J., concurring in part and concurring in judgement).  This "prudent rule of construction" continues with force today. *Dowling v. United States*, 473 U.S. 207, 214 (1985); see *Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018) (endorsing the rule).

In addition, under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant so long as doing so would not "conflict with the implied or expressed intent of Congress" *Liparota v. United States*, 471 U.S. 419, 427 (1985). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct 126, 127, 70, L.Ed. 322 (1926). "[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries…pursue their personal predilections.'" *United States v. Poindexter*, 951 F.2d 369, 378 (D.C. Cir. 1991) (Citing *Kolender v. Lawson,* 461 U.S. 352, 357-58, 103 S. Ct 1855, 1858, 75 L.Ed. 2d 903 (1983).

## II.   The I&A Fail to Provide Necessary Allegations of Fact to Properly State an Offense Under 18 USC §1752(a)(1)

### A.   *The I&A Fail to Allege the Elements Required to Identify that Mr. Vo Entered a "Restricted Area" Under 18 USC §1752(a)(1) By Not Identifying the Necessary Posting, Cordon or Other Restriction Present at the Time of Mr. Vo's Alleged Offense*

Under 18 USC §1752(a)(1), the Government must show an individual knowingly enters or remains in any restricted buildings or grounds without lawful authority to do so.  The term "restricted building or grounds" means any "posted, cordoned off, or otherwise restricted area" "…(B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting".

First, the statute does not enumerate the Capitol Building or Capitol Grounds as restricted areas.  Second, the <u>area</u> of a building is not necessarily a whole building and an area of the grounds is not necessarily the whole grounds.  One part of a building may be restricted, and other parts may not.  Third, the area can only be restricted by having something posted, cordoned off or otherwise restricted.  Fourth, the reference is to an area not a given point of entry.  If an area is not restricted at any point of entry, it is not a restricted area.  Fifth, what is a restricted area under 18 USC §1752 is a constantly changing situation that may appear and disappear.  The provision applies to many people and many locations and many time periods.  18 USC §3056(a)(1) identifies the President, the Vice President, the President-elect, the Vice-President elect as protected, among others.

Furthermore, the specific sign postings, the cordons, or other specific method of restriction at a specific time and location are necessary allegations of facts, critical to claiming the restricted area.  Without such allegation, there is no offense.  The I&A do not identify or allege a sign, cordoned off area, or other restriction that Mr. Vo could reasonably observe at any time. Furthermore, ¶4 of the Affidavit is too non-specific to apply to provide sufficient information for Mr. Vo's defense as it does not identify the location of the relevant permanent or temporary security barriers and posts manned by the U.S. Capitol police at the time of the alleged offense.

The statutory language must be read in light of the Constitutional requirement that any party be provided fair notice and any interpretation of such language must be read in that light. Further, the statutory standard under §1752(a)(1) is that a party "knowingly enters or remains in any restricted building or grounds without lawful authority to do so." (emphasis added). With respect to ¶7, not only is there a failure to allege that Mr. Vo was following national news coverage of any type, such coverage is not an "other restriction" within the meaning of 18 U.S.C. §1752(c)(1). Nor would any allegation of disorderly conduct on the part of other parties, or the knowledge of any disorderly conduct, be an allegation of an "other restriction." Awareness, if any, of disorderly conduct of others is not knowledge of a restricted area within the meaning of 18 U.S.C. §1752(a)(1) and (c)(1). In addition, neither the Capitol Buildings nor Grounds are **per se** restricted areas as the Vice President's visit is a temporal matter. Section1752(c)(1) restricted areas may apply any time there was an appearance by then President Trump or Vice President Biden and other parties. There is no reason anyone should know what is and what is not a restricted area, unless the signs and police indicate that is the case. The use of the statutory term "otherwise restricted" suffers from serious concerns over constitutional vagueness and lack of fair notice if it is to be used expansively. Regardless, the Affidavit in ¶ 4 only makes reference to barriers and posts manned by the U.S. Capitol police. Nothing in the Affidavit alleges some mechanisms to make an area "otherwise restricted."

Therefore, it does not matter that some people may have crossed an area that was cordoned off at a different time. Mr. Vo cannot be held criminally liable for the actions of others at other times. Mr. Vo has no role in determining what is and what is not appropriate security for any proceedings on January 6, 2021. Even if there were barriers or cordoned off areas that may have existed before Mr. Vo entered the Capitol, the government has not made a specific

allegation that such barriers were there for Mr. Vo to observe. The government has provided no allegations of signs or cordons that Mr. Vo knowingly walked through a cordoned off area.

Mr. Vo has every right to rely on the instructions (or failure to provide instructions not to enter) of police officers at the Capitol as well as the specific alignment of the police cordon. There is no allegation that Mr. Vo did not follow police instruction or cross the police cordon. The instant case contrasts specifically with *U.S. v. Bursey*, 416 F.3d 301 (4th Cir. 2005), which construes the definition of restricted area in 18 USC §1752(a).   In *Bursey*, the Court found that law enforcement agents themselves defined the cordoned off area by their position:

> Stationing agents at along an areas perimeter squarely falls within the plain meaning of the term "cordoned off," that is, "a line or series of troops or of military posts placed at intervals and enclosing an area to prevent passage' or "a barrier of any kind operating to close off, restrict, or control access." Websters Third New International Dictionary (1976). *Id.* at 307.

Notably, in *Bursey*, State law enforcement agents approached Bursey and informed him that he could not remain in the restricted area, that certain areas were restricted. *Id* at 305.  An Agent advised Bursey that he had the choice (1) to go home; (2) get in line if he had a ticket; (3) go to the designated demonstration area; or (4) suffer the consequences and be arrested. Unlike *Bursey*, the government has not alleged that there was a line of officers who "cordoned" the area at the time that Vo was present and that he saw such a barrier and ignored it.  The government has also not alleged that Vo failed to follow the direct commands of an officer.

### B.   The I&A Fail to Allege that Mr. Vo Had Knowledge He Was Entering or Remaining in A Restricted Area

Nothing in the I&A alleges facts that Mr. Vo had knowledge of a posted sign, cordon or other restriction to establish the *mens rea* requirement for the offense.

### C.  The 18 U.S.C. §1752 Counts Also Fail to State an Offense because the United States Secret Service is the Entity that May Designate "Restricted Areas" Under the Statute, Not the United States Capitol Police

Mr. Vo is charged with two counts of violating 18 U.S.C. §1752 for "entering and remaining in a Restricted Building or Grounds," and engaging in "disorderly and disruptive conduct in a Restricted Building or Grounds."  When this statute was enacted, it is clear that the purpose was to designate the United States Secret Service ("USSS") to restrict areas for temporary visits by the President.  *See* S. Rep. No. 91-1252 (1970).  At the time of enactment, the USSS was part of the Treasury.  Section 1752 grants the Treasury Secretary the authority to "designate by regulations the buildings and grounds which constitute the temporary residences of the President."  18 U.S.C. §1752(d)(1).  It also allows the Secretary to "to prescribe regulations governing ingress or egress to such buildings and grounds to be posted, cordoned off, or otherwise restricted areas where the President may be visiting." §1752(d)(2).  There is nothing in the legislative history (or the statutory language) to suggest that anyone other than the USSS has the authority to so restrict the areas surrounding the Capitol building.

The USSS's duties and responsibilities are outlined in 18 U.S.C. §3056, which include:

> (e)(1): When directed by the President, the United States Secret Service is authorized to participate, under the direction of the Secretary of Homeland Security, in the planning, coordination, and implementation of security operations at special events of national significance, as determined by the President.
>
> (2) At the end of each fiscal year, the President through such agency or office as the President may designate, shall report to the Congress--
>
> **(A)** what events, if any, were designated special events of national significance for security purposes under paragraph (1); and
>
> **(B)** the criteria and information used in making each designation.

§3056(e)(1)(2)(A)(B).  The statute does not state that any other agency is permitted to designate events for security purposes and only explains that the USSS would be under the designation of the Department of Homeland Security instead of the Treasury Department.  The statute makes the exclusive role of the USSS even clearer in §3056(g), which states:

> (g) The United States Secret Service shall be maintained as a *distinct entity* within the Department of Homeland Security and shall not be merged with any other Department function. *No personnel and operational elements of the United States Secret Service shall report to an individual other than the Director of the United States Secret Service*, who shall report directly to the Secretary of Homeland Security without being required to report through any other official of the Department.

(emphases added).

The Information charges Mr. Vo with remaining or entering "restricted building or grounds," however it does not allege that the USSS designated that area as being restricted.  Nor could it do so now because in *United States v. Griffin*, 549 F. Supp. 3d 49 (D.D.C. 2021), the government conceded that it was the United States Capitol Police that attempted to designate the area as restricted that day and not the USSS.  *Id* at 53.  The court in *Griffin* denied a motion to dismiss a §1752 charge on the ground that the statute (Congress) did not specifically state who must designate the "restricted areas." [2]

However, the plain language of 18 U.S.C. §1752(c)(B), defines "restricted building or grounds" as a "building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."   Since it is the Secret Service who protects the President or "other person," it is the Secret Service who must designate the area "restricted."  The

---

[2] Mr. Vo acknowledges that there are now several other district court judges who have rejected similar arguments.  However, those decisions can be distinguished for the same reasons distinguishing the *Griffin* decision.

legislative history bolsters this interpretation.[3]

The court in *Griffin* also hypothesized that the President would be **unable to rely on the** **military fortification at Camp David already in existence when he visits that facility if the Secret** **Service was not the only entity with the statutory authority to restrict the area.** *See Griffin* at 57. However, Camp David is a military installation and is not a "public forum" that needs an entity to "cordon off" areas and restrict them in light of a Presidential visit. Military bases have security and are not otherwise open to the public. And each military installation is subject to other laws that protect the facility, and those within it, from intruders. *See, e.g.*, 18 U.S.C §1382 (barring any person from entering any military installation for any purpose prohibited by law). Military bases are heavily guarded and have entrance and exit points and are different than federal buildings that need sections to be "cordoned" off in order for the general public to know which area is restricted. For these reasons, the example offered by the *Griffin* court is inapposite and does not support the court's decision.

Furthermore, if a deficiency in a statute creates an absurd result or creates arbitrary enforcement, it should not be enforced until it is amended to provide clarity and provide fair notice to a defendant. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The *Griffin* court's reasoning creates a different kind of absurd result –viz, anyone claiming to be a part of law enforcement could post a sign designating an area as restricted and a criminal defendant could then be penalized for trespassing because they "willfully" ignored the sign.

---

[3] Congress enacted 18 U.S.C. §1752 as part of the Omnibus Crime Control Act of 1970. Public Law 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan 2. 1971). At that time, the USSS was a part of the Treasury Department. The Senate Judiciary Committee report accompanying the current version of §1752 noted that there was no federal statute that specifically authorized the Secret Service to restrict areas where the President maintains temporary residences and the senators explained that the key purpose of the bill was to provide that authority to the Secret Service. S. Rep. No. 91-1252 (1970).

**D.  The I&A Fails to State an Offense Under 18 U.S.C. §1752 because Mike Pence was not "Temporarily Visiting" the Capitol Building on January 6, 2021**

Under the plain language of 18 U.S.C. §1752, the statute does not apply here.  Section 1752 prohibits conduct in or near "any restricted building or grounds." The statute expressly defines the term "restricted buildings or grounds" as follows:

(1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(A) of the White House or its grounds, or the Vice President's official residence or its grounds;

(B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c); *see United States v. Samira Jabr*, Criminal No. 18-0105, Opinion at 12, ECF No. 31 (May 16, 2019), *aff'd*, 4 F.4th 97 (D.C. Cir. 2021).

Counts one and two charge Mr. Vo with conduct "in a restricted building and grounds, that is, any posted, cordoned-off and otherwise restricted area *within the United States Capitol and its grounds, where the Vice President and Vice-President Elect were temporarily visiting . . ." See* ECF No. 8, (emphasis added).  The government's attempt to shoehorn Mr. Vo's conduct into the statute fails.  Accordingly, those two counts should be dismissed.[4]

The "United States Capitol and its grounds" do not automatically constitute "restricted buildings or grounds" under any prong of § 1752(c)(1). Nor did the Capitol grounds become

---

[4] After the Information was filed in the instant case, the government learned that Vice President Elect, Kamala Harris, was actually not present at the time.  In other cases, the government has amended their pleadings to reflect this new development.  *See United States v. Sean McHugh*, 21-453 (JDB); *United States v. Uliyahu Hayah*, 21-565(CJN); *United States v. Tommy Allan*, 21-64 (CKK).

"restricted grounds" on January 6, 2021, because of a "temporary vice-presidential visit," as the government asserts in the Information. The plain meaning of "temporary" is "lasting for a time only." Black's Law Dictionary (11th Ed. 2019). "Visiting" is defined as "invited to join or attend an institution for a limited time." Merriam-Webster (2021). Together, the phrase "temporarily visiting" connotes temporary travel to a location where the person does not normally live or work on a regular basis. The former Vice President was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia, where he lived and worked. Moreover, he actually worked at the Capitol Building and grounds—it was his place of employment. In his official capacity as the "President of the Senate," he had a permanent office "within the United States Capitol and its grounds." The Vice President was not "visiting" the Capitol Building, he was working there, carrying out his sworn official duties to by "presiding," over the vote count ceremony. *See* 3 U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall *meet* in the Hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer*.") (emphasis added).

Past cases support this plain, common-sense reading of the statute, as they involve conduct in and near areas where the President and Vice President were clearly "temporarily visiting." *See, e.g., United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (defendant entered and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally); *Blair v. City of Evansville, Ind.* 361 F. Supp.2d 846 (S.D. Indiana 2005) (defendant charged with 18 U.S.C. §1752 at protest during then Vice President Richard Cheney's visit to the Centre in Evansville, Indiana). These cases all involve the President and Vice

President actually traveling outside of D.C., where they live and work, and "visiting" another location for a "temporary" purpose.  As a result, those cases are entirely consistent with the plain meaning of section 1752(c)(1)(B).

Here, by contrast, former Vice President Pence was not traveling to a speaking event or a political rally.  He was meeting with other government officials in a federal government building where he had a permanent office as part of fulfilling his official duties as Vice President/President of the Senate.  Thus, he was not "temporarily visiting" the Capitol building as required by the plain language of 18 U.S.C. §1752.

### III.     The I&A Fail to Provide Necessary Allegations of Fact to Properly State an Offense Under 18 USC §1752(a)(2)

#### A.     *The I&A Fails to Properly Identify the Restricted Area Connected to a Time Mr. Vo Entered or Remained, which is a Necessary Element of* 18 USC §1752(a)(2)

Identifying a restricted area by identifying a relevant sign, cordoned off area or other restriction is a necessary element of a criminal violation of 18 USC §1752(a)(2). As discussed above with respect to the discussion on 18 USC §1752(a)(1), the I&A fails to properly identify such area at the time and location of the allegedly violative conduct.

#### B.     *The I&A Do Not Allege Any Facts to Identify Any "Disorderly or Disruptive Conduct" Under 18 U.S.C.§1752(a)(2)*

Under §1752(a)(2), a party is in violation if they knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted buildings or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions.

The Affidavit does not properly allege any facts to support that Mr. Vo engaged in any disorderly or disruptive conduct within the meaning of §1752(a)(2).  Among other things, the affidavit does not label any action as disorderly or disruptive conduct.  Texting is not disorderly or disruptive conduct or conduct that is relevant to §1752(a)(2).  There is no allegation that Mr. Vo disobeyed any order of a policeman, broke anything, assaulted anyone, touched anything, spoke above a volume normal to private conversation. There is no allegation from a police officer on the scene identifying the specific disorderly conduct on the part of Mr. Vo. The Affidavit cagily states that the "facts" in this affidavit come from "my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses." Affidavit ¶ 3.  To Defendant's knowledge, the affiant does not claim he was present at the Capitol on January 6, 2021 and so it is unclear how it is possible that officers or witnesses provided facts or allegations of disorderly or disruptive conduct. Nor is there any allegation of fact that Mr. Vo attempted or conspired to engage in such disorderly or disruptive conduct. The I&A do not identify any alleged facts to support disruptive or disorderly conduct within the meaning of §1752(a)(2) in a manner to put Mr. Vo on notice as to how to defend against the charge.

The government cannot turn an alleged violation of §1752(a)(1) into the disorderly and disruptive conduct elements required under §1752(a)(2).  Without additional allegations of fact, the government is attempting to transform peacefully standing into statutory disruptive and disorderly conduct. There is no ordinary understanding of the terms "disorderly" or "disruptive" that can support such a reading.

### C. The I&A Do Not Allege Any Facts to Identify That There Was the Conduct of Government Business or Official Functions Under 18 U.S.C. §1752(a)(2) Occurring at the Time Mr. Vo Was in the Capitol

The I&A do not, and cannot allege, that Mr. Vo is any way described in ¶7 of the Affidavit.  The Affidavit has not alleged that Mr. Vo was on the Capitol plaza around 2 pm as described in ¶7. ¶8 of the Affidavit alleges that the joint session of Congress was effectively suspended around 2:20 pm until shortly after 8:00 pm.  It is not possible for the alleged actions after 2:20 pm of Mr. Vo to disrupt the "conduct of government business or official functions" at the time.  Indeed, ¶ 8 effectively states such sessions "resumed" around 8 pm. Mr. Vo could not, in any manner, disrupt government business or official functions that were not occurring.

> ### D. The I&A Do Not Allege Any Facts to Show That "Disorderly or Disruptive Conduct" of Mr. Vo, "In Fact", Impeded or Disrupted the Orderly Conduct of Government Business or Official Functions Under 18 U.S.C. §1752(a)(2)

The I&A do not properly allege any facts to support that any alleged disorderly or disruptive conduct of Mr. Vo, in fact, impeded or disrupted the orderly conduct of Government business or official functions as required under §1752(a)(2). The allegations explain that other people initially disrupted the certification proceedings.  There is no allegation that any disorderly or disruptive conduct of Mr. Vo delayed the proceeding and that any proceeding would have in fact proceeded earlier.  The fact that Mr. Vo was simply present in the Capitol building cannot be a basis for "disorderly or disruptive" or that he "in fact" disrupted a proceeding.  The only allegations that exist are that that the conduct of others "in fact" disrupted a proceeding.

## IV. The I&A Fail to Provide Necessary Allegations of Fact to Properly State an Offense Under 40 USC §5104(e)(2)(D)

### A. The I&A Do Not Allege Any Facts to Identify "Disorderly or Disruptive Conduct"

Under 40 USC §5104(e)(2)(D) "an individual or group of individuals may not willfully and knowingly…(D) utter loud, threatening, or abusive language or engage in disorderly or

disruptive conduct with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, any deliberations of, a committee of Congress or either House of Congress….”

The Affidavit does not have factual allegations that either Defendant uttered loud, threatening, or abusive language.  The affidavit does not provide, or at least does not identify, any legally cognizable “disorderly or disruptive conduct.” Simply entering and remaining peacefully cannot be the meaning of “disorderly or disruptive conduct.”   40 USC §5104(e)(2)(A)-(C) use the terms “enter or remain” in specific context.  “Enter or remain” cannot be transformed to “disorderly or disruptive conduct.”  Therefore, disorderly or disruptive conduct must mean an additional act that meets the common-sense use of the terms.

### B. The I&A Do Not Allege Any Facts to Identify That There Was the Necessary Conduct of Business of Congress within the Meaning of §5104(e)(2)(D) at the Time Mr. Vo Was in the Capitol Building

As stated above, the I&A do not, and cannot allege, that Mr. Vo is in any way described in ¶7 of the Affidavit.  The Affidavit has not alleged that Mr. Vo was on the Capitol grounds around 2 p.m. as described in ¶7 nor are there allegations of fact analogous to the accusations against other parties in that paragraph.  ¶ 8 of the Affidavit also alleges that the joint session of Congress was effectively suspended around 2:20 pm until shortly after 8:00 pm. Mr. Vo could not, in any manner, disrupt government business or official functions that were not occurring, and which may have been previously disrupted by other parties or issues.

### C. The I&A Have Not Alleged Facts to Support that Mr. Vo Willfully and Knowingly Understood that Peacefully Entering the Capitol, Without Disobeying Any Instruction of the Many Police Officers Present, Was Conduct that Would Disrupt a Proceeding

Even if the Court found that peacefully standing for a few moments in the Capitol in front of many police was disorderly and disruptive AND found that the suspended sessions of Congress were still within the ambit of the statutory language, there is no allegation that Mr. Vo willfully and knowingly met the standards or met the additional "intent" standard in the language of §5104(e)(2)(D).

**V.    The I&A Fail to Provide Necessary Allegations of Fact to Properly State an Offense Under 40 USC §5104(e)(2)(G)**

> ***A.    The Allegations of Fact in the I&A Do Not Identify Relevant Conduct That Meet the Terms "Parade, Demonstrate, Or Picket" in Any of the Capitol Buildings***

40 USC §5104(e)(2)(G) makes it an offense to "…willfully and knowingly…(G) parade, demonstrate, or picket in any of the Capitol Buildings. The Affidavit has not described any overt action that can constitute the alleged offense of 40 USC §5104(e)(2)(G).  Texting privately to a friend, regardless of its content, is not to parade, demonstrate, or picket. Taking pictures is not a parade, demonstration, or picket. The Affidavit does not allege any organizational relationship with anyone in the Capitol at the time.  There are no allegations that Mr. Vo displayed signs, made any demonstration gestures, walked in some special manner, blocked any hallway or path, or refused to move.  There is no allegation of expressive conduct in the Capitol—which would be necessary to distinguish the terms "parade, demonstration, or picket."  Various cases are discussed below, some of which found violations of the identical language based on the specific fact patterns of those cases, and some which did not.  The allegations in the instant case, does not rise to the level of the fact patterns of any of the cases discussed.

> ***B.    Congress Articulated Where Entering or Remaining in Certain Areas of the Capitol Buildings Could Constitute A Violation; Merely Entering and Remaining Cannot Be Transformed into "Parade, Demonstration or Picket"***

40 USC §5104(e)(2)(A)-(C) use the terms "enter or remain" in specific context. Part of the context involves specific locations within the Capitol Building.  If Congress had meant entering or remaining in other locations was a violation under the 40 USC §5104(e)(2) series, it would have said so.  "Enter or remain" cannot be transformed to "parade, demonstrate, or picket" which must mean discretely different conduct.  Simply entering and remaining, peacefully, for a short time cannot be the meaning of "parade, demonstrate, or picket."

**C.  *The I&A Lacks Specificity by Failing to Identify Statutory Terms Allegedly Violated and Identifying the Actions That Constitute that Violation with Respect to 40 USC §5104(e)(2)(G)***

The I&A provide no explanation of which term the government argues that Mr. Vo engaged in with respect to whether he "paraded" in the Capitol.  What act constitutes such a parade?  Did Mr. Vo "demonstrate" in the Capitol?  What act or acts in the Capitol constitute this action?  Did Mr. Vo "picket" in the Capitol?  What act or acts constitutes this action? There is no allegation of what conduct of Mr. Vo that the government claims constitute illegal conduct.

**D.  *The Underlying Conduct That Constitutes the Terms Parade, Demonstrate and Picket Must Be the Same on Any Given Day***

It is important to note that no element of USC §5104(e)(2)(G) describes illegal entry as a component of illegal conduct under that provision. A court must look only to the terms "parade, demonstrate, or picket." The conduct that comprises a violation under 40 USC §5104(e)(2)(G) cannot be the same as that would indict ordinary visitors in any given day in the Capitol.  40 USC §5104(e)(2)(G) is a rule that applies to visitors during normal sessions of Congress.  Many normal visitors may have participated in political demonstrations elsewhere on the day of their visit to the Capitol.  Many visitors may view their trip to the Capitol as an extension of their political efforts. Professional groups come to the Capitol Buildings in droves on given days to

lobby and get their message across.  People walk into the Capitol, lobby for causes, wear political t-shirts, and express their political views all the time.  Such people must abide by the rules of procedures in hearing rooms and remain quiet, but corridors have the ordinary rules of being in a corridor. It does not matter that anyone participated in rallies elsewhere during the day. Such participation outside the Capitol does not and cannot legally make their time inside the Capitol a violation of 40 USC §5104(e)(2)(G).  There must be *specific conduct inside the Capitol* that is more than walking or standing among people at the Capitol.  Nor is there any allegation of fact that an officer on the scene indicated that any conduct of Mr. Vo was prohibited, much less was constituting a parade, demonstrate, or picket. Similarly,  there is simply no allegation that Mr. Vo provided any outwardly expressive conduct.  There is no allegation that any of the many police officers on the seen informed Mr. Vo that his conduct was prohibited in any way, including as a prohibited parade, demonstration or picket.

### E.  Mr. Vo's Alleged Conduct Does Not Meet the Standard in United States v Bradley of Intruding on the Senses

In *United States v. Bradley,* 418 F. 2d 688 (4th Cir. 1969), two students were arrested for handing out leaflets at Fort Bragg, pursuant to a regulation prohibiting demonstrations there. In concluding that the activities in question did not constitute a demonstration the court said:

> Such acts as picketing, sit-ins, protest marches, speeches and acts ordinarily associated with demonstrations, like parading, singing, and display of placards, all . . . "inevitably intrude upon the senses of those within earshot or eyesight." The casual passerby cannot ignore the event — he must notice it and cannot escape exposure to its message.

Relying in part, on *Bradley, Kroll v. United States Capitol Police*, 590 F. Supp. 1282 (D.D.C. 1983) (construed the term "demonstration" in the context of regulations for the Capitol Grounds could not be construed to encompass plaintiff's conduct in the *Kroll* case).  Specifically, the court stated: "[h]is action did not inevitably intrude upon the senses of those persons in the

immediate area as he acted peaceably, quietly and without forcing others to accept or observe his message." *Id.* at 1291.

> **F.   The Allegations of Fact In the I&A Do Not Provide That Mr. Vo Willfully and Knowingly Engaged in Conduct in the Capitol That Was A Parade, Demonstration, or Picket**

The government has the additional obligation to identify allegations of fact that Mr. Vo knowingly and willfully engaged in a parade, demonstration or picket while in the Capitol. There is no allegation that Mr. Vo knew or that any officer informed him that is conduct was an illegal parade, picket or demonstration.

> **G.   A US District Court for the District of Columbia Has Ruled That A Broad Construction of 40 USC §5104(e)(2)(G) Which Fails to Require "Disruptive" Conduct Would Not Survive the First Amendment**

The Court in *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000) found regulations purporting to implement 40 USC §5104(e)(2)(G) to violate the First Amendment and Due Process.

Believing that the Capitol Police needed guidance in determining what behavior constitutes a "demonstration," the United States Capitol Police Board issued a regulation that interprets "demonstration activity" to include:

> parading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of onlookers, but does not include merely wearing Tee shirts, buttons or other similar articles of apparel that convey a message.

With respect to the First Amendment the *Bynum* Court states:

> The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve.  While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as "speechmaking… or other expressive conduct…" Traffic Regulations for the Capitol Grounds §158.  Because the regulations proscriptions are not limited to the legitimate purposes set forth in the statue, it is an unreasonable and therefore an unconstitutional

restriction on speech. …*See Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 575, 107 S. Ct. 2568, 96 L. Ed. 2d 500 (1987) (general prohibition of First Amendment activity in airport cannot be justified even if airport is nonpublic forum "because no conceivable government interest would justify such an absolute prohibition of speech"). For these reasons, and those discussed in [Other Section of Opinion] the regulation is both unreasonable and unconstitutionally overbroad. (citation omitted). *Bynum* at 57.

The *Bynum* Court construes the statute to only apply to demonstration that is "disruptive" and the Affidavit fails to identify any conduct of Mr. Vo that qualifies as disruptive. A simple review of the regulatory circumstances that *Bynum* reject as unconstitutional indicates it would be improper to construe 40 USC §5104(e)(2)(G) to be as broad as to encompass the allegations of fact in the Affidavit.

### H. The District of Columbia Courts Apply the "Tourist Standard" When Interpreting the Same Statutory Language Under the DC Code to Save the Provision from Being Overbroad Under the Constitution; The Government Has Not Alleged Conduct Beyond the Tourist Standard

District of Columbia Courts have reviewed the language identical to 40 USC §5104(e)(2)(G) under D.C. Code §10-5-3.16(b)(7). As stated in *Grogan v. United States*, No. 19-CM-1030 (D.D.C. Mar. 17, 2022):

> To "save [§10-5-3.16(b)(7)] from being unconstitutionally overbroad," we have adopted the "tourist standard"-a narrowing construction under which we construe [§10-5-3.16(b)(7)] to prohibit only "demonstrations that involve conduct more disturbing than the actions of a tourist would normally be, while taking into consideration the right of the people to freedom of expression." (Citations omitted). *Grogan* at 25.

The fact patterns and results for cases in DC Courts under the tourist standard vary.  For example, The DC Court of Appeals found that a demonstration in which fifty people sat on the floor of the Capitol Rotunda, prayed, and chanted did not run afoul of the tourist standard because the Rotunda is a "unique situs for demonstration activity". *Wheelock v. U.S.*, 552 A. 2d 503, 504-08 (D.C. 1988).  *See also Markowitz v. U.S.*, 598 A. 2d 398, 401, 409 (D.C. 1991) (demonstration in which ten to fifteen people sat on the floor in a restricted corridor and began to

unfurl a banner was not protected by the tourist standard because it occurred in a location where tourists were normally not even allowed to enter). In *Berg v. U.S.*, 631 A.2d 394 (D.C. 1993), the court found demonstrators were much more numerous than ordinary tour groups, which are limited to not more than 50 in the Rotunda. Demonstrators were also louder than ordinary tourists in that they were "shouting" and "speaking in unison" and "could be heard throughout the entire Rotunda." *Id*. at 397. An officer, using an amplifier, advised the entire group "that they were in violation of the building regulations [namely, U.S. Capitol Police General Order No. 303.1] and asked them to please stand . . . and please cease and desist." The officer further testified that he waited for a short period of time and then repeated the identical warning twice more. The combination of these facts exceeded the tourist standard. If the government argues that the area was restricted and, thus, the tourist standard does not apply under *Markowitz*, the government must allege facts that meet that argument.

In *Hasty v. United States*, 669 A.2d 127, 129 (D.D.C. December 18, 1995), the court held that the failure to instruct the jury on the "tourist standard" was insufficient and did not avoid over breadth problems.  In *Hasty*, the defendant went to the center of the Rotunda to meet the others and to pray as a "sign of their faith." *Id*. at 129. The group formed a circle, recited prayers, read, and knelt in silent prayer, and some of them began singing. Hasty admitted hearing the officer ordering the group to cease and desist over the bullhorn, but he chose to ignore the order because he was deeply in prayer. Hasty also testified that he refused to leave when the police asked him to because he "had every right to be there." *Id*. at 130.  The court reversed Hasty's conviction because it found that "in order to ensure that defendant is convicted of the offense as construed to avoid unconstitutional over breadth, the trial court must adequately instruct the jury so as to describe accurately the conduct proscribed and for which the defendant is on trial." *Id*. at

132.  Similarly, the government's allegations cannot survive if they do not accurately describe the conduct proscribed.

## VI. Application of 40 USC §5104(e)(2)(G) to the Alleged Conduct of Mr. Vo Is Unconstitutional

### A. Under the First Amendment, the Legitimate Objectives of Security and Order in the Capitol Buildings Should Be Addressed Without Directly and Only Proscribing Certain First Amendment Activity as Under 40 USC §5104(e)(2)(G), Particularly to the Thin Argument Concerning Mr. Vo's Alleged Conduct

Without question 40 USC §5104(e)(2)(G) refers directly, and only, to First Amendment activities. Indeed, the provision refers only and explicitly to 3 modes of First Amendment expression –parade, demonstration, and picket.

Several courts in DC have struck down regulations attempting to interpret the language of 40 USC §5104(e)(2)(G) broadly.  As discussed above, DC courts recite the "Tourist Standard" as a means of preventing application of the same language in the DC Code in a manner that would violate the Constitution.

### B. The Capitol Grounds Are a Common Site of Constitutionally Protected Activities; Statutory Interpretation Must Not Chill Legitimate Assembly by Connecting Lawful Assembly Outside the Capitol Building as Basis for Defining Parade, Demonstrate or Picket Inside the Capitol

The relationship and close nexus between constitutionally protected activity and the allegations against Mr. Vo must be recognized.  In *Wheelock v. United States* 552 A.2d 503 (D.C. 1988), the DC Court of Appeals reviewed a different unlawful entry statute.  D.C. Code § 22-3102 (1981) provides that:

> Any person who, without lawful authority, shall enter, ... any public or private dwelling, building or other property, ... or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand ... of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor....

The *Wheelock* Court notes:

It bears repeating that "[t]he general concepts of First Amendment freedom are given added impetus as to speech and peaceful demonstration in Washington, D.C., by the clause of the Constitution which assures citizens their right to assemble peaceably at the seat of government and present grievances." *A Quaker Action Group v. Morton*, 170 U.S.App. D.C. 124, 131, 516 F.2d 717, 724 (1975). The courts in this jurisdiction have long recognized that "[t]he United States Capitol is a unique situs for demonstration activity" and "is a place traditionally open to the public thousands visit each year to which access cannot be denied broadly or absolutely, [a fact which must be weighed] against the government's interest in protecting against possible `damage to buildings and grounds, obstruction of passageways, and even dangers to legislators and staff.'" *Kroll v. United States*, 590 F. Supp. 1282, 1289, 1290 (D.D.C.1983) (quoting *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583-85 (D.D.C. 1972), aff'd mem., 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972)). *Wheelock* at 506.

What the government may be arguing is that <u>presence</u> in the Capitol in connection with a rally Mr. Vo attended much earlier, by itself, constitutes the offense, even though there is no actual allegation of conduct other than presence, walking and talking pictures. Under such a hypothetical approach, standing in the Capitol is itself a "demonstration." Of course, standing in the Capitol is a symbol of freedom and pride or other things for many Americans. The danger of this approach cannot be understated. It is not for this court, the prosecutors or even Mr. Vo to ascribe criminal meaning to standing peacefully in the Capitol.

### C. The Lack of Allegation of Verbal Police Communication to Mr. Vo Distinguishes the Instant Case from the Other Cases Cited

Notably, the reference in *Wheelock* that the government's argument "…assumes what proved to be untrue, namely, that all of the demonstrators would refuse to obey requests to conform their behavior to the regulations" *Id* a 509. Indeed, in all of the cases cited, the fact patterns always involved an opportunity to conform conduct by instruction of the police. With respect to entry, there is no allegation that the police communicated that Mr. Vo should not enter. With respect to allegations of disorderly or disruptive conduct, there is no allegation that the police on the scene relayed any concern to Mr. Vo. With respect to parading, demonstrating, or

picketing, there is no allegation that the police relayed concerns that Mr. Vo's conduct might

constitute illegal activity in that respect.

### D.  A Broad Interpretation Applying 40 USC §5104(e)(2)(G) to Mr. Vo's Conduct in the Capitol Is Overbroad under the First Amendment and Violates the Fifth Amendment Requirements of Due Process Since, in Context, the Provision is Vague, Without Standards, and Lacks Fair Notice

A law is unconstitutionally vague when "it fails to give ordinary people fair notice of the

conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v.*

*United States*, 576 U.S. 591, 595 (2015).  As stated in *Hobbs v. Thompson,* 448 F.2d 456, 460

(5th Cir. 1971):

> Lack of fair warning to actors or lack of adequate standards to guide enforcers also may
> lead to a "chill" on privileged activity. A person contemplating action who might be
> covered by a vague statute is left in doubt as to whether he is covered by the statute and,
> if so, whether his claim of privilege will be upheld. *See, e.g., NAACP v. Button*, 371 U.S.
> 415, 432, 83 S.Ct 328, 9 L.Ed. 2d 405 (1963); *See also Coates v. Cincinnati*, 402 U.S.
> 611, 91 S. Ct. 1686, 29 L.Ed. 2d 214 (1971). *Hobbs* at 460-461.

The Supreme Court has also said that "[b]ecause First Amendment freedoms need

breathing space to survive, government may regulate in the area only with narrow specificity."

*NAACP v. Button,* 371 U.S. 415, 433 (1963). *See also Hoffman Estates v. Flipside, Hoffman*

*Estates, Inc.*, 455 U.S. 489, 495 (1982) ("We have said that when a statute interferes with the

right of free speech or of association, a more stringent vagueness test should apply").

40 USC §5104(e)(2)(G) clearly specifies three First Amendment modes of expression.

The purported breadth of interpretation of the provision in the instant case is without precedent

outside of the cases related to January 6, 2021. To defendant's knowledge any prior example of

enforcement had specific police warnings and an opportunity to change conduct before arrest.  In

the instant case, there are no specific allegations in the Affidavit from witnesses at the scene alleging that Vo's conduct constituted a parade, demonstration, or picket.

The case fails under *Bynum*, *Brady*, and *Wheelock* for differing readings and different tests.  The broad interpretation that standing, walking, texting or taking pictures as alleged against Mr. Vo fails all of these tests. The broad interpretation opens an unending can of worms. People may visit for any combination of tourism, education, expression, lobbying, pride, reporting, association, representation, or just to get out of the cold or go to the restroom. A group or set of individuals may represent and should be allowed to communicate a point of view, as long as such conduct is consistent with the operation of Congress. Members of Congress and employees in their official duties are exempt from 40 USC §5104(e)(2)(G) creating a class exempt from criminal threats from the particular First Amendment activities. If a group wears the same T-shirt with a message and walks through the Capitol as a group, is that a parade?  Is it a demonstration? If someone or group has a podcast going from their phones using the inside of the Capitol Buildings as backdrops and criticize Congressional action, is that a demonstration? Or is it reporting?  Professional groups, like the doctors, descend on Capitol buildings annually to lobby their causes.  We have seen over and over demonstrations in front or behind the Capitol where members of Congress come out and speak.  Is it a demonstration if many members of that crowd then go into the Capitol Building? If a broad reading of the statute is chosen in this case, it will create vagueness and concerns of arbitrary enforcement.

## VII.    The Information Should Be Dismissed for Multiplicity

### A.  *Protections Against Multiplicity Protect Against Double Jeopardy and the Improper Threat of Multiple Penalties for the Same Offense*

Multiplicity is "the charging of a single offense in several counts." *United States v. Allen*, 13 F. 3d 105, 107 (4th Cir. 1993) (quoting 1 Charles A. Wright, <u>Federal Practice and Procedure</u> § 142, at 469 (2d ed. 1982); LaFave & Israel, <u>Criminal Procedure</u> § 19.2(e), at 457; *United States v. Segall*, 833 F. 2d 144, 146  (9th Cir.1987)); *United States v. Israelski,* 597 F. 2d 22, 24 (2d Cir. 1979). As stated by the Supreme Court in *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221 (1977):

> The Double Jeopardy Clause of the Fifth Amendment…. provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." It has long been understood that separate statutory crimes need not be identical — either in constituent elements or in actual proof — in order to be the same within the meaning of the constitutional prohibition. 1 J. Bishop, New Criminal Law § 1051 (8th ed. 1892); Comment, Twice in Jeopardy, 75 Yale L. J. 262, 268-269 (1965). The principal question in this case is whether auto theft and joyriding, a greater and lesser included offense under Ohio law, constitute the "same offense" under the Double Jeopardy Clause. *Id* at 164.

As stated in *United States v. Williams*, 527 F.3d 1235 (11th Cir. 2008):

> An indictment is multiplicitous if it charges a single offense in more than one count. *Ward v. United States*, 694 F. 2d 654, 660-61 (11th Cir. 1983) (quoting *United States v. De La Torre*, 634 F.2d 792, 794 (5th Cir. 1981)). A multiplicitous indictment not only subjects the defendant to numerous sentences for one offense, but also "prejudice[s] the defendant and confuse[s] the jury by suggesting that not one but several crimes have been committed." *United States v. Hearod*, 499 F. 2d 1003, 1005 (5th Cir. 1974) (per curiam). A multiplicitous indictment therefore violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense. *Id.* at 1240.

One established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger* v. *United States*, 284, U.S. 299, 304 (1932):

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . ."

As stated by the *Brown* Court:

> Applying the *Blockburger* test, we agree with the Ohio Court of Appeals that joyriding and auto theft, as defined by that court, constitute "the same statutory offense" within the

meaning of the Double Jeopardy Clause….As is invariably true of a greater and lesser included offense, the lesser offense — joyriding — requires no proof beyond that which is required for conviction of the greater — auto theft. The greater offense is therefore by definition the "same" for purposes of double jeopardy as any lesser offense included in it.

"There is `no bright line . . . dividing charges comprising a single offense from those comprising separate and distinct offenses.'" *United States v. Kennedy,* 726 F. 2d 546, 547 (9th Cir. 1984) (quoting *United States v. UCO Oil Co.,* 546 F. 2d 833, 835 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S. Ct. 1646, 52 L.Ed.2d 357 (1977)).

### B. The I&A Fail the Rules Against Multiplicity in Many Ways and the Court Should Dismiss the I&A on Such Basis

In the instant case, multiplicity issues arise at several levels.  Under *Brown*, 18 USC §1752(a)(1) should be read as a lesser included offense of 18 USC §1752(a)(2).  Mr. Vo should not be subjected to two sets of additive penalties. Under *Brown* and *Kennedy,* multiplicitous language in two statutes do not need be exactly the same but rather functionally similar.  A simple comparison of 18 USC §1752(a)(2) and 40 USC §5104(e)(2)(D), particularly with respect to the allegations in the Affidavit, indicate the Government is seeking to apply functionally similar language under two statutes to a single offense.  Indeed, while there are differences in statutory language in certain respects, the Government seems to be arguing a single instance of conduct suffices for 4 criminal offenses.  As discussed above the Information should be dismissed under both Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v).

### CONCLUSION

For the forgoing reasons, Mr. Vo respectfully request that the Court enter an order dismissing the Information as detailed above.

31

Dated: June 29, 2022

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
D.C. Bar No. 1031486
625 Indiana Ave. NW, Ste. 550


Nandan Kenkeremath
DC Bar 384732
USDC DC 384732

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER/ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

June 29, 2022