**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**ANTONY VO,**

        **Defendant.**

**Case No. 1:21-cr-0509 (TSC)**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S SECOND MOTION TO DISMISS COUNT IV OF THE
INFORMATION BASED ON A FACIAL CHALLENGE TO 40 U.S.C.
§§5104(e)(2)(G)**

Dated: June 29, 2022

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
D.C. Bar No. 1031486
625 Indiana Ave. NW, Ste. 550

Nandan Kenkeremath
DC Bar No. 384732

*Counsel for Defendants*

i

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................i

BACKGROUND...................................................................1

OVERVIEW THE RELEVANT STATUTORY PROVISIONS........................1

ARGUMENT......................................................................4

I.      Mr. Vo May Challenge 40 USC 5104(e)(2)(G) Both
        As-Applied And Facially.............................................4

II.     Summary of the Facial Challenge...................................5

III.    40 USC §5104(e)(2)(G) Fails the First and Fifth Amendment
        to the U.S. Constitution.............................................5

        A. 40 USC §5104(e)(2)(G) Directly and Solely Addresses
           First Amendment Protected Conduct............................6

        B. The Court Should Not Adopt and Should, Instead,
           Revisit Certain Findings in Bynum Concerning 40 USC
           §5104(e)(2)(G)..................................................7

        C. The Hallways, Foyers and other Publicly Accessible Areas
           of the Capitol Buildings Are Traditionally Robust with First
           Amendment Activity and any Prohibitions or Enforcement
           Should Be Reviewed Under the Public Forum
           Standards.......................................................9

        D. Regardless of Which First Amendment Standards Apply
           40 USC §5104(e)(2)(G) Facially Fails Constitutional Muster
           Under the First and Fifth Amendments.........................13

           1. There is No Valid Reason for First Amendment Modes
              of Expression to Be Criminally Punished Ahead of Similar
              Non-First Amendment Activity That Poses the Same
              Risk........................................................14

           2. 40 USC §5104(e)(2)(G) Does Not Survive Muster Because
              It Is Overbroad Under the First Amendment and
              Overbroad and Too Vague Under the Fifth
              Amendment..................................................15

3.  40 USC §5104(e)(2)(G) Discriminates Against Citizens
    Versus Congressional Employees and Is, In Certain Ways,
    Not Neutral by Singling Out Modes of First Amendment
    Expression.................................................................................21

**CONCLUSION**........................................................................................22

**BACKGROUND**

On August 5, 2021, an Information was filed in the above case charging Mr. Vo with violating 18 U.S.C.§§1752(a)(1) and (2) and 40 U.S.C. §§5104(e)(2)(D) and (G).  ECF 8. This matter is currently scheduled for trial on November 9, 2022. Minute Entry April 27, 2022.

Mr. Vo, separately, today, also files a motion to dismiss the Information, including with respect to Count Four regarding 40 U.S.C. § 5104(e)(2)(G) on numerous grounds.  One of those grounds is that application of 40 U.S.C. § 5104(e)(2)(G) to the alleged conduct of Mr. Vo violates the First and Fifth Amendment of the U.S. Constitution.  The instant motion challenges 40 U.S.C. § 5104(e)(2)(G) on the face of the provision (also in the context of related provisions) as failing the First and Fifth Amendment.  In addition to seeking such a finding from the Court Mr. Vo requests that Count IV of the Information be dismissed on the basis of such finding.

**OVERVIEW OF RELEVANT STATUTORY PROVISIONS**

40 USC §5104(e)(2)(G) is part of a sequence of statutory provisions concerning potentially unlawful activity on the Capitol Grounds and, in some circumstances, in locations in Capitol Buildings.  Different provisions of 40 USC §5104 have different location restrictions in terms of applicability. 40 USC §5104(c) limits (1) articles for sale; (2) displaying a sign placard or other form of advertisement; and (3) soliciting fares, alms or contributions on the Grounds. 40

1

USC §5104(d) limits conduct to remove or injure architectural features or plants on the Grounds. 40 USC §5104(d).  40 USC §5104(e)(2)(a)-(c) refer to specific rooms in the Capitol Buildings. 40 USC §5104(e)(2)(a)-(c). 40 USC §5104(e)(2)(d)-(f) apply to both the Grounds and any of the Capitol Buildings.  However, 40 USC §5104(e)(2)(G) applies only in any Capitol Building.

Somewhat analogous language in 40 USC §5104(f), which also applies to the Grounds, has been declared unconstitutional by several courts under the First and Fifth Amendments.  40 USC §5104(f) states:

> (f) Parades, Assemblages, and Display of Flags.—Except as provided in section 5106 of this title, a person may not—
>
> > (1) parade, stand, or move in processions or assemblages in the Grounds; or
> > (2) display in the Grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement.

As a comparison, 40 USC §5104(e)(2)(G) states: "An individual or group of individuals may not willfully and knowingly—parade, demonstrate or picket in any of the Capitol Buildings.

There are also differences in the class of people subject to the provisions of 40 USC §5104.  40 USC §5104(a), (b), (c), (d) and (f) all apply to "a person."  On the other hand, 40 USC §5104(e)(3) has an exemption from all of 40 USC §5104(e) which states:

> (3) Exemption of government officials.—This subsection does not prohibit any act performed in the lawful discharge of official duties by—

(A) a Member of Congress;
(B) an employee of a Member of Congress;
(C) an officer or employee of Congress or a committee of Congress; or
(D) an officer or employee of either House of Congress or a committee of that House.

As discussed further below, both 40 USC §5104(e)(2)(G) and (f) are expressly defined by First Amendment activity.  Whereas other provisions such as 40 USC §5104(b), (d), and (e) limit activity without reference to First Amendment activity terms.  For example, 40 USC §5104(e)(2)(D)-(F) have restrictions stating an individual or group of individuals may not:

(D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;

(E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings;

(F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings

Just looking at the text, 40 USC §5104(e)(2)(G) can cover a universe of conduct that can run afoul of one or more of the provisions of 40 USC §5104(e)(2)(D)-(F) but may or may not also a universe of conduct that does not run afoul of one or more of the provisions of 40 USC §5104(e)(2)(D)-(F).

40 USC §5104(e)(2)(G) prohibits three specific modes of First Amendment activity—parading, demonstrating, and picketing.  Other First Amendment activity

that is not within the ambit of parading, demonstrating or picketing are not prohibited.

40 USC §5104(e)(2)(G) is a criminal provision and subject to penalties of up a fine under title 18, imprisonment of not more than six months, or both.  See 40 USC §5109(b).  Indeed, 40 USC §5109(b) makes an "attempt" to commit a violation of 40 USC §5104(e)(2)(G) subject to the same potential criminal sanctions.  Moreover, 40 USC §5104(e)(2)(G) connects to 18 USC § 2 which provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

## ARGUMENT

## I.   Mr. Vo May Challenge 40 USC 5104(e)(2)(G) Both As-Applied and Facially

As stated in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908 (1973):

> It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Herndon* v. *Lowry*, 301 U.S. 242, 258 (1937); *Shelton* v. *Tucker*, 364 U.S. 479, 488 (1960); *Grayned v. City of Rockford*, 408 U.S. 104, 116-117 (1972). As a corollary, the Court has altered its traditional rules of standing to permit — in the First Amendment area — "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski* v.

4

*Pfister*, 380 U.S. 479, 486 (1965). Litigants, therefore, are permitted to challenge a statute not because their own right of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

## II.    Summary of the Facial Challenge

With to respect the facial challenge, Mr. Vo argues not only his fact pattern but also addresses additional areas of Capitol Buildings, such as hallways in the House and Senate Office Buildings and other areas that are neither committee or hearing rooms nor the House or Senate floors.  Mr. Vo argues the provision tramples on all peaceful and orderly activities that could, nonetheless, fall under the three modes of First Amendment expression set out under 40 USC §5104(e)(2)(G). Mr. Vo argues the additional problems created by the confusing connection of 40 USC §5104(e)(2)(G) to the provision stating that "attempting" to parade, demonstrate or picket in any of the Capitol Buildings is a crime. Mr. Vo argues the connection of 40 USC §5104(e)(2)(G) to the aiding and abetting statute to this range of First Amendment activity and circumstances further exacerbates the constitutional issues. Mr. Vo further argues the connection of 40 USC §5104(e)(2)(G) to the exclusion in 40 USC §5104(e)(3) creating a two-tiered set of circumstances for First Amendment purposes.  Mr. Vo claims all of these permutations under criminal law amplify the fundamental problems of overbreadth under the First Amendment and constitutional overbreadth, vagueness, under the Fifth Amendment.

## III.   40 USC §5104(e)(2)(G) Fails the First and Fifth Amendment to the U.S. Constitution

### A. 40 USC §5104(e)(2)(G) Directly and Solely Addresses First Amendment Protected Conduct

*As stated in Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502 (1987):

Instead, "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *Kolender* v. *Lawson*, 461 U.S. 352, 359, n. 8 (1983). Criminal statutes must be scrutinized with particular care, *e.g., Winters* v. *New York*, 333 U.S. 507, 515 (1948); those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application. *E. g., Kolender, supra*, at 359, n. 8.

By its own terms 40 USC §5104(e)(2)(G) addresses three modes of First Amendment Activity -- parading, demonstrating and picketing. The Court in *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000) found regulations purporting to implement 40 USC §5104(e)(2)(G) to violate the First Amendment and Due Process.  With respect to the First Amendment the *Bynum* Court states:

> The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve.  While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as "speechmaking… or other expressive conduct…" Traffic Regulations for the Capital Grounds §158. Because the regulations proscriptions are not limited to the legitimate purposes set forth in the statue, it is an unreasonable and therefore an unconstitutional restriction on speech.  …*Id.* at 57 (Citations omitted)

With respect to Due Process and unconstitutional vagueness, the *Bynum* Court states:

> In fact, the definition of "demonstration" in the regulation encompassing all expressive conduct, whether disruptive or not appears to expand the restrictive powers given by the statute to the Capitol Police rather than limit

> or guide them.  This definitional "guidepost" thus has the potential to squelch nearly any type of expressive conduct, whether or not it is actually a demonstration, and may sweep within its scope expression that is protected by the First Amendment.  The regulation therefore is both unconstitutionally overbroad and unconstitutionally vague.  *Id.* at 58.

*See also Lederman v. U.S.*, 291 F.3d 36 (D.C. Cir. 2002) (reviewing facial First

Amendment challenge to a regulatory prohibition on demonstration activities

outside Capitol building). As stated in *Lederman*,

> We hold only that, as currently written, the demonstration ban imposes "a serious loss to speech . . . for a disproportionately small governmental gain," *Citing White House Vigil for the ERA Comm. v. Clark,* 746 F.2d 1518, 1544 (D.C. Cir. 1984)(Wald, J. concurring in the judgement in part and dissenting in part on other grounds). *Lederman* at 46.

> In *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575

(D.D.C. 1972) (affirmed 409 U.S. 972 1972), the Court held a blanket statutory

prohibition on parades, assemblages or processions on Capitol Grounds is

unconstitutional. *See also Gregory v. Chicago*, 394 U.S. 111, 89 S. Ct. 946 (1969)

(where the Supreme Court reviewed a protest march aimed at the Chicago city

government and held that as long as marches are "peaceful and orderly" they are

protected by the First Amendment.); *Edwards v. South Carolina*, 372 U.S. 229, 83

S. Ct. 680 (1963); *Carey v. Brown*, 447 U.S. 455, 100 S. Ct. 2286 (1980); *Police*

*Department of Chicago* v. *Mosley*, 408 U.S. 92, 92 S. Ct. 2286 (1972); and *Thornhill*

*v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940).

### B. The Court Should Not Adopt and Should, Instead, Revisit Certain Findings in Bynum To Find 40 USC §5104(e)(2)(G) Violates the First and Fifth Amendments

The main holding in *Bynum* was that broad regulations purporting to implement 40 USC §5104(e)(2)(G) violated the First Amendment and Due Process. As part of its analysis, the *Bynum* Court stated:

> Indeed, the regulation goes beyond what Congress intended and permits the Capitol Police to block activity not proscribed or intended to be proscribed by the statute Congress enacted. The statute prohibits loud, threatening or abusive language; any disorderly or disruptive conduct engaged in with the intent to impede, disrupt or disturb the orderly conduct of any session of Congress or a congressional hearing or committee meeting; any behavior that obstructs or impedes passage through or within the Capitol or any of its buildings or grounds; physical violence; and parades and picketing. 40 U.S.C. § 193f(b) (4)-(7).[5] When viewed in the context of these other various forms of statutorily prohibited behavior, Congress' statutory prohibition against "demonstrat[ing]" appears aimed at controlling only such conduct that would disrupt the orderly business of Congress not activities such as quiet praying, accompanied by bowed heads and folded hands. The police could properly use the statutory standards of Section 193f(b) itself to control, for example, groups of people praying in a way that impeded or obstructed passageways, hearings or meetings, involved loud, threatening or abusive language or physical violence, or was otherwise disorderly or disruptive. Plaintiff's activity was none of these. *Bynum* at 57-58.

Given the Constitutional issues, Mr. Vo agrees that the *Bynum* court properly found the regulations overly broad AND that courts should construe 40 USC §5104(e)(2)(G) narrowly to apply to only such parading, demonstration, or picketing that would disrupt the orderly business of Congress.

However, Mr. Vo does not believe those points are inconsistent with his facial challenge. Moreover, Mr. Vo disagrees with two aspects of the *Bynum* court analysis. First, Mr. Vo disagrees with the analysis that all areas of any Capitol Building constitute a non-public forum. Second, Mr. Vo disagrees with the below finding by the *Bynum* court:

> The Court finds that Section 193f(b) enacted by Congress is a viewpoint neutral, reasonable regulation of both conduct and expressive activity that satisfies the Supreme Court's test for nonpublic forum.

The vast bulk of *Bynum* is critical of the regulations and 40 USC §5104(e)(2)(G) should carry most of the same criticisms and more. *Bynum* was not a facial challenge of the statute but rather a challenge that the United States Capitol Police prohibited an individual from praying in the United States Capitol in violation of the Free Speech and Free Exercise Clauses of the First Amendment, the Due Process Clause of the Fifth Amendment, and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb.  Here, Mr. Vo brings a broad facial challenge in addition to his as-applied challenge.  Moreover, at the time of *Bynum,* the circumstances were quite different. There was limited record and few cases. The recent spate of convictions by settlement agreement under 40 USC §5104(e)(2)(G) and charges connected with January 6, 2021, has raised the issue of the constitutional problems with 40 USC §5104(e)(2)(G) in a manner never previously observed.  Moreover, the number of permutations provided by technology that might qualify as a "demonstration" is greater, creating more ambiguity, vagueness, and opportunities for selective enforcement.   Accordingly, Mr. Vo asks this court to review these issues in light of these developments to find that 40 USC §5104(e)(2)(G) violates the First and Fifth Amendments.

> ### C. *The Hallways, Foyers and other Publicly Accessible Areas of the Capitol Buildings Are Traditionally Robust with First Amendment Activity and any Prohibitions or Enforcement Should Be Reviewed Under the Public Forum Standards*

The degree of First Amendment scrutiny accorded to governmental decisions limiting speech on public property depends on whether the property in question is (1) a traditional public forum, (2) a government-designated public forum, or (3) a non-public forum. *See Perry Education Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45 (1983). Restrictions on speech in either category of public forum must be "reasonable time, place, and manner regulations" that are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication." *Id*. Speech restrictions in non-public forums, on the other hand, are permissible "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Defense Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). The public forum analysis was created to recognize that the government must be able to limit the use of its property to the intended purpose for which the property was created. *Id*. at 800. *See also Adderley v. Florida*, 385 U.S. 39, 48 (1966); *see*, e.g., *Perry* at 53 (to limit access to those rightfully conducting business there).

Mr. Vo argues that 40 U.S.C. § 5104(g) does not survive constitutional muster regardless of whether all areas of Capitol Buildings are non-public forums or whether certain areas of the Capitol Buildings are public forums. Here Mr. Vo argues that substantial areas of Capital Buildings are public forums and the highest standard of scrutiny for prohibition of peaceful and non-disruptive First Amendment activity should apply in such areas. The *Bynum* court's analysis that

the entirety of the Capitol Buildings are non-public forums is neither sufficient nor correct.  The *Bynum* court claims:

> [t]here has been a ban on demonstrations inside the Capitol since 1946 when Congress decreed: "It shall be unlawful for any person or group of persons willfully and knowingly ... to parade, demonstrate, or picket within any of the Capitol Buildings." 40 U.S.C. § 193f(b) (7).

While the point may not be substantial, that statutory language came to exist in 1967 not 1946. It is the *Bynum* court that made the argument about longevity of the rule as a factor for consideration on whether the Capitol Buildings were public forums.  Regardless, *Lederman* undercuts a key pillar of the *Bynum* logic.

> To begin with, the sidewalk has never been available for public expression primarily because, for almost a century, such expression was prohibited anywhere on the Capitol Grounds by the very statute declared unconstitutional in *Jeannette Rankin Brigade.* 342 F. Supp at 587-588. If "time, place, or manner restrictions can[not] bootstrap *themselves* into validity by their mere existence, even if prolonged," *Henderson v. Lujan,* 964 F.2d 1179, 1183 (D.C. Cir. 1992) (emphasis added), then unconstitutional restrictions certainly cannot, by their mere existence, bootstrap *subsequent* restrictions into validity.

Compare this to the logic of *Bynum*:

> To that end, Congress enacted the statute at issue here so that citizens would be "assured of the rights of freedom of expression and of assembly and the right to petition their Government," without extending to a minority  "a license ... to delay, impede, or otherwise disrupt the orderly processes of the legislature which represents all Americans." H. REP. NO. 90-745 at 2, *reprinted in* 1967 U.S.C.C.A.N. 1739, 1740. The type of controls that Congress legitimately may use to regulate the manner in which ideas are expressed inside the Capitol therefore excludes its classification as a traditional public forum.

Under *Lederman*, the kind of logic described in *Bynum* is circular. *Bynum* claims the Capitol Building must be a non-public forum because Congress has prohibited three modes of First Amendment expression in the Capitol Buildings.  However, the question is not the authority of Congress to regulate First Amendment activity but rather the standards of review for such regulations.

Over the last two years, COVID and the events of January 6, 2021, have changed how people can access Senate and House buildings. Currently, lobbyists may conduct in-person meetings on Capitol Hill, so long as a congressional aide signs them in and escorts them around the buildings.  Mr. Vo does not take issue with security or health precautions that affect what might happen at these buildings.  Such precautions are not based on 40 USC §5104(e)(2)(G).  Rather Mr. Vo refers to the situation before COVID, and, hopefully, the relatively more normal situation that would return in describing the nature of the hallways, foyers and other publicly accessible areas. For years and years, the lobbies and halls of these buildings were robust with First Amendment activity.[1] In the modern era, this

---

[1] https://rollcall.com/2022/03/04/lobbyists-urge-lawmakers-to-let-them-roam-the-capitol-again/  As stated by lobbyist Cesar Conda in this article "Once you had your meeting, lobbyists could roam around the Capitol all day to buttonhole members and staff…"  It should be open to tourists, advocacy groups, lobbyists, the way it was pre-pandemic. https://rollcall.com/2022/03/07/as-200-groups-seek-access-talks-underway-to-reopen-hill-buildings/. Miller said the effort wasn't only about lobbyists. "This is about every citizen in this country having the right to petition their government," he said. "This is about every kid who missed an opportunity through their school field trips to come here and see government in action. This is about every constituent who travels here with their family to meet with their elected officials.  This is about every person who participates in their annual fly-in event." Moreover, the general rule is that videotaping and audio recording are permitted in the public areas of the House and Senate office buildings. https://radiotv.house.gov/for-gallery-members/rules-for-electronic-media-coverage-of-congress

properly provides many First Amendment social media opportunities. It certainly would be a broad First Amendment issue, if such opportunities were considered part of prohibited "demonstrations".

In *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972), the court states:

> The Capitol Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public; indeed, thousands of people visit them each year. Thus, we cannot agree with the defendants that the Capitol Grounds have ever been characterized by the serenity and quiet of a hospital or library.

While the *Jeannette Rankin Brigade* court was reviewing an issue concerning the Capitol Grounds, the stated exclusions of the Senate and House floors and committee rooms is more consistent with the public availability issues. In any event, the *Jeannette Ranking Brigade* court did not specifically opine on areas of Capitol Buildings that were not the Senate and House floors or committee rooms.

Accordingly, Mr. Vo argues that the higher standards of the public forum analysis should apply to the hallways, foyers, and other public areas of the Capitol Buildings.

### D. Regardless of Which First Amendment Standards Apply 40 USC §5104(e)(2)(G) Facially Fails Constitutional Muster Under the First and Fifth Amendments

Congress can regulate the conduct of individuals and groups in the Capitol Buildings to ensure such conduct does not disrupt Congressional activities and protects personnel, visitors, property and buildings.  The fundamental constitutional problems with 40 USC §5104(e)(2)(G) fall into several categories. First, 40 USC §5104(e)(2)(G) can be read to punish conduct falling under the three modes of First Amendment Expression in a greater manner than similarly disruptive or unwanted conduct.  A loud, disobedient, or otherwise disruptive set of individuals is a legitimate problem regardless of whether such conduct constitutes a demonstration.  Second, 40 USC §5104(e)(2)(G) impermissibly punishes the non-Congressional employee class for the same demonstration conduct permitted by the Congressional employees in the same public locations in the Capitol Buildings. Third, the language of 40 USC §5104(e)(2)(G), in the modern context, is impossibly vague and cannot inform citizens of the rules of conduct. The language lacks fair notice as to its scope and leads to arbitrary enforcement.

1. <u>There is No Valid Reason for First Amendment Modes of Expression to Be Criminally Punished Ahead of Similar Non-First Amendment Activity That Poses the Same Risk</u>

Mr. Vo does not argue that the First or Fifth Amendments require exceptions to general rules of crowd management in the Capitol Buildings. Rather, Mr. Vo argues that the Constitution does not permit Congress to criminally punish First Amendment conduct simply because it is First Amendment conduct – which is exactly how 40 USC §5104(e)(2)(G) is written.  For example, if 40 USC §5104(e)(2)(G) were written as a savings clause saying that 40 USC §5104(e)(2)(d)-

(f) or other rules of crowd management applied regardless of whether conduct constituted a First Amendment demonstration, that would be different. *Bynum* and other courts have tried to address the overbreadth problem, effectively by reading additional Constitutional restrictions to override the language or by other rules of statutory construction. However, there is simply no reason for the vagueness and First Amendment problems at all.  There is not a single activity that poses a security or disruption problem that cannot be stated in a different manner and that does not focus solely on First Amendment modes of conduct.  A proper statutory formulation simply need not highlight First Amendment modes as the crime.  40 USC §5104(e)(2)(d)-(f) are obvious examples of this, but the courts have noted the same points in various ways. It should not matter whether a group of students are disruptive but have no intent to "demonstrate."  The Capitol Police or whoever else is responsible for groups and individuals walking in the Capitol Buildings can limit the size of groups, the length of stay in any location, the location of passage, the volume of noise, and whether potentially dangerous items are carried, all without respect to First Amendment terms and modes of expression. Indeed, many First Amendment activities occur in the hallways, including lobbying and reporting. People can be in these buildings for many purposes and there are no easy definitions.

2.  <u>40 USC §5104(e)(2)(G) Does Not Survive Muster Because It Is Overbroad Under the First Amendment and Overbroad and Unduly Vague Under the Fifth Amendment</u>

First, a law is unconstitutionally vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  As stated in *Johnson:*

> [O]ur *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. *L. Cohen Grocery Co.,* 255 U.S. at 89, 41 S.Ct 298. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"—even though spitting in someone's face would surely be annoying. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971). These decisions refute any suggestion that the existence of *some* obviously risky crimes establishes the residual clause's constitutionality.

As stated in *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S. Ct. 328 (1963):

> If the line drawn by the decree between the permitted and prohibited activities of the NAACP, its members and lawyers is an ambiguous one, we will not presume that the statute curtails constitutionally protected activity as little as possible. For standards of permissible statutory vagueness are strict in the area of free expression. See *Smith* v. *California*, 361 U.S. 147, 151; *Winters* v. *New York*, 333 U.S. 507, 509-510, 517-518; *Herndon* v. *Lowry*, 301 U.S. 242; *Stromberg* v. *California*, 283 U.S. 359; *United States* v. *C.I.O.,* 335 U.S. 106, 142  (Rutledge, J., concurring). *N.A.A.C.P.* at 432.

As discussed above, two court decisions in *Bynum* and *Lederman* struck down attempts to provide regulations to provide guidance regarding 40 USC §5104(e)(2)(G).  In other words, two sets of proposed regulations failed Constitutional muster because a board could not properly draw the line between protected and not protected conduct under Due Process and the First Amendment. Again, it is important to understand that 40 USC §5104(e)(2)(G) does not require

16

illegal entry to the Capitol as an element.  On its own terms to "parade, demonstrate, or picket" can draw criminal sanctions under the provision, regardless of how a party entered.  Yet, as discussed above, people often go to the Capitol as part of their day and broader range of activities.  Sometimes, these activities highlight or concern political causes or issues.  They may all wear the same political messages on their t-shirts.  They may all walk together in groups.  These points should not provide for a criminal violation under the Constitution.

"An overbroad statute "sweeps within its scope a wide range of both protected and non-protected expressive activity." *Hobbs v. Thompson,* 448 F.2d 456, 460 (5th Cir. 1971)." *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998).

As stated in *Hobbs*:

Lack of fair warning to actors or lack of adequate standards to guide enforcers also may lead to a "chill" on privileged activity. A person contemplating action who might be covered by a vague statute is left in doubt as to whether he is covered by the statute and, if so, whether his claim of privilege will be upheld. [Citations omitted].  *Hobbs* at 460-461.

As further stated in *Hobbs*:

The overbreadth doctrine, therefore, focuses directly on the need for precision in legislative draftmanship to avoid conflict with First Amendment rights. Even though the interests a statute promotes may justify some infringement upon First Amendment rights, the overbreadth doctrine condemns those means to that legitimate end which comprehend too broad an incursion upon the realm of First Amendment activity. Where a law is substantially overbroad, in that it sweeps within its scope a wide range of both protected and non-protected expressive activity, and where no "readily apparent construction suggests itself as a vehicle for rehabilitating the statute in a single [proceeding]," *Hobbs* at 460.

As stated by the Supreme Court in *Smith v. Goguen*, 415 U.S. 566, 94 S. Ct. 1242 (1974):

> [The doctrine of due process and vagueness] requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." [footnote omitted]. Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. [footnote omitted] *Id.* at 573.

The overbreadth concerns date back to the legislative history.  During a statutory revision in 1967, Representative O'Neal stated, "I am a little bit disturbed about the language…wherein the proposed legislation, if adopted, would make it a violation to parade, demonstrate, or picket within any of the Capitol buildings." Congressional Record-House (October 19, 1967) at 29389, available at https://www.govinfo.gov/content/pkg/GPO-CRECB-1967-pt22/pdf/GPO-CRECB-1967-pt22-2-1.pdf (last accessed June 1, 2022) (hereinafter "Congressional Record"). Representative Bingham expressed concerns about overbreadth:

> I am deeply concerned about the broad scope, vague language, and possible interference with first amendment rights of the bill before us today.  It was so hastily conceived and reported out of committee that no official views of the Justice Department or the District government were available.  Moreover, there seems to be no disposition on the part of the bill's supporters to accept clarifying amendments.

Congressional Record at 29394. He also commented on the law's potential impact on peaceful, quiet visitors, describing the law as "a case of using a shotgun to eliminate at gnat." Congressional Record at 29395.  At the time of the 1967 revision, Representative Edwards expressed that he believed the "parading, picketing, or demonstrating language violated the First Amendment because it was *not* limited to

disorderly or disruptive conduct.  Congressional Record at 29392.  Representative Cramer stated that to add "with intent to disrupt the orderly conduct of official business" would "gut [ ] the section," suggesting Representative Cramer, at least, did not care about the qualification. *Id*. at 29394.

Here the range of possible actions that may fall under the umbrella of 40 USC §5104(e)(2)(G) is formless mix that includes actions protected under the First Amendment.  What if someone broadcasts from his or her smart phone and criticizes the government on that broadcast?  That action poses no security issue yet could arguably be viewed as "demonstrating".   Or is that reporting?  If people gather in the Capitol to celebrate a political victory is that a demonstration or parade? What if people walked in a group carrying signs in a hallway.  How is this a different security or operational risk for Congress? Groups of students and others may walk in single or double file all where tee-shirts celebrating America or a school.  Is that a "parade?" Again, the Capitol Police and those in charge of security and visitors can restrict areas, size of groups, duration of stay, volume, and items that might pose a risk, all without referring to whether the conduct is also a First Amendment mode of conduct like a demonstration.  People commonly communicate political ideas in the Capitol Buildings and that expression is protected under First Amendment.

The recent opinion of U.S. District Judge Colleen Kollar-Kotelly, shows the immediacy and importance of the issues Mr. Vo raises in the facial challenge.  The opinion states:

> Defendant primarily argues that because he was "recording" as a "videographer," he was not "parading or "demonstrating."  The two, however, are not mutually exclusive.  In truth, Defendant acted more as a social media influencer might, frequently urging his followers to "share, share, share."[citation omitted] Sharing, Rivera may have hoped, could have helped him "get [his][addition in original] name out there," one of Rivera's stated reasons for going to the Capitol on January 6, 2021. [citation omitted]. Indeed just before he joined the crowd, he was primarily concerned that no one appeared to be watching his Facebook Live [citation omitted]

As noted above, camera's, smart phones and recording are all allowed in the Capitol Buildings in most places.  So, would the relationship to social media turn recording and commenting on a smart phone into conduct that is "demonstrating?"  This was apparently relevant to one U.S. district court judge.

The *Rivera* opinion's use of *Brown v. Louisiana* 383 U.S. 131 (1966) and *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984) is revealing of the Constitutional problem.   The opinion cites to *Brown* as evidence that the term "demonstrating" for purposes of a criminal statute includes the right to "protest by silent and reproachful presence" citing *Brown* at 142. Opinion at footnote 16. However, *Brown*, and the Constitution demand the opposite result. *Brown* is highlighting that protest by silent reproachful presence is constitutionally protected under the First Amendment. On that basis, the Court overturned the conviction. Indeed, the Court in *Brown* stated:

> Petitioners' conduct was considerably less disruptive than in any of the preceding three situations in which this Court invalidated convictions under the same Louisiana statute or its predecessor, *Garner* v. *Louisiana*, 368 U.S. 157; *Taylor* v. *Louisiana*, 370 U.S. 154; and *Cox* v. *Louisiana*, 379 U.S. 536. Pp. 133-135, 139-140. *Brown* at 132.

The *Rivera* opinion shows the direct problem.  The broad and ambiguous definition of "demonstration" is synonymous with the term that is Constitutionally protected and provides no other qualifier other than the *mens rea* requirements. Similarly, The *Rivera* opinion claims at footnote 16 that mere presence within a demonstration, is itself demonstrating (citing to *Clark* at 293).  *Clark* was suggesting the breadth of Constitutional protection:

> We need not differ with the view of the Court of Appeals that overnight sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment. We assume for present purposes, but do not decide, that such is the case.

The *Rivera* opinion equates the breadth of the criminal *actus reus* in 40 USC §5104(e)(2)(G) to the breadth of the Constitutional protection.  A peaceful demonstration, meaning complaining in a smartphone to an audience not at the Capitol, somehow becomes a criminal violation.  There is nothing in the statute to save anyone from the text of 40 USC §5104(e)(2)(G) which a violation of the First and Fifth Amendments.  Congress has an obligation to speak in the actual terms that identify disruptive conduct not First Amendment terms which can include orderly and peaceful expression.

3.  <u>40 USC §5104(e)(2)(G) Discriminates Against Citizens Versus Congressional Employees and Is, In Certain Ways, Not Neutral by Singling Out Modes of First Amendment Expression</u>

40 USC §5104(e)(2)(G) is not neutral in certain respects. First, the exception for Congressional employees and members further provides such employees and members immunity from criminal sanctions from the same expressive conduct that would be a threat to ordinary citizens.  Indeed, a disorderly demonstration by Congressional employees, presumably authorized by their employing Congressman is immune from penalties under 40 USC §5104(e)(2) entirely.   Demonstrations are not as likely to be pro-government and neither are pickets as a celebration or press conference in the capitol.  The statutory language does not limit ceremonies, press conferences, filming or lobbying.  The First Amendment mode of demonstration is particularly useful to the general citizenry.  Corporations and certain other interest groups do not participate in demonstrations.  Such groups meet to lobby—not something as easily available to citizens with a simple message.  Such groups can also get Congressional staff and members to meet outside of Congress and, thus, outside the restrictions of 40 USC §5104(e)(2)(G).  Demonstrations can be a means to communicate by media and to a broader group of people without getting appointments.  No one should be under any illusion that certain groups do not care about the right do demonstrate because they do not need that mode of First Amendment expression to petition the government for grievances and to provide First Amendment communication.

## CONCLUSION

For the forgoing reasons, Mr. Vo respectfully request that the Court enter an order finding 40 U.S.C. § 5104(e)(2)(G) fails the First and Fifth Amendments of the

U.S. Constitution for the reasons stated above and also dismissing Count IV of the Information based on such a finding.

Dated: June 29, 2022                                    Respectfully submitted,

                                                       A.J. KRAMER
                                                       FEDERAL PUBLIC DEFENDER


                                                       _____/s/_____
                                                       Maria N. Jacob
                                                       Assistant Federal Public Defender
                                                       D.C. Bar No. 1031486
                                                       625 Indiana Ave. NW, Ste. 550


                                                       Nandan Kenkeremath
                                                       DC Bar 384732
                                                       USDC DC 384732

                                                       *Counsel for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants. From my review of the PACER/ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

June 29, 2022