**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-cr-509-TSC** |
| | : | |
| **ANTONY VO,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE INFORMATION**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Anthony Vo's scattershot Motion to Dismiss the Information in this case, ("Def. Mot"), ECF 26. Vo principally contends that each of the four misdemeanor charges in the Information should be dismissed for failure to include a laundry list of factual details about Vo's crimes at the United States Capitol on January 6, 2021. That flies in the face of Federal Rule of Criminal Procedure 7(c)(1), which requires that an indictment or information "must be a *plain, concise*, and definite written statement of the *essential* facts constituting the offense charged." Vo's other legal claims are also meritless for the reasons set forth below.

**BACKGROUND**

Vo refers to the facts alleged in the Affidavit in Support of a Criminal Complaint ("Affidavit"), filed in this case on July 20, 2021, ECF 1 as the "essential facts." That affidavit provides as follows:[1]

---

[1] Vo suggests that this Court may consider the factual averments in the Affidavit in support of the criminal complaint in assessing the sufficiency of the Information. ECF 26 at 1-3, 8-9, 17-20, 24, 29, 31. Indeed, he treats them as a single submission. *See* ECF 26, i-iv (Table of Contents referring to the Information and Affidavit as the "I&A."). But "[w]hen considering a challenge to the indictment, a district court is limited to reviewing the face of the indictment." *United States v. Grider*, No. CR 21-0022 (CKK), ___ F. Supp. 3d. ___, 2022 WL 392307, at *3 (D.D.C. Feb. 9, 2022) (cleaned up) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). Given Vo's reliance on the Affidavit in his Motion, the Government has pointed to portions of the Affidavit that support its positions herein.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol…. [T]emporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

\* \* \* \*

Antony Vo posted several images and videos to his Facebook and Instagram accounts which depicted his presence in Washington, D.C., and inside the Capitol building, on January 6, 2021.

\* \* \* \*

[A photograph posted on Vo's Facebook page] shows Vo inside the Capitol after it was breached by rioters. The Facebook photo shows Vo inside the Capitol rotunda, with a woman believed to be his mother, who was also present in the Instagram photos. Throughout the background, other people are present in the rotunda, and the crowds appear consistent with other video and images of the riot…. The Instagram photos and videos [on Vo's social media accounts] appear to show crowds of people traveling from the National

Mall to the Capitol building. [Those photos are] consistent with other video and images of the riot…. [Those] images were posted a short time after the events of January 6, 2021.

\* \* \* \*

Records obtained from Facebook, Inc. revealed that Vo had multiple conversations, using his Facebook and Instagram accounts, in which he acknowledged being present in the Capitol building on January 6, 2021. To prove his presence to these other people, Vo sent images of himself and his mother in and near the Capitol building….

Using these accounts, Vo discussed his reasons for entering the Capitol building. In one conversation, Vo acknowledged that "My mom and I helped stop the vote count for a bit." In another conversation, he wrote "President [Trump] asked me to be here tomorrow so I am with my mom LOL." In other conversations, Vo claimed that the results of the 2020 Presidential election were fraudulent.

Vo also discussed how he and other rioters were able to gain access to the Capitol building. In one conversation, Vo claimed that police allowed him and other rioters to enter the Capitol building. A friend asked Vo, "Are you in jail?" Vo replied, "Lol no. They let us [in]," and Vo shared a Twitter post titled "the police opened the f\*\*\*ing gates." Vo's friend replied, "Holy s\*\*\* dude save this tweet" and "Thank you for giving me peace of mind." But elsewhere, Vo participated in the following exchange:

Vo: they [the police] pretty much opened up for us
Vo's friend: The police opened the gate?! I didn't hear that anywhere!
Vo: yeah they stood down and retreated after we clearly outnumbered them.

And, in two different exchanges on Instagram, Vo admitted that he and his mother "stormed" the Capitol.

## ARGUMENT

I.   **The Legal Standard For Reviewing The Sufficiency Of A Charging Document Under Federal Rule of Criminal Procedure 7(c).**

Vo claims all four counts of the Information are deficient because they do not include a laundry

list of facts regarding how he committed the charged crimes. The law is otherwise.

"[T]he validity of an indictment 'is not a question of whether it could have been more definite

and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v.*

*Debrow*, 346 U.S. 374, 378 (1953)); *see also United States v. Williams*, 679 F.2d 504, 508 (5th Cir. 1982)

(Rule 7(c) "does not [require] that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense."); *United States v. Apodaca*, 275 F. Supp. 3d 123, 153-54 (D.D.C. 2017) (Howell, C.J.) (rejecting a Rule 7(c) motion to dismiss § 924 (c) charges on the ground that "they do not identify specific weapons, specify where and when the weapons were possessed, or state whether weapons were 'used, carried or brandished.'"); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (rejecting a Rule 7(c) challenge to a Hobbs Act robbery charge on the ground that the "indictment does not specify what it was that defendants allegedly conspired to steal or precisely how the conspiracy would have affected interstate commerce. Rather, it alleges in conclusory terms that defendants conspired to commit robbery and thereby affected interstate commerce."). Because Rule 7(c) applies equally to informations and indictments, those decisions apply with full force here. *See United States v. Universal C. I. T. Credit Corp.*, 102 F. Supp. 179, 182 (W.D. Mo.) ("suffice it to say that an information need not reveal the evidence a defendant must meet"), aff'd, 344 U.S. 218 (1952).

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)) (indictment charging a violation of 18 U.S.C. § 1461 did not define "obscene"). "[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *Verrusio*, 762 F.3d at 13 (indictment charging accepting of illegal gratuities was not deficient because it did not "allege precisely how Verrusio contemplated influencing [amendments to a federal highway bill]"); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) ("It was enough for the indictment [charging an attempt to violate the unlawful reentry statute, 8 U.S.C. § 1326(a)] to point to the relevant criminal

4

statute and allege that respondent "intentionally attempted to enter the United States ... at or near San Luis ... Arizona" "[o]n or about June 1, 2003.").

Here, as Vo effectively concedes, each count of the information charges a violation of a specified statute, employing the complete statutory language, which includes each of the elements of the charged offense. Each count alleges that Vo committed the charged offense on January 6, 2021, inside the District of Columbia. *See Apodaca*, 275 F. Supp. 3d. at 154 (charges were sufficiently pled because "[i]n addition to 'where' the offenses were allegedly perpetrated, the indictment also states 'when' they were allegedly committed").

Vo does not contend that any court has ever held that a pleading charging any of the subject crimes is deficient for failing to allege any of the items on his laundry lists. *See Alfonso*, 143 F.3d at 776 ("We have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial, and we decline to do so now."). Nor does he claim that the absence in the Information and Affidavit of any of the items from his laundry list prevent him from preparing his defense or will prevent him from pleading double jeopardy if the government charges him in the future for his conduct on January 6. *See Apodaca*, 275 F. Supp. 3d. at 154 (rejecting a Rule 7(c) challenge; "although not included in the indictments, the government has since filed supplemental briefing which includes details of the defendants' past use, carrying, or brandishing of firearms in relation to their drug trafficking activities"; "the language of Count Two, further bolstered by the government's supplemental briefing, sets forth sufficient information so that the defendants are aware of the offense with which they are charged and so that they can prepare an adequate defense or avoid double jeopardy").

He would be hard-pressed to do so, given that he has received voluminous discovery in this case, including:

- copies of all FBI reports regarding its investigation of Vo's crimes;

- videos showing his offense conduct, whether obtained from USCP surveillance equipment, police officer body worn cameras, and videos created by journalists and other third parties who were present at or near the Capitol Building during the January 6 riot; and

- all images and documents the government obtained from Vo's social media accounts and mobile telephone.

That discovery provides Vo with abundant factual details he claims he needs to present a defense.

The cases cited by Vo (Def. Mot. at 3-5) are inapposite. In *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976), defendants were convicted of multiple counts of violating D.C. Code 22-1301(a), which prohibits obtaining something of value by false pretenses with intent to defraud. *Id*. at 700. Those counts alleged that the defendants "made and caused to be made the following representations to the following customers, knowing said representations were untrue" but then inexplicably "fail[ed] to set forth any of the" previously referenced "'representations' that allegedly 'were untrue.'" *Id*. at 700-01. In light of that self-evident gap in the charging language, the D.C. Circuit found those counts failed to sufficiently allege what crime had been committed. The Information in this case contains no such obvious gap in the allegations.

In *United States v. Childress*, 58 F.3d 693 (D.C. Cir. 1995), the D.C. Circuit *rejected* a challenge to the sufficiency of the indictment. It discussed the need for specificity regarding an overt act for crimes that require proof of such an act. *Id*. at 720. But none of the charged crimes here do.

In *United States v. Hitt*, 249 F.3d 1010 (D.C. Cir. 2001), the D.C. Circuit affirmed the dismissal of a conspiracy count, not because the charging language was deficient, but because prosecution of the charged conspiracy was time-barred. *Id*. at 1016. There is no statute of limitations issue in this case.

*United States v. Hillie*, 227 F.Supp.3d 57 (D.D.C. 2017), is readily distinguishable. There, another judge on this Court held that an indictment inadequately alleged violations of the child pornography

statutes because the charges did not "specify the nature of the sexual acts that relate to [the defendant's] unspecified conduct involving video depiction, let alone the manner of his actual or attempted video recording of any such sexual act." *Id*. at 74. The indictment stated only that the defendant "did something involving visual depictions of sexually explicit conduct of a minor 'in the District of Columbia' during periods of time that span two to three years" and "[t]he indictment is barren of factual averments regarding the what, where, or how of [the defendant's conduct], and thus, a non-clairvoyant reader cannot possibly ascertain the substance of the government's accusations from the face of the charging instrument." *Id*. at 72.

In reaching that conclusion, the court placed substantial weight on the broad language in the child pornography production statute, 18 U.S.C. § 2251(a), which "proscribes a wide array of conduct in the broadest, most generic terms," and in the child pornography possession statute, 18 U.S.C. § 2252(a), which also uses a term that can "take on several different, but related, meanings," *id*. at 75. In addition, the challenged counts alleged conduct that took place over several years, and so could implicate many different acts by the defendant, none of which were specified with particularity. *Id*. at 72. Given those uncertainties, the court held that some of the production and possession counts failed to sufficiently inform the defendant about how he "allegedly violated those statutes." *Id*. at 76.

Here, by contrast, Vo is charged with committing the charged crimes on a single day in a specific location. And in contrast to the broad *and* complex statutes at issue in *Hillie*, none of the charged statutes here "proscribe[] a wide array of conduct in the broadest, most generic terms." Rather each establishes clear and simple proscriptions. *See* 18 U.S.C. § 1752(a)(1): entering and remaining in the Capitol Building without authorization; 18 U.S.C. § 1752(a)(2): engaging in disorderly or disruptive conduct intending to disrupt and in fact disrupting government business; 40 U.S.C. § 5104(e)(2)(D): using loud or abusive language or engaging in disruptive conduct inside the Capitol Building; and 40 U.S.C.

§ 5104(e)(2)(G): parading, demonstrating, or picketing in the Capitol Building.

Rather than challenging the sufficiency of the Information, Vo should have moved for a bill of particulars under Federal Rule of Criminal Procedure 7(f) if he believed that he needed additional factual detail in order to prepare his defense. *See United States v. Aaron Mostofsky*, D.D.C. 21-cr-138 (JEB), ECF 36 (granting in part a motion for bill of particulars in a January 6 case).

## II.    Vo's Legal Challenges to Counts One and Two Fail.

Vo challenges Count One, charging a violation of 18 U.S.C. § 1752(a)(1), and Count Two, charging a violation of 18 U.S.C. § 1752(a)(2), collectively and separately. The two subsections state:

> (a) Whoever—
>
> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
>
> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
>
> * * * *
>
> shall be punished.

18 U.S.C. § 1752(a)(1) and (2). Vo's claims fail.

### A.    Count One Sufficiently Alleged That Vo Entered a Restricted Area.

Count One of the Information alleges that on January 6, 2021, Vo "unlawfully and knowingly entered and remained in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds." ECF 8, page one. Vo contends that Count One is deficient because it fails to identify "the necessary posting, cordon or other restriction present at the time of [his] alleged offense." Def. Mot. at 7. Citing nothing, he contends "the specific sign postings, the cordons, or other specific method of restriction at a specific time and location are necessary

8

allegations of facts, critical to claiming the restricted area." *Id*. at 8. He also complains that the Information does not specify the location of the security barriers, *id.*, or that he knowingly walked through signs or cordons, *id.* at 10. These claims fail.

Nothing in the statutory text or any decision construing § 1752 suggests that the precise manner in which an area is restricted is an element of § 1752(a)(1). *See Apodaca*, 275 F. Supp. 3d at 153-54 (§ 924(c) charges did not need to "specific weapons, specify where and when the weapons were possessed, or state whether weapons were 'used, carried, or brandished.'"). Vo points out that the Capitol Building and Grounds are not "*per se* restricted." Def. Mot. at 9. That may be, but the Information alleges that they were restricted on January 6 because of the presence of the Vice President, and the Affidavit alleges that they were restricted on account of the certification vote. Vo is not charged with unlawfully entering and remaining in the Capitol Building and Grounds at a time when they were not restricted, so his general point is of no moment.

Vo claims that he is not accused of violating a direct police instruction not to enter a restricted area. Section 1752(a)(1) contains no such requirement. That the defendant in *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) may have disobeyed such an express order, Def. Mot. at 10, does not create a requirement that does not exist in the statute.

**B.     Count One Sufficiently Alleged That Vo Knew He was Entering a Restricted Area**.

Vo says the Information does not allege he had knowledge of a posted, sign, cordon, or other restriction to establish *mens rea*. Def. Mot. at 10. The Information alleges that Vo knowingly entered a restricted area. ECF 8, Count One. As explained above, no more is needed. *See generally United States v. Webster*, 125 F.3d 1024, 1030 (7th Cir. 1997) (rejecting a Rule 7(c) challenge where the "indictment alleges, in the language of the statute, the time and place of the fraudulent concealment; the person accused of violating the bankruptcy fraud statute; the manner ("knowingly and fraudulently") in which

he concealed the property; the general identification of the party (a "trustee") from whom it was concealed; and the general identity of the property as part of a bankruptcy estate.").

### C.  Vo's Claim That Only the Secret Service Can Designate Restricted Areas Under § 1752 Is Meritless.

Vo contends he is immune from liability under § 1752 because, in anticipation of the certification vote, the United States Capitol Police, not the Secret Service, determined the locations of the fences and other barricades and the "Do Not Enter" signs around the Capitol Building that were in place on January 6. Def. Mot. at 11-13. He's wrong.

The text of Section 1752 "is not complex," *United States v. Griffin*, 549 F.Supp.3d 49, 54 (D.D.C. 2021) (McFadden, J.). Like the defendant in *Griffin*, Vo "contends that the Secret Service must 'establish' the restricted area under § 1752(c)(1)," "[b]ut that requirement is not in the text." *Id*. at 54-55. "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." *Id*. at 55. The text "plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area," *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891, at *13 (Boasberg, J.) (D.D.C. December 28, 2021). "Congress's failure to specify how an area becomes 'restricted' just means that the statute does not require any particular method for restricting a building or grounds." *See United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *18 (D.D.C. Feb. 1, 2022) (Bates, J.)

All the other judges of this court to have addressed this issue, now totaling eight, have come to the same conclusion as Judge McFadden in *Griffin*.[2] Vo focuses on a single hypothetical posed by Judge

---

[2] *See United States v. Andries*, 21-cr-93 (RC), 2022 WL 768684, at *14 (D.D.C. March 14, 2022); *United States v. Bozell*, 21-cr-216 (JDB), 2022 WL 474144, at *8 (D.D.C. Feb. 16, 2022); *United States v. Nordean*, 21-cr-175 (TJK), 2021 WL 6134595, at *18 (Dec. 28, 2021); Omnibus Order, *United States v. Caldwell*, Crim. No. 21-28 (APM) (D.D.C. Sept. 14, 2021) [Dkt. No. 415] at 4; *United States v. Puma*, 1:21-cr-0454 (PLF), 2022 WL 823079, at *14–16 (D.D.C. Mar. 19, 2022); *United States v. Bingert*, 1:21-cr-91(RCL), 2022 WL 1659163, at *14 (D.D.C. May 25, 2022).

McFadden in *Griffin* and distinguishes it from this case. Def. Mot. at 13. But Vo ignores that *Griffin* rested on a thorough examination of the statutory text, legislative history, and judicial decisions to debunk the claim that the Secret Service has exclusive authority to restrict locations under § 1752. 549 F. Supp. 3d at 53-57. The hypothetical was wholly unnecessary to the result.

Vo also claims that *Griffin*'s "reasoning creates a different kind of absurd result –viz, anyone claiming to be a part of law enforcement could post a sign designating an area as restricted and a criminal defendant could then be penalized for trespassing because they "willfully" ignored the sign." Def. Mot. at 13. That's not this case. The restrictions were imposed by the USCP, a police force that has undisputed Congressional authority to protect the Capitol Building and Grounds. *See* 2 U.S.C. § 1961 (Capitol Police "shall police the United States Capitol Buildings and Grounds," and shall do so "under the direction of the Capitol Police Board").

**D.      Vo's Claim That He Cannot Be Guilty Of Violating 18 U.S.C. § 1752 Because Former Vice-President Pence Was Not "Temporarily Visiting" The Capitol On January 6 Is Meritless.**

Vo says he cannot be guilty of violating § 1752 on January 6 because former Vice President Mike Pence was not "temporarily visiting" the Capitol on that day. Def. Mot. at 14-16. Specifically, he contends that these charges fail to state an offense because, in his view, the Vice President was not "temporarily visit[ing]" the U.S. Capitol when he was carrying out his constitutionally and statutory mandated obligations in the Capitol building on January 6, 2021. He's wrong.

Vo's argument defies the plain text, structure, and purpose of the statute. Chief Judge Howell correctly rejected an analogous claim in *United States v. Williams*, 1:21-cr-377, ECF No. 88 (D.D.C. June 8, 2022). At least four other judges of this District have rejected permutations of the same arguments in other January 6 cases. *See United States v. McHugh*, 21-cr-453, 2022 WL 296304, at *20-21 (D.D.C. Feb. 1, 2022) (Bates, J.); *United States v. Andries*, 21-cr-93, 2022 WL 768684, at *16-17 (D.D.C. Mar.

14, 2022) (Contreras, J.); *United States v. Puma*, 21-cr-454, 2022 WL 823079, at \*16-18 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at \*15 (D.D.C. May 25, 2022) (Lamberth, J.). No district judge has sided with Vo's view.

This Court should reach the same conclusion here. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (internal quotation omitted) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Subsection 1752(c)(1)(B) defines "restricted buildings or grounds," in relevant part, as "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be *temporarily visiting*." (Emphasis added). In turn, the verb "visit" means, *inter alia*, "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[3]  And the adverb "temporarily" adds that the protectee's visit must occur "during a limited time."[4]

As a textual matter, then, definition of "visit" plainly describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the information, two other Secret Service protectees (members of the Vice President's immediate family), also came to the Capitol building that day for a particular purpose: to observe these proceedings while they were ongoing and Vice President Pence was present. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. And all three protectees visited the Capitol temporarily—*i.e.*, during a limited time. Given the nature of the presence of the Vice President (and his family members), the Capitol building

---

[3]     https://www.merriam-webster.com/dictionary/visit (last visited July 19, 2022).

[4]     https://www.merriam-webster.com/dictionary/temporarily (last visited July 19, 2022).

plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting," 18 U.S.C. § 1752(c)(1)(B). *See Williams*, No. 1:21-cr-377, ECF No. 88, at 5-6 (adopting the "plain reading of the words" in subsection 1752(c)(1)(B) urged by the government); *McHugh*, 2022 WL 296304, at *21 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *Andries*, 2022 WL 768684, at *16 ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *Puma*, 2022 WL 823079, at *17 (under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification."). Vo has given this Court no reason to depart from the rulings of its colleagues.

## III.   Vo's Complaints About The Lack Of Greater Factual Specificity In Count Two Fails.

### A.   Count Two Sufficiently Alleged That Vo Entered A Restricted Area.

Vo states, "As discussed above with respect to the discussion on 18 USC §1752(a)(1), the I&A fails to properly identify such area at the time and location of the allegedly violative conduct." Def. Mot. at 16. As discussed above, *see* Point II(B) above, he's wrong.

### B.   Count Two Sufficiently Alleges that Vo Engaged In "Disorderly or Disruptive Conduct."

Vo contends that Count Two fails to allege sufficient facts that he engaged in disorderly or disruptive conduct. Such specificity is not required. *See* Point I, *supra*. In any event, the Affidavit alleges that Vo admitted that he and his mother "breached the Capitol" on January 6. Regardless of whether the "ordinary understanding" of "disorderly" or "disruptive" conduct embraces "peacefully standing" in an area that is restricted against any entry whatsoever, as Vo claims he did, Def. Mot. at 17, *breaching* the

Capitol on January 6 while it was restricted by signs and barriers certainly does. A "breach" is an "infraction or violation of a law, obligation, tie, or standard." https://www.merriam-webster.com/dictionary/breach (visited July 19, 2022).

**C.    Count Two Sufficiently Alleged That Congress Was Engaged In "Official Business" While Vo Was In The Capitol.**

Vo contends that, because the Affidavit alleges he was in the Capitol when Congress was in recess because of the breach of the Capitol by violent rioters, it fails to allege that he personally engaged in conduct that disrupted Congressional business. Def. Mot. at 17-18. But the Affidavit alleges that only after police were able to expel all the rioters from the Capitol, a group which would have included Vo, was Congress able to reconvene and continue their deliberations regarding certification. Those allegations are sufficient to put Vo on notice that his presence in the Capitol, acting in concert with hundreds of other rioters during the recess, disrupted, at least for a time, the certification vote. Indeed, it was the sufficient and necessary cause of that disruption. *See United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (An indictment must be read to include facts which are necessarily implied by the specific allegations made.") (cleaned up).

**D.    Count Two Sufficiently Alleged That Vo Disrupted the Certification Vote.**

Vo relatedly contends that the Information and Affidavit failed to sufficiently allege that his disruptive conduct "in fact" impeded or disrupted the Congressional certification vote. Instead, it alleges only that he was inside the Capitol when the certification vote was disrupted. Def. Mot at 18.

That's wrong. Count Two expressly alleges that Vo disrupted the proceedings, and no more is needed. *See* Point I, *supra*. Vo does not show how the statutory language or any case construing it requires that the government prove that his conduct was a "but for" cause of the disruption. The Information and Affidavit allege that Vo joined a riot that caused the certification vote to be suspended for hours. The degree to which his own participation contributed to the disruption may be a relevant consideration if and

when he is sentenced but is not a basis to dismiss the § 1752(a)(2) count.

**IV.   Vo's Complaints About The Lack Of Greater Factual Specificity In Count Three Fails.**

Vo raises several meritless challenges to Count Three, charging a violation of 40 U.S.C.

§ 5104(e)(2)(D), which states:

> (2) Violent entry and disorderly conduct.--An individual or group of individuals may not willfully and knowingly—
>
> * * * *
>
> (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress,

40 U.S.C. § 5104(e)(2)(D).

**A.   Count Three Sufficiently Alleged That Vo Engaged In "Disorderly or Disruptive Conduct."**

Vo contends the "The Affidavit does not have factual allegations that either Defendant uttered loud, threatening, or abusive language" or "identify any legally cognizable disorderly or disruptive conduct." Def. Mot. at 19. But § 5104(e)(2)(D) requires the government to prove *either* "loud, threatening, or abusive language" *or* "disorderly or disruptive conduct," not both. As explained in Point III(B), *supra*, the Information and Affidavit sufficiently allege disruptive conduct, "breaching the Capitol." In any event, Count Three charges both means of violating the statute, and the trial evidence may prove either or both since both are sufficiently plead. *See generally United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010) (an indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive").

15

**B.      Count Three Sufficiently Alleged That Congress Was Conducting Business While Vo Was Inside the Capitol.**

Vo repeats his claim that the Affidavit fails to allege that he was on Capitol grounds at 2:00 p.m. when the certification vote was suspended. Def. Mot. at 19. The government incorporates its response in Point II(C), *supra*.

**C.      Count Three Sufficiently Alleged Vo's *Mens Rea*.**

Vo contends the Affidavit alleges no facts to show he "willfully and knowingly" violated § 5014(e)(2)(D) or "intended" to do so. Def. Mot. at 20. The Information alleges those *mens rea* elements and so sufficiently pleads that element. ECF 8, Count Three. Moreover, the Affidavit alleges that Vo bragged after the fact that he and his mother "breached the Capitol" and "helped stop the vote count for a bit." Those admissions provide more than sufficient specificity, at this early stage of the litigation, regarding Vo's *mens rea*.

**V.      Vo's Complaints About The Lack Of Greater Factual Specificity In, And Other Challenges To, Count Four, Fail.**

Vo's challenges to Count Four, charging a violation of 40 U.S.C. § 5104(e)(2)(G), similarly fail. That subsection states:

>      (2) Violent entry and disorderly conduct.--An individual or group of individuals may not willfully and knowingly—
>
>      *   *   *   *
>
>      (G) parade, demonstrate, or picket in any of the Capitol Buildings.

40 U.S.C. § 5104(e)(2)(G).

**A.      Count Four Sufficiently Alleged That Vo Was "Parading, Demonstrating, and Picketing."**

Vo complains that the Affidavit fails to "describe[] any overt action that can constitute the alleged offense of 40 USC §5104(e)(2)(G)." Def. Mot. at 20. He contends the Affidavit discusses only private

texting and taking pictures, "which are not 'parading,' 'demonstrating,' or 'picketing.'" But again, Count Four alleges that Vo did all of those things, which is sufficient at this point. Moreover, the Affidavit contains a photograph of Vo and his mother, posing for a photograph, inside the Rotunda while the riot was underway inside the Capitol and, at time, in that very room. That is sufficient to allege, at this stage at least, "demonstrating." *See* Point I, *supra*.

Vo points out the Information does not allege that Vo had an "organization relationship" with anyone else, "displayed signs," "blocked any hallway or path," or other supposed indicia of other instances of parading, demonstrating, or picketing. Def. Mot. at 20. But neither § 5104(e)(2)(G) nor any judicial decision construing it requires the government to prove those particular indicia, so the Information cannot be deficient for failing to allege that Vo did any of those things. *See* Point I, *supra*.

**B.      Count Four Sufficiently Alleged That Vo's Conduct Took Place in a Capitol Building.**

Vo contends that § 5104(e)(2)(G) prohibits only entering or remaining in "specific locations within the Capitol Building." Def. Mot at 21. The statue contains no such restriction. *See* 18 U.S.C. § 5104(e)(2)(G) (prohibiting unlawful conduct "in *any* of the Capitol Buildings.")

**C.      Count Four Permissibly Alleged That Vo Paraded, Demonstrated, And Picketed.**

Vo claims the Information fails to allege sufficient facts regarding which of the prohibited acts, "parading," "demonstrating," or "picketing," he engaged in. Def. Mot. at 21. But Vo is not entitled to limit the government's evidence to fewer than all the possible means of violating a statute. "[A]s the Supreme Court has repeatedly held, the government is entitled to prove criminal acts in the disjunctive, notwithstanding that the indictment charges them in the conjunctive." *United States v. Coughlin*, 610 F.3d 89, 106 (D.C. Cir. 2010). Vo cites nothing to show that the government is required to identify the defendant's specific acts that prove each of that alternative means to commit an offense.

### D.     Count Four Sufficiently Alleges That Vo Did More Than Walked and Talked Inside The Capitol On January 6.

Vo claims the "conduct that comprises a violation under 40 USC §5104(e)(2)(G) cannot be the same as that would indict ordinary visitors in any given day in the Capitol." Def. Mot. at 21. He contends the government must allege "specific conduct inside the Capitol that is more than walking or standing among people at the Capitol." *Id*. at 22. The Information alleges that Vo knowingly and willfully paraded, demonstrated, or picketed. *See* ECF 8, Count Four. It therefore charges conduct that would be illegal at all times and is entirely different from conduct in which members of the public lawfully visit the Capitol when it is open to the public—as it was not on January 6.

### E.     *United States v. Bradley* Does Not Support Vo's Effort To Dismiss Count Four.

Vo invokes (Def. Mot. at 22) *United States v. Bradley*, 418 F. 2d 688 (4th Cir. 1968), but that case has nothing to do with the sufficiency of Count Four. There, the court held that the evidence of the defendant's conduct adduced at trial did not prove a violation of a regulation adopted pursuant to an entirely different statute, 18 U.S.C. § 1382, which prohibits certain conduct vis-à-vis the entry onto military, naval, or Coast Guard property. There, the evidence proved that the defendant engaged in handing out leaflets, but the court held the regulation "does not in terms prohibit hand-billing." 418 F.2d at 690. All the specific acts identified in the regulation dealt with expressions that are "not merely offered to the public, but overtly displayed and proclaimed." *Id*. Defendants' handing out of leaflets was not that kind of conduct.[5]

Like the defendants in *Bradley*, Vo will have an opportunity to argue to the trial court that his

---

[5] Vo also cites *Kroll v. United States*, 590 F. Supp. 1282 (D.D.C. 1983), a civil action in which the plaintiff alleged that he was unlawfully arrested while protesting. Not only does that case have nothing to do with the pleading standards under Criminal Procedure Rule 7(c), but Vo declines to mention that the decision he relies on was rejected in two separate appeals to the D.C. Circuit. *See Kroll v. U.S. Capitol Police*, 847 F.2d 899, 900-02 (D.C. Cir. 1988) (discussing procedural history).

conduct was not one of the activities prohibited by, in this case, § 5104(e)(2)(G). At this stage, his claim is premature. *See Alfonso*, 143 F.3d at 776-77 ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment").

### F.  Count Four Was Sufficient Without Alleging That A Police Officer Told Him He Was Violating The Law.

Vo claims Count Four is deficient because it fails to allege that "any officer informed him that his conduct was an illegal parade, picket or demonstration." Def Mot. at 23. Because the government need not prove that to obtain a conviction under § 5104(e)(2)(D), the Information need not alleged it.

### G.  *Bynum v. Capitol Police Board* Does Not Support Vo's Attempt To Dismiss Count Four.

Vo claims that *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000) "found regulations purporting to implement 40 U.S.C. § 5104(e)(2)(G) to violate the First Amendment and Due Process." Def. Mot. at 23. He fails to show *Bynum* requires dismissal of Count Four.

In *Bynum*, Judge Friedman ruled that a Capitol Police regulation interpreting § 5104(e)(2)(G) that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57. *Bynum*'s invalidation of a Capitol Police regulation—which was applied to an individual who was denied permission to pray inside the Capitol building—does not inform the statutory challenge that Vo presses here. Moreover, Judge Friedman in *Bynum* concluded that the inside of the Capitol building is a nonpublic forum, where the government may restrict First Amendment activity if "the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *Id.* at 56 (citing *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 806 (1985)). He reasoned that, although the regulation went too far, § 5104(e)(2)(G) itself set forth "legitimate purposes," *id.* at 57, that were "aimed

at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id*. at 58. In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442,  449 n.6 (2008) (internal quotation marks omitted).

### H.    The "Tourist Standard" Does Not Compel Dismissal Of Court Four.

Vo claims that he cannot be convicted for violating 40 U.S.C. § 5104(e)(2)(G) if he complied with the "tourist standard." Def. Mot. at 24-26. That standard has nothing to do with his attempt to dismiss Count Four for two fundamental reasons. First, the cases he cites[6] demonstrate that his argument must be reserved for a challenge to the trial evidence and/or jury instructions but has nothing to do with the sufficiency of the Information.

Second, whatever the limits that lawfully can be placed on actual tourists who are visiting the Capitol when it is open to the public, they do not apply when, as on January 6, the Capitol was closed to the public and no one could enter without authorization. Vo was no tourist of the Capitol building on January 6. As Judge Lamberth stated in the sentencing hearing in *United States v. Anna Morgan Lloyd*, 1:21-cr-164 on June 23, 2021, "I'm especially troubled by the accounts of some members of Congress that January 6th was just a day of tourists walking through the Capitol. I don't know what planet they were on." Transcript at p. 19. *See id*. at p. 20 ("the attempt of some congressmen to rewrite history and say this was all just tourists walking through the Capitol is utter nonsense.").

---

[6] *See Grogan v. United States*, No. 19-CM-1030 (D.D.C. Mar. 17, 2022) (appeal from conviction for violation of D.C. Code § 10-503.16(b)(7)); *Berg v. United States*, 631 A.2d 394, 395 (D.C. 1993) (appeal from conviction for violation of D.C. Code § 9–112(b)(7)); *Hasty v. United States*, 669 A.2d 127, 129 (D.C. 1995) (same); *Markowitz v. United States*, 598 A.2d 398, 400 (D.C. 1991) (same); *Wheelock v. United States*, 552 A.2d 503, 505 and n. 1 (D.C. 1988) (appeal from conviction for violation of D.C. Code § 22-1307(b)).

**VI.      Vo's First Amendment Challenges to 40 U.S.C. § 5104(e)(2)(G) Fail.**

Vo contends that application of 40 U.S.C. § 5104(e)(2)(G) to his alleged conduct violates his rights under the First Amendment. He's incorrect.

> **A.      Vo's Claim That The Trial Court Must Apply "The Tourist Standard" In Adjudicating Whether Vo Violated § 5104(e)(2)(G) Is Not Basis To Dismiss Court Four.**

Vo points to the cases cited earlier in his brief to claim that the finder of fact must apply the "tourist standard" in adjudicating the charge of violating § 5104(e)(2)(G). Def. Mot. at 26. Again, that is not basis to dismiss the § 510(e)(2)(G) count. *See* Point III(H), *supra*.

> **B.      Vo's Speculation That The Government Will Attempt To Convict Him For Attending The Rally On The Ellipse Is No Basis To Dismiss Count Four.**

Vo worries that "the government may be arguing [that his] presence in the Capitol in connection with a rally Mr. Vo attended much earlier, *by itself*, constitutes the offense, even though there is no actual allegation of conduct other than presence, walking and talking pictures." Def. Mot. at 27 (emphasis added). He acknowledges such a prosecution theory at trial is merely "hypothetical." *Id*. If carried out, that hypothetical approach would, he claims, violate his rights to peacefully assembly at the Ellipse. Id. at 26.

Plainly, there is no basis to dismiss Count Four based on what Vo worries the government might do at trial. Vo does not claim and could not show that evidence of his attendance at the rally would be inadmissible to prove his guilt under § 5104(e)(2)(G). Unless and until the government seeks to hold Vo liable under § 5104 *solely* for his conduct before he entered the Capitol building or grounds, this Court need not address this admittedly hypothetical claim.

**C.      Vo's Concern That The Government Will Not Prove That He Disobeyed A Police Command To Leave The Capitol Does Not Justify Dismissal Of Count Four.**

Vo again contends that, unless the Government proves that he ignored a police command to depart from the Capitol, he cannot be convicted for violating § 5104(e)(2)(G). Def. Mot. at 27-28. Regardless of the accuracy of Vo's legal claim, his speculative claims about the sufficiency of the evidence cannot justify dismissal of Count Four. *See Alfonso*, 143 F.3d at 776-77.

**D.      Vo's Overbreadth and Vagueness Challenges To Section 5104(e)(2)(G) Fail.**

Vo contends the government will seek to convict him for "standing, walking, texting or taking pictures" inside the Capitol, which would render § 5104(e)(2)(G) constitutionally overbroad and violate the Due Process prohibition against vague statutes. Def. Mot. at 28-29. These claims fail.

In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange*, 552 U.S. at 450. Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal quotation marks omitted)—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "strong medicine" to be employed "only as a last resort." *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers*

*for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Vo's very abbreviated challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. The prohibition in § 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583 (D.D.C. 1972). The operative verbs—parade, demonstrate, and picket—principally target conduct rather than speech, and those verbs are paired with the "willfully and knowingly" scienter requirements, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad).

At the very least, Vo cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted). The prosecution of Vo for his own conduct—which involved physically trespassing into the restricted Capitol on the heels of others who had forcibly breached the building—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984), Vo fails to identify a single actual example of a prosecution based on protected speech. The limitations inherent in the crime of conviction, moreover, render the possibility of any such

prosecutions marginal at best, and any such case could be the subject of an as-applied challenge. Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (cleaned up), of overbreadth invalidation.

Vo cites *NAACP v. Button*, 371 U.S. 415 (1963) and *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982), Def. Mot. at 28, but neither advances his cause. In *NAACP*, the Supreme Court held that activities of the NAACP and its Legal Defense Fund to solicit plaintiffs to bring lawsuits challenging official racial discrimination were "modes of expression and association" that were protected by the First and Fourteenth Amendments that the Virginia Supreme Court could not prescribe in its role of regulating the legal profession. 371 U.S. at 428-29. Section 5104(e)(2)(G) prohibits physical conduct, not legal advocacy or association, and so does not intrude into First Amendment protected realms in the way that the challenged regulations did in NAACP.

*Hoffman Estates* cannot help Vo, as the Supreme Court there *rejected* both the First Amendment and void for vagueness challenges to a village ordinance that required a business to obtain a license for selling any items designed or marketed for use with illegal cannabis. 455 U.S. at 505

Vo's very limited vagueness challenge (mentioned in passing, without discussion, in one sentence on Def. Mot. at 29) is also meritless. But this Court should not even consider such an undeveloped claim. *See United States v. Caraballo-Cruz*, 52 F.3d 390, 393 (1st Cir. 1995) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *United States v. Hughson*, 488 F. Supp. 2d 835, 841 n.2 (D. Minn. 2007) (denying motion to dismiss "[s]ince Hughson offers no more than a conclusory argument that dismissal of the perjury Count requires a dismissal of the obstruction of justice Count"); *United States v. Martin*, No. 1:98-CR-329-RCL, 2022 WL 1618869, at *11 (D.D.C. May 23, 2022) (Lamberth, J.) (denying relief under 28 U.S.C. § 2255; "conclusory arguments may be summarily dismissed") (quoting *Mitchell v. United States*, 841 F. Supp.

2d 322, 328 (D.D.C. 2012) and *United States v. Geraldo*, 523 F. Supp. 2d 14, 22 (D.D.C. 2007)). If the Court nonetheless reaches the merits, it should deny it for the reasons given in the government's response to Vo's First Amendment dismissal motion (ECF No. 27).

**VII.   Vo's Double Jeopardy And Multiplicity Claims Are Baseless**

Vo claims that the Information violates the prohibitions against double jeopardy and multiplicity. Def. Mot. at 29-31. He's wrong.

The government does not violate the Double Jeopardy Clause when it charges a defendant with multiple offenses where each contains an element the other(s) do not. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* (citing *Morey v. Commonwealth*, 108 Mass. 433 (1871)).

Vo does not contend that any the four charges fail this test: he does not identify any of the subject charges for which all the elements are among the elements of another charge. Even a cursory reading of the four statutes shows that each contains an element the others do not. Vo's double jeopardy claim fails under the *Blockburger* test. *See United States v. McLaughlin*, 164 F.3d 1, 10 (D.C. Cir. 1998) ("Examining the elements of § 1513(b) and each of the D.C. assault provisions at issue reveals that under the *Blockburger* test, § 1513(b) is distinct from both assault with intent to kill while armed and aggravated assault while armed.").

Vo's related multiplicity claims fares no better. "A multiplicitous indictment charges the same

crime in multiple counts, which violates the Fifth Amendment's prohibition against double jeopardy." *United States v. Doost*, 3 F.4th 432, 437 (D.C. Cir. 2021) "The Fifth Amendment ... protects not only against a second trial for the same offense, but also against multiple punishments for the same offense." *Whalen v. United States*, 445 U.S. 684, 688 (1980) (cleaned up). *See United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (applying *Blockburger* and rejecting a claim that eight of the VICAR assault and murder counts were multiplicitous of the analogous D.C. criminal counts of assault with a dangerous weapon, assault with intent to murder while armed, and first-degree murder while armed).

Vo contends that the § 1752(a)(1) charge is a lesser included offense of the § 1752(a)(2) charge. Def. Mot. at 31. Not so. Section 1752(a)(1) requires proof that the defendant enters or remains in any restricted building or grounds "without lawful authority to do so." 18 U.S.C. § 1752(a)(1). Section 1752(a)(2) contains no such requirement, so Vo's claim flunks the *Blockburger* test.

Vo also contends that, in charging violations of both § 1752(a)(2) and § 5104(e)(2)(D), "the Government is seeking to apply functionally similar language under two statutes to a single offense." *Id.* Whatever Vo's "functionally similar language" test is or where it comes from, it is not the *Blockburger* test, which controls. Section 5104(e)(2)(G) requires proof of uttering "loud, threatening, or abusive language, or engage in disorderly or disruptive conduct," 40 U.S.C. 5104(e)(2)(G). Section 1752(a)(2) contain no such requirements. Whatever the "functional similarity" of those statutes, charging both does not violate the Double Jeopardy Clause or result in a multiplicitous indictment.

Vo contends he is at risk of receiving multiple sentences for the same offense, or for an offense and a lesser included offense. Def. Mot. at 30. But that is hardly a basis to dismiss any counts in the information. If and when Vo is convicted of more than one count, there will be time enough for him to claim that he cannot receive consecutive sentences if he can show that any of the counts are multiplicitous.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Vo's Motion to Dismiss the Information.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Michael J. Romano*
MICHAEL J. ROMANO
IL Bar No. 6293658
Trial Attorney, Detailee
555 4th Street, N.W.
Washington, D.C. 20530
Telephone No. (202) 307-6691
michael.romano@usdoj.gov