## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-cr-00509 (TSC) |
| | : | |
| ANTONY VO | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT FOUR OF THE INFORMATION

The United States respectfully opposes defendant Antony Vo's motion to dismiss Count Four of the Information. ECF No. 27. In his motion, Vo contends that Count Four, which charges that he "willfully and knowingly paraded, demonstrated, and picketed in a Capitol Building," ECF No. 7 at 3, violates the First and Fifth Amendments. Those contentions lack merit, and Vo's motion should be denied.

## BACKGROUND

1. At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol,

including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

On January 6, 2021, Vo attended former President Trump's "Stop the Steal" rally, then traveled to the Capitol. He then traveled to the Capitol building, recording and broadcasting part of his travels on Instagram. Vo entered the Capitol through a breached door on the west side of the building at approximately 2:25 p.m. and from there, walked to the Capitol's Rotunda. There, he posed for a picture, which he posted to Facebook as proof that he had entered the Capitol. Vo left the Capitol through the east Rotunda doors at approximately 3:04 p.m. In private conversations after the riot, conducted via Facebook and Twitter, Vo acknowledged that he helped, for a time, to stop the counting of the Electoral College vote. He also acknowledged that the police officers "stood down and retreated after we clearly outnumbered them."

2. On July 20, 2021, Vo was charged by complaint. On August 5, 2021, the government filed an Information, charging Vo with four offenses: entering and remaining in a restricted building or ground, in violation of 18 U.S.C. § 1752(a)(1) (Count One); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four). ECF No. 7. Vo now moves to dismiss Count Four on various grounds.

3. Congress passed the predecessor statute to Section 5104(e), which prohibits certain "unlawful activities" in Capitol Buildings, or on Capitol Grounds, or both, in 1946. *See* Act of July 31, 1946, 60 Stat. 719, 720 (then codified at 40 U.S.C. § 193); *see Bynum v. U.S. Capitol Police*

*Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000).[1]  One provision in the 1946 legislation made it a crime to "parade, stand, or move in processions or assemblages" or to display "any flag, banner or device designed or adapted to bring into public notice any party, organization, or movement" on Capitol Grounds. *See* 40 U.S.C. § 193g (1964).[2]  In 1967, Congress enacted the provision at issue here, which makes it a crime "willfully and knowingly [to] parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G) (originally enacted as 40 U.S.C. § 193f(b)(7)). The 1967 legislation thus "ma[de] clear that the 1946 act relates not only to the Capitol Grounds but also to acts committed within the Capitol Building itself as well as other buildings located on the Capitol Grounds." 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Anderson). In 1972, a three-judge panel of this Court struck down the prohibition in Section 193g (parading on Capitol Grounds), reasoning that although the government had a substantial interest in protecting the Capitol Grounds, that interest was not sufficient to "override the fundamental right to petition 'in its classic form' and to justify a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on Capitol Grounds." *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 585 (D.D.C. 1972). In reaching that conclusion, the three-judge panel identified "existing laws regulating conduct" in the Capitol that its decision did not affect, including the prohibition at issue here. *See id.* at 587-88.

## LEGAL STANDARDS

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging

---

[1] Section 5104(e) exempts from its prohibitions Members of Congress and officer and employees of Congress. *See* 40 U.S.C. § 5104(e)(3).

[2] The prohibition contained certain exceptions not relevant here. *See* 40 U.S.C. §§ 193j & 193k (1964).

document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

## ARGUMENT

Vo advances two central arguments: (1) Section 5104(e)(2)(G) impermissibly restricts speech in a public place in violation of the First Amendment (Mot. 5-15); and (2) Section 5104(e)(2)(G) is unconstitutionally vague and overbroad in violation of the First and Fifth Amendments (Mot. 15-21). Neither argument has merit.

**I.      Vo's First Amendment claim is premature but fails in any event because Section 5104(e)(2)(G) is a permissible restriction in a nonpublic forum.**

Vo first argues that Section 5104(e)(2)(G) constitutes an impermissible restriction on speech in a public place. That claim is premature because it requires an analysis of Vo's conduct, which is not before the Court at this stage in the case. In any event, Vo's claim lacks merit. More than 20 years ago, Judge Friedman concluded that the Capitol building is a nonpublic forum and that Section 5104(e)(2)(G) is a "viewpoint neutral, reasonable regulation of both conduct and expressive activity" in such a forum. *See Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000). Vo offers no compelling reason to deviate from that sensible conclusion.

A First-Amendment challenge involves three steps. First, the speech or conduct at issue must be protected under the First Amendment. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985). If so, the analysis then focuses on "the nature of the forum, because to the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* In particular, a given location may be a traditional public forum, a designated public forum, or a nonpublic forum. *See Bynum*, 93 F. Supp. 2d at 55. The third step "assess[es] whether the justification for exclusion from the relevant forum satisfies the requisite standard." *Cornelius*, 473 U.S. at 797.

A. Vo's claim founders at the first step because he cannot establish at this point that his case involves speech or conduct protected by the First Amendment. *See Cornelius*, 473 U.S. at 797 (noting that where speech or conduct is not protected by the First Amendment, a court "need go no further"). He advances the blanket assertion that any violation of Section 5104(e)(2)(G), which makes it a crime for an individual to knowingly and willfully "parade, demonstrate, or picket" necessarily involves speech or conduct protected by the First Amendment. To be sure, certain conduct "such as picketing or demonstrating" may be so closely associated with speech as to warrant First Amendment protection, *see Virginia v. Hicks*, 539 U.S. 113, 124 (2003), at least where the picketing is "peaceful." *See United States v. Grace*, 461 U.S. 171, 176 (1983).  But no evidence of Vo's precise conduct is before the Court; the record consists of the allegations in the Information. Vo may raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C.

Cir. 2005) (emphasis added)—neither of which has occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010); *see Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context").

Vo's reliance on First Amendment challenges in civil cases is flawed. For example, in *Bynum*, the parties had agreed in their summary judgment motions that the plaintiff's conduct— praying—garnered First Amendment protection. 93 F. Supp. at 54. In *Jeanette Rankin Brigade*, the cross-motions for summary judgment and the "variety of affidavits and exhibits," 342 F. Supp. at 579, made clear that the plaintiffs' conduct—which involved a march to protest the Vietnam war—likewise merited First Amendment protection, *id.* at 578. Similarly, the cross-motions for summary judgment in *Lederman v. United States*, 89 F. Supp.2d 29 (D.D.C. 2000), identified "undisputed," *id.* at 30, facts showing that the plaintiff sought to distribute leaflets, *id.* at 31, a practice long recognized as falling within the ambit of the First Amendment. *See Grace*, 461 U.S. at 176. And in *Cornelius*, the Supreme Court had a record on summary judgment from which it could conclude that the charitable soliciting of funds qualified as a "form of protected speech." 473 U.S. at 796-97. No such record yet exists in this case, which involves Vo's participation in a siege at the United States Capitol that involved significant violence against uniformed police officers and forced lawmakers meeting in a Joint Session to evacuate from their respective chambers. This court should therefore deny his First Amendment claim[3] as premature.

---

[3] The First Amendment claim referred to here encompasses Vo's argument (Mot. 6-15) that Section 5104(e)(2)(G) is an impermissible restriction in a public forum. As noted *infra*, Vo's overbreadth and vagueness arguments fail for other reasons.

To the extent Vo seeks to argue that Section 5104(e)(2)(G) contravenes the First Amendment, he must do after trial. *See United States v. Kokinda*, 497 U.S. 720, 724-25 (1990). In *Kokinda*, two defendants were prosecuted for violating a United States Postal Service regulation that prohibited soliciting contributions outside of a post office. *Id.* at 723. As Vo does here, they advanced a First Amendment claim, namely, that the regulation was an impermissible restriction in a public forum—the sidewalk outside the post office. *Id.* at 724. But they pressed that claim after a trial established precisely what their conduct entailed, where it took place, and relevant facts about the sidewalk outside the post office. *Id.* at 724-25. Because, by contrast, Vo's First Amendment challenge is premature, this Court should "go no further." *Cornelius*, 473 U.S. at 797

B. In any event, Vo's First Amendment claim—that the Capitol building should be considered a public forum—lacks merit. A traditional public forum is a place that "by long tradition or government fiat" has been "used for assembly, communicating thoughts between citizens, and discussing public questions." *Perry Education Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983). A traditional public forum must bear "characteristics of public [places] traditionally open to expressive activity." *Kokinda*, 473 U.S. at 727. Similarly, a location may be a "designated" public forum if the government "has affirmatively designated 'for use by the public as a place for expressive activity.'" *Bynum*, 93 F. Supp. 2d at 55 (quoting *Perry Education Ass'n*, 560 U.S. at 45). In a public forum (whether traditional or designated), any restriction on speech or conduct is subject to "strict scrutiny," *id.* at 726, which requires the government to show that the restriction "is necessary to serve a compelling state interest" and "is narrowly drawn to achieve that end." *Perry Education Ass'n*, 560 U.S. at 45. By contrast, a nonpublic forum is one to which the government does not "grant general access." *Cornelius*, 473 U.S. at 803. A restriction in a nonpublic forum is permissible where it is viewpoint neutral and reasonable. *Id.* at 806.

As Judge Friedman concluded in *Bynum*, the Capitol building is a nonpublic forum. For one thing, government "ownership of property does not automatically open that property to the public." *Kokinda*, 497 U.S. at 725. And notwithstanding occasional access to the Capitol building by members of the public, the building is "not open to meetings by the public at large," and thus not generally "open to the public for limitless expression." *Bynum*, 93 F. Supp.2d at 56. In short, "Congress has not opened the Capitol as a public forum for free and open public discourse." *Id.* That was especially true on January 6, 2021, when security precautions for the Joint Session and the upcoming presidential inauguration *and* the ongoing global pandemic meant that the Capitol building was not open to the public at large.

Vo's counterarguments are flawed. He relies principally on *Lederman*, *supra*, and *Jeanette Rankin Brigade*, *supra*, to contend that the Capitol building is a public forum. But as described above, those cases involved conduct that transpired on the Capitol grounds but outside the Capitol building. Indeed, the discussion in *Jeanette Rankin Brigade* that Vo quotes (Mot. 13) refers to public access to the Capitol Grounds but specifically carves out areas inside the building "such as the Senate and House floors, committee rooms, etc." 342 F. Supp. at 584. Nor did that discussion imply that other areas of the Capitol building are open to the public, and Vo's depiction of a bygone era when lobbyists roamed the halls does not undermine the government's "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56.

Judge Friedman also correctly concluded that Section 5104(e)(2)(G) was a viewpoint neutral and reasonable regulation in a nonpublic forum. Vo appears to suggest (Mot. 14-15) that Section 5104(e)(2)(G) discriminates against only certain types of conduct—demonstrating, parading, and picketing—while not prohibiting other "activit[ies]" that "pose[] a security or disruption." But Vo identifies nothing in First Amendment doctrine or otherwise that requires

Congress to comprehensively outlaw every imaginable form of conduct to pass muster. Congress in Section 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, *Bynum*, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. Nothing more is required.

## II.   Section 5104(e)(2)(G) is neither overbroad nor vague.

Vo next argues that Section 5104(e)(2)(G) is both overbroad and unconstitutionally vague. Neither argument has merit.

A. In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal quotation marks omitted)—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'"strong medicine"'" to be employed "'"only as a last resort."'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that

the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Vo's challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. The prohibition in Section 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade*, 342 F.Supp. at 583. The operative verbs—parade, demonstrate, and picket—principally target conduct rather than speech, and those verbs are paired with the "willfully and knowingly" scienter requirements, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad). At the very least, Vo's cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted). Vo's own prosecution—which involved physically trespassing into the restricted Capitol on the heels of others who had forcibly breached the building—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, Vo fails to identify a single actual example of a prosecution based on protected speech. Moreover, "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius*, 473 U.S. at 799 (1985). As noted above, the Capitol Building is a nonpublic forum, and the government may restrict speech inside the building as long as the restrictions are 'viewpoint neutral' and 'reasonable in light of the

purpose served by the forum,'" as these are. *Bynum* 93 F. Supp. 2d at 56  (citing *Cornelius*, 473 U.S. at 806 ). The limitations inherent in the crime of conviction thus render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge. Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

Vo's counterarguments lack merit. First, he relies (Mot. 4-6) on *Bynum*, *supra*, where Judge Friedman ruled that a Capitol Police regulation interpreting Section 5104(e)(2)(G) that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57. As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation—which was applied to an individual who was denied permission to pray inside the Capitol building—does not inform the statutory challenge that Vo presses here. As noted above, Judge Friedman determined that Section 5104(e)(2)(G) was a reasonable, viewpoint neutral restriction in a nonpublic forum. Specifically, he reasoned that, although the regulation went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *id.* at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58. In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).

Vo's reliance (Mot. 16-17) on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), is also unavailing. Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason. Furthermore, the regulation at issue

there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts. *Id.* at 32. Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a total ban burdened more speech than necessary. *Id.* at 38-39.

Finally, Vo adverts at various points to statements during the House debate on the statute. But legislative history "is an uneven tool that cannot be used to contravene plain text." *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at *11 (May 25, 2022) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)). The floor statements on which Vo relies are "particularly 'unreliable.'" *United States v. Powell*, 21-cr-179, ECF No. 73, at 6 (D.D.C. July 8, 2022) (citing *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)). For example, in at least one instance, Vo's citation to the legislative history is misleading. He accurately quotes (Mot. 18) Representative O'Neal's statement that O'Neal is "a little bit disturbed" about the language of the predecessor to Section 5104(e)(2)(G), but omits the later discussion in which O'Neal makes clear that the basis for his concern was that the prohibition does not also include the Capitol Grounds. *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. O'Neal) (asking if "anyone would have an objection to adding the word 'grounds' to the new language").[4]

B. Vo next contends (Mot. 16-21) that Section 5104(e)(2)(G) is unconstitutionally vague.[5] That contention is flawed.

---

[4] Other representatives clarified that the law enacted in 1946 already included a similar prohibition that applied to the Capitol Grounds. *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Colmer) (noting that such an addition "would be surplusage").

[5] Vo thus asserts a facial vagueness challenge. As a general matter, one making such a facial

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some

---

vagueness challenge must demonstrate that the law is "impermissibly vague in all its applications"; one whose conduct is "clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests.*, 455 U.S. 489, 494-95 (1982). Vo cannot surmount that demanding standard. Where it relies on a First Amendment theory, a facial challenge may be available where the challenger shows that the law in question "reaches a substantial amount of constitutionally protected conduct. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)). Even assuming that is a viable theory under governing law, *see Quigley v. Giblin*, 569 F.3d 449, 457-58 (D.C. Cir. 2009) (questioning the breadth of "First Amendment vagueness doctrine"), Vo's facial vagueness claim fails for the same reasons that his overbreadth challenge falls short.

statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Vo fails to overcome the strong presumption that Section 5104(e)(2)(G) passes constitutional muster. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."). Section 5104(e)(2)(G) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the

14

crime," *Johnson*, 576 U.S. at 604. Section 5104(e)(2)(G)'s prohibition on "willfully and knowingly . . . parad[ing], demonstrate[ing], or picket[ing] in any of the Capitol Buildings" gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306. The statute requires that a defendant, acting willfully and knowingly, parades, pickets, or demonstrates—in short, engages in disruptive conduct—inside the Capitol building. *See Bynum*, 93 F. Supp. 2d at 57-58 (explaining that Capitol Police regulation at issue in that case was unnecessary because Congress had provided "more than sufficient guidance" in Section 5104(e)(2)(G)'s statutory text). While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).[6]

In an opinion following a recent trial, Judge Kollar-Kotelly explained some of the statute's operative terms, with no apparent difficulty:

> First, "to 'parade' means to take part in "[a] march or procession, organized on a grand scale, in support of some political object." "Parade," *Oxford English Dictionary* (2nd ed. 1989); *see also* "Parade," *Merriam-Webster.com Dictionary* (June 16, 2022) ("to march in or as if in a procession"). Similarly, to "demonstrate" means to take part in "[a] public manifestation, by a number of persons, of interest in some public question, or sympathy with some political or other cause; usually taking the form of a procession and mass-meeting." "Demonstration," *Oxford English Dictionary* (2nd ed. 1989); *see also* "Demonstration," *Merriam-Webster.com Dictionary* (June 16, 2022) (to take part in "a public display of group feelings toward a person or cause," e.g., "peaceful *demonstrations* against the government" (emphasis original)).

---

[6] For the reasons given above, Vo's reliance on scattered comments during the floor debate in the House does not counsel a different outcome.

Findings of Fact and Conclusions of Law, *United States v. Rivera*, No. 21-cr-60 (CKK), ECF No.
62, at 15 (D.D.C. June 17, 2022). She further found that "mere presence in a protest, along with
other words or conduct that ratify interest in demonstrating, is 'demonstrating' for the purposes of
a criminal statute that bars the actus reus of "'demonstrating.'" *Id.* (citing *Brown v. Louisiana*, 383
U.S. 131, 142 (1966), and *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).
As *Rivera* shows, Section 5104(e)(2)(G)'s operative terms are readily construed and
comprehensible.[7]  The statute is neither "so vague that it fails to give ordinary people fair notice
of the conduct it punishes" nor "so standardless that it invites arbitrary enforcement." *Johnson*,
576 U.S. at 595.[8]

---

[7] Based in part on *Rivera*, Vo educes (Mot. 18-21) a parade of horribles that he claims will follow
should the Court not strike down Section 5104(e)(2)(G). But these facts patterns, not one of which
this case presents, are appropriate brought in an as-applied challenge in the unlikely event that a
prosecution is ever brought.

[8] Vo advances one final argument (Mot. 22) that Section 5104(e)(2)(G) is "not neutral in certain
respects" because Members of Congress and other congressional officers and employees are
exempt from its coverage. As an initial matter, that argument has nothing to do with the vagueness
challenge that Vo is purportedly making in that section of his motion. There is nothing vague about
exempting certain actors from a statute's coverage. And to the extent Vo is returning to his First
Amendment forum challenge, an exemption for Members of Congress and other congressional
officers and employees is an entirely reasonable and viewpoint neutral restriction within the
Capitol building.

## <u>CONCLUSION</u>

WHEREFORE, the Government respectfully requests that the Court deny Vo's dismissal motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Michael J. Romano*
MICHAEL J. ROMANO
IL Bar No. 6293658
Trial Attorney, Detailee
601 D Street, N.W.
Washington, D.C. 20530
Telephone No. (202) 262-7850
michael.romano@usdoj.gov

*/s/ James I. Pearce*
James I. Pearce
N.C. Bar No. 44691
Appellate Counsel, Capitol Siege Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
James.Pearce@usdoj.gov