**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA** |
| **v.** |
| **ANTONY VO,** |
| **Defendant.** |

**Case No. 1:21-cr-0509 (TSC)**

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S FIRST MOTION TO DISMISS THE INFORMATION**

**ARGUMENT**

I.   **The Government Presents A Limited Discussion that Needlessly Dismisses**
     **Important Rules Under the Fifth and Sixth Amendment and Case Law**

The government first asserts that Mr. Vo's arguments are "scattershot," and that "Vo claims all four counts of the Information are deficient because they do not include a laundry list of facts regarding how he committed the charged crimes." However, Mr. Vo has properly argued that there must be allegations of essential fact that satisfy concerns under the Fifth and Sixth Amendment as well as Federal Rule of Criminal Procedure 7(c).

The Government takes the position that for each Count no additional allegations of fact are necessary beyond recitation of the statutory language and offers no discussion of Fifth or Sixth amendment principles. The Government in the alternative argues that it has provided

essential allegations of fact, not just through the statutory language but by other means. Mr. Vo discusses these arguments below and refutes those contentions.

Mr. Vo generally agrees with the point made in footnote 1 of the Government's Opposition (Gov. Opp.) that "[w]hen considering a challenge to the indictment, a district court is limited to reviewing the face of the indictment." [citation omitted].  Mr. Vo has provided context and, potentially, the benefit of the doubt, by considering certain allegations of fact made in the Statement of Facts and Affidavit of Joseph Henry, Task Force Officer with the Federal Bureau of Investigation [ECF1, Attachment 1] (Affidavit) (I&A). Fifth and Sixth Amendment concerns are certainly better addressed by placing essential allegations of fact in the charging language of the Information. As is illustrated in the instant case, attempting to line up the essential allegation of facts and the charges when considering the Affidavit is difficult. It becomes far more difficult when Mr. Vo must consider the new and unsupported allegations in the Gov. Opp. Mr. Vo argues that even accepting allegations of fact from the Affidavit, the government has still failed to state an offense.

Mr. Vo understands the Government's one-note point.  The law does not require allegations of fact for non-essential elements. Non-essential facts and non-essential detail is not required.  The Government, however, provides no discussion of Fifth and Sixth amendment principles (or at least does not use the terms Fifth and Sixth amendment in a discussion).  The Government attempts to minimize and ignores the relevant Supreme Court and other case discussions simply by claiming fact-patterns of cases are different.  However, such distinctions have no impact on the fundamental principles. As explained in Vo's initial motion to dismiss,

> Where guilt depends so crucially upon . . . a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.

"It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, `includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — *it must descend to particulars.'"* [Emphasis added.] *United States v. Cruikshank,* 92 U.S. 542, 558, 23 L.Ed. 588. An indictment not framed to apprise the defendant "with reasonable certainty, of the nature of the accusation against him * * * is defective, although it may follow the language of the statute." *United States v. Simmons,* 96 U.S. 360, 362, 24 L.Ed. 819. "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; * * *" *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135. "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516. [additional citations omitted].

*Russell v. United States, supra* 369 U.S. at 764-66, 82 S.Ct. at 1047-48, 8 L.Ed.2d at 251-52).

*See also United States v. Hillie*, 227 F. Supp. 3d 57, 69-71 (D.D.C. 2017).

Furthermore, the Government ignores Mr. Vo's reference to *United States v. Miller*, 1:21-cr-00119 (CJN) (D.D.C. May. 27, 2022), where Judge Nichols addresses the cases cited to by the government but (a) distinguishes their application and (b) identifies a full range of relevant case law discussion. *See Miller* at 3-12.  The government also does not address Mr. Vo's reference to *Hunter v. District of Columbia*, 47 App. D.C. 406 (D.C. Cir. 1918) both for its holding but also because it involved similar issues about public assembly and a discussion of the need for allegations of overt acts as essential to properly state the offense.

Notably, the formulation of parts of the indictment in several cases the Government provides go beyond the statutory language and add additional allegations of fact about the conduct or circumstances of the defendants in those cases.  *See United States v. Verrusio*, 762 F.3d 1, 10-11 (D.C. Cir. 2014)(Articulation of Count 1 and Count 2 in *Verrusio*); *United States v. Williams*, 679 F.2d 504, 508 footnote 5(5th Cir. 1982)(Reciting Count 1 and 2 in *Williams*). Note that these cases cited by the Government did not rely exclusively on statutory language and,

instead, added essential facts necessary to, at a minimum, allow the defendant to prepare a defense.

In the instant case, the following examples illustrate the type of allegation of facts that are missing, among other necessary allegations of fact in the instant case.

1) Mr. Vo engaged in disorderly or disruptive conduct under 18 USC §1752(a)(2) and/or 40 USC §5104(e)(2)(D) by doing X and Y at a location and time.

2) Mr. Vo engaged in demonstration under 40 USC §5104(e)(2)(G) by doing X and Y at a location and time.

3) There was a combination of postings at X locations and/or police cordons at Y locations which defined a restricted area under 18 USC §1752(a)(1) and (2) and (c) at the time Mr. Vo entered that area.

4) Mr. Vo had knowledge of a restricted area because he saw and ignored a posting or crossed a police cordon which defined a restricted area for purposes of 18 USC §1752(a)(1) and (2) and (c).

These are just examples, and they may require further detail to meet Fifth and Sixth Amendment standards.  However, anything less does not.  The Government has not offered a description of essential facts.  Without these allegations of fact there is no crime and the Government fails to state an offense.  Without these allegations of essential facts, Mr. Vo cannot prepare a proper defense and cannot defend against double jeopardy.

**II.**     ***Counts I and II Must Be Dismissed Because, Among Other Reasons, The I&A Fail to Allege the Elements Required to Identify that Mr. Vo Entered a "Restricted Area" Under 18 USC §1752(a)(1) By Not Identifying the Necessary Posting, Cordon or Other Restriction Present at the Time of Mr. Vo's Alleged Offense***

The Government's Opposition states:

> Nothing in the statutory text or any decision construing § 1752 suggests that the precise manner in which an area is restricted is an element of § 1752(a)(1). Gov. Opp. at 9.

Under §1752(a), there is no crime unless there is a restricted building or grounds. Section 1752(c)(1) defines restricted buildings or grounds, in part, to mean any posted, cordoned off, or otherwise restricted area.  It does not appear that the statutory text dismisses the definition of restricted area as a non-essential detail.  In *U.S. v. Bursey*, 416 F.3d 301 (4th Cir. 2005), the Secret Service designated an area near the hangar as a restricted area. The *Bursey* Court identified the restricted area by saying: "The restricted area extended approximately 100 yards on each side of the hangar along Airport Boulevard and approximately one-half mile from the hangar toward Highway 302."  The Court further noted that "on the day of the political rally, law enforcement officers were stationed at the perimeter of the restricted area and were patrolling inside of it…". "A Secret Service Agent, Holly Abel, and a state law enforcement officer, Tamara Baker, then approached Bursey and informed him that he could not remain in the restricted area." *Id*. at 304. "Law enforcement officers thereafter advised Bursey that the northwestern corner of the intersection was also restricted." [Citation omitted] *Id*. at 305. The Court also stated:

> …[C]ontrary to Bursey's assertions of fact, the boundaries of this restricted area were visibly marked. Indeed, the Magistrate Judge specifically found that the "law enforcement agents were stationed at the perimeters of the area." Verdict at 7. Stationing agents along an area's perimeter squarely falls within the plain meaning of the term "cordoned off,"

*Id.* While *Bursey* is not a challenge to the sufficiency of an indictment, the reasoning clearly support Vo's argument that identifying a restricted area is an essential element of § 1752(a)(1).

The Government tries to distinguish *Bursey* by stating:

> Vo claims that he is not accused of violating a direct police instruction not to enter a restricted area. Section 1752(a)(1) contains no such requirement. That the defendant in *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) may have disobeyed such an express order, Def. Mot. at 10, does not create a requirement that does not exist in the statute.

*See* Gov. Opp. at 9. However, Mr. Vo is not arguing that *Bursey* inserts that specific requirement into the statute but rather argues that there must be some language identifying the exact manner in which the area was restricted, whether it is police instruction, a sign, or a public announcement.

The Gov. Opp. at 6 also points out that the Government has provided discovery covering:

- copies of all FBI reports regarding its investigation of Vo's crimes;

- videos showing his offense conduct, whether obtained from USCP surveillance equipment, police officer body worn cameras, and videos created by journalists and other third parties who were present at or near the Capitol Building during the January 6 riot; and

- all images and documents the government obtained from Vo's social media accounts and mobile telephone.

However, even assuming it is appropriate to include government discovery in the analysis, the government has still failed to state an offense. There is no evidence that identifies the presence or location signs or barriers that Mr. Vo observed in relation to his time and entrance into the Capitol Building. There is no evidence that identifies the "disorderly or disruptive conduct" claimed. Lastly, there is no evidence that constitutes parading, demonstrating or picketing in the Capitol.

The government further claims that "breaching the Capitol on January 6 while it was restricted by signs and barriers certainly does [constitute disorderly or disruptive conduct]. *See*

Gov. Opp. at 13.  However, just because there may have been signs and barriers present in some

locations does not mean that Mr. Vo observed them when he arrived.  Furthermore, the

government misunderstands the definition of "disorderly and disruptive conduct" if it believes

that simply committing §1752(a)(1) means you automatically violate §1752(a)(2).

**III.     *Counts II and III Must Be Dismissed Because, Among Other Reasons,  the Information Does Not Allege Essential Facts About Mr. Vo's Conduct That the Government Claims Constitute "Disorderly or Disruptive Conduct" Under Either 18 U.S.C.§1752(a)(2) and 40 USC §5104(e)(2)(D)***

Admittedly, Mr. Vo is ignoring the language of 40 USC §5104(e)(2)(D) concerning

uttering loud, threatening or abusive language.  The Government has not alleged facts

concerning Mr. Vo and such conduct either.  Outside of that alternative, an allegation of fact of

disorderly or disorderly conduct is essential for Count II and Count III.  Without such allegation

there is no criminal charge under 18 U.S.C.§1752(a)(2) and 40 USC §5104(e)(2)(D).  The *mens*

*rea* requirements must also be about the conduct because the statutes require either that Mr. Vo

knowingly engaged in the conduct under 18 U.S.C.§1752(a)(2) or willfully and knowingly

engaged in the conduct under 40 USC §5104(e)(2)(D) .  In other words, to evaluate the mens rea

allegations, Mr. Vo must understand the alleged conduct the Government is claiming is

disorderly and disruptive.  Other essential elements flow from the element of engaging in

disorderly and disruptive conduct under 18 U.S.C.§1752(a)(2).  The Government must show

"…such conduct, in fact, impedes or disrupts the orderly conduct of Government business or

official functions." (emphasis added).   "Such conduct" refers to disorderly or disruptive conduct.

For example, the argument that Mr. Vo was another body that needed to be removed from the

Capitol is irrelevant to the criminal charge.  The disruptive and disorderly conduct itself must be

what, in fact, impedes or disrupts the orderly conduct of the Government business or official

functions for there to be a crime.  If Mr. Vo went into the Capitol, even as a trespass, but did not

engage in disorderly and disruptive conduct, that is not a violation of 18 U.S.C.§1752(a)(2).  In such case both the required element of disorderly or disruptive conduct and the required element of the impact of the said disorderly and disruptive conduct are not satisfied.

The Government offers no argument that disorderly or disruptive conduct is not an essential element of the charges under 18 U.S.C.§1752(a)(2) and 40 USC §5104(e)(2)(D). The Government offers no argument that without proving disorderly and disruptive conduct that the Government may prevail on Count II or Count III. The Government simply says "[s]uch specificity is not required." Point I of the Government Opposition states that engaging in disorderly or disruptive conduct are among "clear and simple proscriptions" of the statute. With this simple statement the Government fails to ask whether "disorderly and disruptive conduct" is a generic term as described by the Supreme Court whether the statutory term by itself informs Mr. Vo of the "precise" offense of which he is accused. The Government does not invite the Court to ask and does not itself evaluate whether the term is sufficiently precise as to enable Mr. Vo to properly prepare a defense and for the charge to be specific enough to avoid double jeopardy.  According to the Government, the extra steps taken in *Verussio* and *Williams*, cases cited by the Government, to add more specific allegations of fact beyond the statute, are unnecessary here.

The Government then turns to some arguments that fail on many levels when it asserts:

> In any event, the Affidavit alleges that Vo admitted that he and his mother "breached the Capitol" on January 6. Regardless of whether the ordinary understanding" of "disorderly" or "disruptive" conduct embraces "peacefully standing" in an area that is restricted against any entry whatsoever, as Vo claims he did, Def. Mot. at 17, breaching the Capitol on January 6 while it was restricted by signs and barriers certainly does. A "breach" is an "infraction or violation of a law, obligation, tie, or standard." https://www.merriam-webster.com/dictionary/breach (visited July 19, 2022). Gov. Opp. at 13-14.

The Government makes several false statements here.  First, the Affidavit does not state Mr. Vo admitted to using the term "breach" or "breaching."  Second, Mr. Vo never "claimed" he entered an area that is "restricted against entry whatsoever." Indeed, the Affidavit alleges Mr. Vo stating the police "allowed him in."

**IV.     The Government Relies on a Series of False Contentions in Addressing the Issue of Whether Official Business Was Occurring While Mr. Vo Was in the Capitol and that Mr. Vo Disrupted the Certification Vote**

The Affidavit does not allege that Mr. Vo was in the Capitol before the Joint Session went on recess. The Government leads with the header "Count Two Sufficiently Alleged That Congress Was Engaged in "Official Business While Vo Was in the Capitol." The Opposition then states Mr. Vo agrees that the allegations in the Affidavit stated the Joint Session was in recess because of violent rioters.  The I&A does not allege Mr. Vo was among this group and Mr. Vo's presence in the Capitol at a later time, obviously, has no impact on causing the recess. The Affidavit states: "Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 pm."  The Government's memorandum incorrectly states that "the Affidavit alleges that only after police were able to expel all the rioters from the Capitol, a group which would have included Vo, was Congress able to reconvene and continue their deliberations regarding certification."  The sentence in the Affidavit and the this sentence the Opposition claims the Affidavit alleges are not the same. Substituting the constructs are false and misleading and the actual Affidavit makes no statement as claimed in the Opposition. There is no reason stated in the Affidavit for the 8 pm restart. The Government is now speculating and making new allegations of fact for the first time in its Opposition. The Opposition then claims the allegation puts Mr. Vo on notice that he was "acting in concert with hundreds of rioters during the recess."  There is no claim in the Affidavit or the Information that Mr. Vo was "acting

in concert" with anyone while in the Capitol except that he took a picture with is mother.  There is no action on the part of Mr. Vo alleged at all.  There is no allegation of fact of an action done in concert with "hundreds of other rioters" during the recess in which Mr. Vo is alleged to have participated while in the Capitol.  There is no allegation that would put Mr. Vo on notice of this claim.

The Opposition continues its series of false claims in the Government's discussion that "Vo Disrupted the Certification". First, Mr. Vo never stated or is alleged to have stated that he was inside the Capitol when the certification was disrupted which the Government claims at page 14.  The Government then claims that the "Information and Affidavit allege that Vo joined a riot that caused the certification vote to be suspended for hours".  Gov. Opp. at 14. The Information does not refer to the certification vote as suspended for hours.  The Information does not state a riot caused the certification vote to be suspended for hours. The Affidavit does not state Mr. Vo "joined a riot."  As discussed above, the Affidavit does not speculate on any actions during the recess that further caused the certification vote to be delayed, only that it was not restarted until 8 pm.

V. *Count IV Must Be Dismissed Because, Among Other Reasons, the Information Does Not Allege Essential Facts About the Conduct of Mr. Vo That Can Constitute "Parade, Demonstrate or Picket USC §5104(e)(2)(G)*

The Government's first line of argument in their Opposition is that the specific conduct of Mr. Vo that constitutes the charge is not necessary to provide in the Information.  The Government argues that the Information alleges Mr. Vo did parade, demonstrate or picket and such allegations satisfy any legal concerns.  The Government provides no analysis regarding the Fifth or Sixth amendment concerns in the specific section of their memorandum but cross-references prior general arguments in their Opposition.

The Government does not explicitly address Mr. Vo's argument that walking, texting or taking pictures is not parading, demonstrate or picketing. Instead, it incorrectly states the allegations by saying:

> Moreover, the Affidavit contains a photograph of Vo and his mother, posing for a photograph, inside the Rotunda while the riot was underway inside the Capitol and, at time, in that very room. That is sufficient to allege, at this stage.

*See* Gov. Opp. at 16. However, nothing in the affidavit states that riot was underway in that very room at the time that photograph was taken.  *See* Exhibit 1. This photograph certainly does not demonstrate a "riot" in the background.

Second, taking a picture with his mother in the Capitol is not "demonstrating" within the meaning of 40 USC §5104(e)(2)(G).  There is no basis for the Government to claim the contrary. Third, being present if other people are "demonstrating" is not a crime under 40 USC §5104(e)(2)(G).  Again, there needs to be specific conduct of Mr. Vo.

Count IV must be dismissed because the Government has simply alleged no facts that could constitute parading, demonstrating, or picketing.  Without alleging the specific conduct, Mr. Vo has no ability to defend against the Governments argument that they will reveal the appropriate allegations of conduct at trial.

The statutory meaning of the term "demonstrate" does not turn on whether Mr. Vo lawfully entered the Capitol or not.  Even if one lawfully enters the Capitol, §5104(e)(2)(G) prohibits demonstrating. Even if one unlawfully enters the Capitol, that unlawful entry is not the definition of "demonstrate." The Government misstates and misreads the point that Mr. Vo's original memorandum makes.  The Gov. Opp. states:

> Vo contends that § 5104(e)(2)(G) prohibits only entering or remaining in "specific locations within the Capitol Building." Def. Mot at 21. The statue contains no such

restriction. See 18 U.S.C. § 5104(e)(2)(G) (prohibiting unlawful conduct "in any of the Capitol Buildings.")

*See* Gov. Opp. at 17. However, Mr. Vo's original memorandum actually states:

> 40 USC §5104(e)(2)(A)-(C) use the terms "enter or remain" in specific context. Part of the context involves specific locations within the Capitol Building. If Congress had meant entering or remaining in other locations was a violation under the 40 USC §5104(e)(2) series, it would have said so. "Enter or remain" cannot be transformed to "parade, demonstrate, or picket" which must mean discretely different conduct. Simply entering and remaining, peacefully, for a short time cannot be the meaning of "parade, demonstrate, or picket."

Mr. Vo made the point that other provisions include the terms "enter or remain" and that "parade, demonstrate, or picket" must mean more than simply to enter or remain.

Furthermore, the Government's attempt to distinguish the tourist standard line of cases is particularly incorrect. *See* Gov. Opp. at 20-21. The tourist standard is not about whether someone is a tourist or not. The tourist standard is a limitation on the conduct that can qualify under the statutory terms. Courts viewed the limitation as necessary by courts based on First and Fifth Amendment concerns. The Government shows a misunderstanding when they refer to the Honorable Judge Lamberth's statement at a sentencing in response to Congress members referring to some defendants as "tourists." The government recapped this statement by saying:

> As Judge Lamberth stated in the sentencing hearing in *United States v. Anna Morgan Lloyd*, 1:21-cr-164 on June 23, 2021, "I'm especially troubled by the accounts of some members of Congress that January 6th was just a day of tourists walking through the Capitol. I don't know what planet they were on." Transcript at p. 19. See *id*. at p. 20 ("the attempt of some congressmen to rewrite history and say this was all just tourists walking through the Capitol is utter nonsense."). Gov. Opp. at 20.

With respect to the instant case, this statement made at a sentencing hearing has nothing to do with Mr. Vo or the Tourist Standard, the First Amendment, or §5104(e)(2)(G).

The Government continuously tries to argue the conduct of other people to impute criminality to Mr. Vo and is the exact reason that the Government must identify the specific conduct of Mr. Vo that constitutes the alleged violations. If anything, the Gov. Opp. increases the permutations, broad statutory readings, Constitutional issues and uncertainty.

### VI.    Mr. Vo Properly Applied the Blockburger Test to Argue that the Information is Multiplicitous

In its opposition, the government states:

Vo contends that the § 1752(a)(1) charge is a lesser included offense of the § 1752(a)(2) charge. Def. Mot. at 31. Not so. Section 1752(a)(1) requires proof that the defendant enters or remains in any restricted building or grounds "without lawful authority to do so." 18 U.S.C. § 1752(a)(1). Section 1752(a)(2) contains no such requirement, so Vo's claim flunks the Blockburger test. Gov. Opp. at 25-26.

However, the government is incorrect. In *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221 (1977), the Court further interprets *Blockburger* v. *United States*, 284, U.S. 299, 304 (1932). *Brown* states, in relevant part:

Applying the *Blockburger* test, we agree with the Ohio Court of Appeals that joyriding and auto theft, as defined by that court, constitute "the same statutory offense" within the meaning of the Double Jeopardy Clause….As is invariably true of a greater and lesser included offense, the lesser offense — joyriding — requires no proof beyond that which is required for conviction of the greater — auto theft. The greater offense is therefore by definition the "same" for purposes of double jeopardy as any lesser offense included in it. *Id* at 168.

The *Brown* court further states:

This conclusion merely restates what has been this Court's understanding of the Double Jeopardy Clause at least since *In re Nielsen* was decided in 1889. In that case the Court endorsed the rule that

"where . . . a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." [Citing *Nielsen*, 131 U.S. 176, 9 S. Ct. 672 (1889)] Id at 168.

13

Despite the prevalent use of the *Blockburger* formula, however, it "is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown at 166 note 6* (1977)(See also cases cited therein); *See also United States v. Allen*, 539 F. Supp. 296 (C.D. Cal. 1982). The Ninth Circuit has also stated: "There is `no bright line . . . dividing charges comprising a single offense from those comprising separate and distinct offenses.'" *United States v. Kennedy,* 726 F. 2d 546, 547 (9th Cir. 1984) (quoting *United States v. UCO Oil Co.,* 546 F. 2d 833, 835 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S. Ct. 1646, 52 L.Ed.2d 357 (1977)). *Brown* is a Supreme Court case applying *Blockburger* and Double Jeopardy directly. It is cited as the main source of authority by Mr. Vo and completely ignored by the government.  Mr. Vo contends that, under *Brown,* the test is not so superficial.

Lastly, the government appears to suggest those who are authorized to be in a restricted area have a different status as a point of distinction between 18 USC §1752(a)(1) and (2). Nothing says that signs, postings, or areas cannot differentiate who may be in an area or not under §1752(a)(1) or (2).  The without "lawful authority language" 18 USC §1752(a)(1) would create such a distinction. One is lawful unless a restriction applies. Moreover, the distinction has no weight in the instant case, unless the Government claimed Mr. Vo was authorized, which the Government does not. Under *Brown* the terms joyriding and auto theft do not map perfectly through a language bridge.  The Supreme Court properly reasoned joyriding is a lesser included offense of auto theft.  Analogously 18 USC §1752(a)(1) is a lesser included offense of 18 USC §1752(a)(2).

The same approach holds for the relationship of §1752(a)(2) and 18 U.S.C. § 5104(e)(2)(G).  A simple comparison of 18 USC §1752(a)(2) and 40 USC §5104(e)(2)(D),

particularly with respect to the allegations in the Affidavit, indicate the Government is seeking to apply functionally similar language under two statutes to a single offense.  These elements involve "disruptive or disorderly conduct" and disrupting official proceeding and a similar *mens rea* test.  This is also yet another reason that it is important for the Government to specify what the specific conduct of Mr. Vo under each offense.

## CONCLUSION

For the forgoing reasons, Mr. Vo respectfully request that the Court enter an order dismissing the Information as detailed in the Motion to Dismiss and for the reasons described in the Memorandum of Points and Authorities in Support and this Reply Memorandum.

Dated: August 3, 2022                              Respectfully submitted,

                                                   A.J. KRAMER
                                                   FEDERAL PUBLIC DEFENDER


                                                   _____/s/_____
                                                   Maria N. Jacob
                                                   Assistant Federal Public Defender
                                                   D.C. Bar No. 1031486
                                                   625 Indiana Ave. NW, Ste. 550


                                                   Nandan Kenkeremath
                                                   DC Bar 384732

                                                   *Counsel for Defendant*