UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANTONY VO,**<br><br>    **Defendant.** | Case No. 1:21-cr-0509 (TSC) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S SECOND MOTION TO DISMISS COUNT IV OF THE INFORMATION BASED ON A FACIAL CHALLENGE TO 40 U.S.C. §5104(e)(2)(G)**

## BACKGROUND

Mr. Vo, separately, filed a motion to dismiss the Information, including with respect to Count Four regarding 40 U.S.C. § 5104(e)(2)(G) on numerous grounds. One of those grounds is that application of 40 U.S.C. § 5104(e)(2)(G) to the alleged conduct of Mr. Vo violates the First and Fifth Amendment of the U.S. Constitution. The instant motion challenges 40 U.S.C. § 5104(e)(2)(G) on the face of the provision (also in the context of related provisions) as failing the First and Fifth Amendment. In addition to seeking such a finding from the Court Mr. Vo requests that Count IV of the Information be dismissed on the basis of such finding.

## ARGUMENT

  **I.**  **Mr. Vo May Facially Challenge 40 USC 5104(e)(2)(G) At This Time**

Saliently, the Government's Opposition (Gov. Opp.) incorrectly argues this claim "is premature because it requires an analysis of Vo's conduct which is not before the Court at this stage in the case." Gov. Opp. at 4. A facial challenge is an attack on the statutory provision and not with respect to a single fact pattern or the instant case. If 40 U.S.C. § 5104(e)(2)(G) is found to be unconstitutional, then the Government fails to state an offense Federal Rule of Criminal Procedure 7(c) regardless of the conduct of Mr. Vo. Even if the Court disagrees with Mr. Vo's argument in the facial challenge, the Court may separately agree with the as-applied challenge. The two analyses are different. The Government's reliance on sufficiency of evidence issues under *United States v. Yakou*, 428 F.3d 231, 246-47 (DC. Cir 2005) has no bearing on a facial challenge. Gov. Opp. at 5-6. In its opposition, the government states:

> "Vo's claim founders at the first step because he cannot establish at this point that his case involves speech or conduct protected by the First Amendment. See Cornelius, 473 U.S. at 797 (noting that where speech or conduct is not protected by the First Amendment, a court "need go no further"). Gov. Opp. at 5.

However, Mr. Vo clearly has standing because he is threatened with prosecution under 40 U.S.C. § 5104(e)(2)(G). Mr. Vo may have standing for other reasons as well. No further facts of Mr. Vo's conduct are necessary.

II. **The Government Misses the Central Argument that 40 U.S.C. § 5104(e)(2)(G) Needlessly Penalizes Conduct Based on First Amendment Terms**

  A. *40 USC §5104(e)(2)(G) Directly and Solely Addresses First Amendment Protected Conduct*

2

In Vo's initial motion, he argues that the statute directly and solely addresses First Amendment conduct. The Government responds by asserting:

> He advances the blanket assertion that any violation of Section 5104(e)(2)(G), which makes it a crime for an individual to knowingly and willfully "parade, demonstrate, or picket" necessarily involves speech or conduct protected by the First Amendment. To be sure, certain conduct "such as picketing or demonstrating" may be so closely associated with speech as to warrant First Amendment protection, see Virginia v. Hicks, 539 U.S. 113, 124 (2003), at least where the picketing is "peaceful." See United States v. Grace, 461 U.S. 171, 176 (1983). But no evidence of Vo's precise conduct is before the Court…Gov. Opp. at 5.

The Government ends by being focused on Vo's conduct which is not the issue in a facial challenge. The terms under 40 USC §5104(e)(2)(G) are "parade, demonstrate, or picket" which Mr. Vo contends are pure first amendment terms and Mr. Vo provides plenty of case law to support the contention.

### B. The Court Should Not Adopt and Should, Instead, Revisit Certain Findings in Bynum Concerning 40 USC §5104(e)(2)(G)

In his original motion, Mr. Vo had taken the step to acknowledge that while *Bynum* was overturning regulations promulgated under *40 USC §5104(e)(2)(G),* the Court stated the statute itself was not a problem. Mr. Vo's argument is that this Court should form a fresh constitutional perspective in light of all of the developments in case law and the inability of local regulations to promulgate constitutional laws.

### C. The Hallways, Foyers and other Publicly Accessible Areas of the Capitol Buildings Are Traditionally Robust with First Amendment Activity and any Prohibitions or Enforcement Should Be Reviewed Under the Public Forum Standards

In response to Vo's argument that prohibitions in the Capitol building should be reviewed under the public forum standard, the government responds by saying:

> Congress has not opened the Capitol as a public forum for free and open public discourse." Id. That was especially true on January 6, 2021, when security precautions for the Joint Session and the upcoming presidential inauguration and the ongoing global pandemic meant that the Capitol building was not open to the public at large.

However, Mr. Vo's argument is not specific to January 6th. Mr. Vo argues that certain areas of Capitol Buildings have been robust with First Amendment activity in the past before COVID and will likely return to that status. The point is that the public forum test more properly applies to these areas to evaluate whether any prohibitions on First Amendment modes of expression are appropriate. The argument is not critical to subsequent analysis, since as stated below, regardless of which standard of review applies, 40 USC §5104(e)(2)(G) still fails.

### D. Regardless of Which First Amendment Standards Apply 40 USC §5104(e)(2)(G) Facially Fails Constitutional Muster Under the First and Fifth Amendments

The government ignores Mr. Vo's initial argument that First Amendment Modes of Expression should not be criminalized ahead of similar non-First Amendment activity that poses the same risk. Instead, the government states:

> But Vo identifies nothing in First Amendment doctrine or otherwise that requires Congress to comprehensively outlaw every imaginable form of conduct to pass muster. Congress in Section 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, Bynum, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. Nothing more is required. Gov. opp. at 8-9,

4

This is not a response to Mr. Vo's argument. The passage misses and mischaracterizes the argument. First, Mr. Vo is not necessarily arguing any additional regulation is required in light of 40 USC 5104(e)(2)(D).  That provision operates by not flatly banning peaceful First Amendment modes of expression. The First Amendment does not require Congress to outlaw every imaginable form of conduct, however it does require outlawing regulations that trample on the First and Fifth Amendment.

     The most deferential non-public forum standard at least asks if a regulation is "reasonable" given the First and Fifth Amendment issues. "Reasonable" is about the trade-offs between the reasons for restricting First Amendment activity and the loss from 1) restricting First Amendment Activities, 2) overbreadth under the First Amendment, 3) overbreadth problems under the Fifth, 4)  Vagueness and Fair Notice issues under the Fifth Amendment, 5) and selective enforcement issues under the Fifth Amendment. Even if one does not apply the strict scrutiny tests, the First and Fifth Amendment issues are fully at stake. *Bynum* applies this deferential test and still overturned regulations purporting to implement 40 USC 5104(e)(2)(G). Mr. Vo argues a fresh review of the application of the test to 40 USC 5104(e)(2)(G) viewing the statutory language in light of a broad range of new facts, circumstances about technology in communication. Mr. Vo is particularly identifying the crux of the problem—it is entirely easy for Congress to just focus on terms consistent with the security objectives instead of the words the specifically call out 3 First

Amendment modes of conduct. This is fully outlined in the original memorandum and the government fails to address the points.

In its original motion, Mr. Vo additionally argues that 40 U.S.C §5104(e)(2)(G) is overbroad under the First Amendment and Too Vague Under the Fifth Amendment.

The government addresses this argument saying:

> Vo's reliance (Mot. 16-17) on *Lederman v. United States*, 89 F. Supp. 2d. 29 (D.D.C. 2000), is also unavailing. Like *Bynum, Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason. Gov. Opp. at 11.

There is no distinction between prohibitions in regulations or statutes for purpose of First and Fifth Amendment analysis. It should not go unnoticed in the original memorandum that two courts overturned regulations purporting to define and regulate demonstrations as violating the First and Fifth Amendment. One case used reasonableness review and the other case strict scrutiny but both cases were regulations that were implementing 40 USC § 5104 and the courts found certain interpretations of the statute were not Constitutional.

While the Government cites many cases interpreting other laws, it only address Mr. Vo's analysis of the problems with 40 USC § 5104(e)(2)(G) in a very limited fashion. For example, the government attempts to undermine Mr. Vo's argument that 40 USC §5104(e)(2)(G) discriminates against citizens versus Congressional Employees by asserting:

6

> …to the extent Vo is returning to his First Amendment forum challenge, an exemption for Members of Congress and other congressional officers and employees is an entirely reasonable and viewpoint neutral restriction within the Capitol building.

Thus, the Government concedes that differential treatment of Congressional staff while threatening criminal sanctions for the same First Amendment modes of expression is reasonable. In conceding this, the government fails to acknowledge that regardless of who is violating the statute, it covers the same exact type of conduct.

### E. *The Government Fails to Counter Mr. Vo's Argument that the Statute is Unconstitutionally Vague*

By its own terms 40 USC §5104(e)(2)(G) addresses three modes of First Amendment Activity -- parading, demonstrating and picketing. The Court in *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000) found regulations purporting to implement 40 USC §5104(e)(2)(G) to violate the First Amendment and Due Process.  With respect to the First Amendment the *Bynum* Court states:

> The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve.  While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive…*Id*. at 57 (Citations omitted)

With respect to Due Process and unconstitutional vagueness, the *Bynum* Court states, in part:

> In fact, the definition of "demonstration" in the regulation encompassing all expressive conduct, whether disruptive or not …. *Id*. at 58.

7

*See also Lederman v. U.S.*, 291 F.3d 36 (D.C. Cir. 2002) (reviewing facial First Amendment challenge to a regulatory prohibition on demonstration activities outside Capitol building). As stated in *Lederman,*

> We hold only that, as currently written, the demonstration ban imposes "a serious loss to speech . . . for a disproportionately small governmental gain," *Citing White House Vigil for the ERA Comm. v. Clark,* 746 F.2d 1518, 1544 (D.C. Cir. 1984)(Wald, J. concurring in the judgement in part and dissenting in part on other grounds). *Lederman* at 46.

Mr. Vo argues that the loss of First Amendment and Fifth Amendment rights is grave when compared to the small governmental gain.  Mr. Vo's argument is not that the Government should not regulate individuals or groups through rules for purposes of security and visitor or crowd management but that it needs to be proportionate and not violate important Constitutional rights.

For decades 40 USC §5104(e)(2)(G) was not invoked except for a few cases.  In each of those cases, the police first ask people to stop their conduct before charging under 40 USC §5104(e)(2)(G).  The January 6th prosecutions have brought a flood of 40 USC §5104(e)(2)(G) charges in exact parallel with 40 USC §5104(e)(2)(D). The latter provision addresses disorderly or disruptive conduct in the Capitol without prohibiting First Amendment modes of expression.

Consider the Government's response to the *Rivera* Opinion:

> She further found that "mere presence in a protest, along with other words or conduct that ratify interest in demonstrating, is 'demonstrating' for the purposes of a criminal statute that bars the actus reus of '"demonstrating."' Gov. Opp. at 16.

The Government explains the simplicity by stating:

> In an opinion following a recent trial, Judge Kollar-Kotelly explained some of the statute's operative terms, with no apparent difficulty:
>
> ….Similarly, to "demonstrate" means to take part in "[a] public manifestation, by a number of persons, of interest in some public question, or sympathy with some political or other cause….taking the form of a procession and mass-meeting." "Demonstration," Oxford English Dictionary (2nd ed. 1989); see also "Demonstration," Merriam- Webster.com Dictionary (June 16, 2022) (to take part in "a *public display of group feelings toward a person or cause*," e.g., "*peaceful demonstrations against the government*" (emphasis original))

*Id*. at 15. So, the Government agrees that those definitions, if they occurred in the Capitol Building should trigger criminal sanctions. If we compare the above language to the language from *Rivera*, the vagueness concerns become more apparent:

> Defendant primarily argues that because he was "recording" as a "videographer," he was not "parading or "demonstrating." The two, however, are not mutually exclusive. In truth, Defendant acted more as a social media influencer might, frequently urging his followers to "share, share, share."[citation omitted] Sharing, Rivera may have hoped, could have helped him "get [his][addition in original] name out there," one of Rivera's stated reasons for going to the Capitol on January 6, 2021. [citation omitted]. Indeed just before he joined the crowd, he was primarily concerned that no one appeared to be watching his Facebook Live [citation omitted]

As noted, camera's, smart phones and recording are all allowed in the Capitol Buildings in most places. However, according to Judge Kollar-Kotelly, sharing on social media even as a reporter or videographer is "demonstrating" even though that person is not necessarily displaying a particular feeling or cause.

The Government then says:

> As *Rivera* shows, Section 5104(e)(2)(G)'s operative terms are readily construed and comprehensible. The statute is neither "so vague that it fails

9

to give ordinary people fair notice of the conduct it punishes" nor "so standardless that it invites arbitrary enforcement." Johnson, 576 U.S. at 595.

Gov. Opp. at 16. Mr. Vo disagrees and notes the Government is simply not looking at the permutations from the language that are now coming to pass not just from *Rivera* but from *Bynum* and other cases cited in the original memorandum that all struggle to connect the conduct to disruptive conduct rather than just solely expressive conduct.

Mr. Vo does not argue that the First or Fifth Amendments require exceptions to general rules of crowd management in the Capitol Buildings. Rather, Mr. Vo argues that the Constitution does not permit Congress to criminally punish First Amendment conduct simply because it is First Amendment conduct – which is exactly how 40 USC §5104(e)(2)(G) is written.

People come to the Capitol Buildings all the time. They come in groups. They wear t-shirts with messages. They lobby in groups. The Capitol Buildings have political or other celebrations, and some go into the hallways. Reporters broadcast from the buildings. They bring material to look at. They are allowed to access Facebook and have an opinion. People participate in demonstrations outside and on the same day come to talk to people in the Capitol. People bring media, smart phones and tablets. Young people walk in groups connected by smart phones. This includes First Amendment rights like recording and presenting material to people in real time.

Again, the Capitol Police and those in charge of security and visitors can restrict areas, size of groups, duration of stay, volume, and items that might pose a risk, all without referring to whether the conduct is also a First Amendment mode of conduct like a demonstration.  Mr. Vo is not arguing the First Amendment trumps crowd management rules in the Capitol. Mr. Vo is arguing it violates the First and Fifth Amendment to punish people only because of First Amendment modes of communication with no qualifier on whether such mode is disruptive. People commonly communicate political ideas in the Capitol Buildings and that expression is protected under First Amendment.

The Government does not see or acknowledge any of this as First and Fifth Amendment issues. The needless application of 40 USC §5104(e)(2)(G) will degrade the First and Fifth Amendment and be unreasonable.   There is a balancing test. Here, simply asking Congress to hew more closely to 40 USC §5104(e)(2)(D) solves the issue.

Mr. Vo argues the additional problems created by the confusing connection of 40 USC §5104(e)(2)(G) to the provision stating that "attempting" to parade, demonstrate or picket in any of the Capitol Buildings is a crime. Mr. Vo argues the connection of 40 USC §5104(e)(2)(G) to the aiding and abetting statute to this range of First Amendment activity and circumstances further exacerbates the constitutional issues. Mr. Vo further argues the connection of 40 USC §5104(e)(2)(G) to the exclusion in 40 USC §5104(e)(3) creating a two-tiered set of circumstances for

11

First Amendment purposes. Mr. Vo claims all of these permutations under criminal law amplify the fundamental problems of overbreadth under the First Amendment and Fifth amendment overbreadth and under the Fifth Amendment. The Government fails to address any of these points.

There is simply no reason for the vagueness and First Amendment problems at all. There is not a single activity that poses a security or disruption problem that cannot be stated in a different manner and that does not focus solely on First Amendment modes of conduct. It should not matter whether a group of students are disruptive but have no intent to "demonstrate." The Capitol Police or whoever else is responsible for groups and individuals walking in the Capitol Buildings can limit the size of groups, the length of stay in any location, the location of passage, the volume of noise, and whether potentially dangerous items are carried, all without threatening criminal sanctions for completely vague statements of First Amendment terms and modes of expression.

The *Rivera* opinion explained above. shows the direct problem. The broad and ambiguous definition of "demonstration" is synonymous with the term that is Constitutionally protected and provides no other qualifier other than the *mens rea* requirements. The *Rivera* opinion equates the breadth of the criminal *actus reus* in 40 USC §5104(e)(2)(G) to the breadth of the Constitutional protection. A peaceful demonstration, meaning complaining in a smartphone to an audience not at the Capitol, somehow becomes a criminal violation.

12

It is impermissible to ignore the First and Fifth Amendment issues Mr. Vo is raising in his facial attack on 40 U.S.C. § 5104(e)(2)(G).  Congress can avoid violating the Constitution by simply focusing on provisions using First Amendment neutral language to accomplish the objectives already stated. Fixing the issue is easy.  Other rules can control riots.  40 U.S.C. § 5104(e)(2)(G) needlessly threatens First and Fifth Amendment Rights.

## CONCLUSION

For the forgoing reasons, Mr. Vo respectfully request that the Court enter an order finding 40 U.S.C. § 5104(e)(2)(G) fails the First and Fifth Amendments of the U.S. Constitution for the reasons stated above and also dismissing Count IV of the Information based on such a finding.

Dated: August 3, 2022

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
D.C. Bar No. 1031486
625 Indiana Ave. NW, Ste. 550

Nandan Kenkeremath
DC Bar 384732
USDC DC 384732

*Counsel for Defendant*