```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                            FOR THE DISTRICT OF COLUMBIA
 2

 3       UNITED STATES OF AMERICA,          .
                                            .   Case Number 21-cr-509
 4                 Plaintiff,               .
                                            .
 5            vs.                           .
                                            .
 6       ANTONY VO,                         .   March 18, 2022
                                            .   10:08 a.m.
 7                 Defendant.               .
         - - - - - - - - - - - - - - - - -

 8

 9                         TRANSCRIPT OF PROCEEDINGS
                     BEFORE THE HONORABLE TANYA S. CHUTKAN
10                       UNITED STATES DISTRICT JUDGE

11

12       APPEARANCES:

13       For the United States:        MICHAEL ROMANO, AUSA
                                        United States Attorney's Office
14                                      601 D Street Northwest
                                        Washington, D.C. 20579
15

16       For the Defendant:            MARIA JACOB, AFPD
                                        Federal Public Defender's Office
17                                      625 Indiana Avenue Northwest
                                        Suite 550
18                                      Washington, D.C. 20004

19

20       Official Court Reporter:      SARA A. WICK, RPR, CRR
                                        United States District Court
21                                          for the District of Columbia
                                        333 Constitution Avenue Northwest
22                                      Room 4704-B
                                        Washington, D.C. 20001
23                                      202-354-3284

24
         Proceedings recorded by stenotype shorthand.
25       Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2          (All participants present via video conference.)

 3          (Call to order of the court.)

 4              COURTROOM DEPUTY:  Your Honor, we have Criminal Action

 5     21-509, United States of America versus Antony Vo.

 6         We have Mr. Michael Romano representing the government,

 7     Ms. Maria Jacob representing Mr. Vo, and all parties are

 8     appearing by video.

 9              THE COURT:  Good morning, everyone.

10         Mr. Vo, can you hear me?

11              THE DEFENDANT:  Yes.  Good morning.

12              THE COURT:  Good morning.  Mr. Bradley informed me

13     that we've been having some background noise and interference

14     with the public line, the line that the public can use to call

15     in to access these hearings.  I think -- I don't want to shut

16     those lines off.  The public has a right to access these

17     hearings.  These are public hearings, and I don't want to cut

18     anybody out who is interested in listening.  But if it gets too

19     bad, we may have to temporarily stop.  So we will see.  Let's

20     hope for the best.

21         Mr. Vo and Ms. Jacob, I understand that Mr. Vo wishes to

22     change his plea and enter a plea of guilty.  Is that correct?

23              MS. JACOB:  That is correct, Your Honor.

24              THE COURT:  All right.  And do the parties have any

25     objection to proceeding today by video conference pursuant to
```

1    the CARES Act?

2         MS. JACOB:  No, Your Honor.

3         MR. ROMANO:  No objection, Your Honor.

4         THE COURT:  To anyone who is calling in through the

5    public line or participating in this hearing, just a reminder

6    that it is prohibited by local and federal rules from

7    publishing, taking screenshots, broadcasting or retransmitting

8    or recording any portion of this hearing.

9         One housekeeping matter to just let you all know, if you

10   don't know, that the CARES Act is scheduled to expire on

11   May 13th.  There's no indication, at least at this point, that

12   it's going to be renewed.  And therefore, under the law or

13   rules, pleas, sentencings, and arraignments have to be in

14   person.

15        So, Mr. Vo, given the time that Probation needs to prepare

16   a presentence report -- it's always been my preference to do

17   pleas and sentencings in person anyway, because I just have

18   not -- the fact of having someone coming before me, never seeing

19   them in person, never dealing with them in person, just being,

20   well, impersonal, but because so many of these defendants in

21   these January 6 cases are very far away and given the current

22   global pandemic, it has been the most practical solution, to do

23   these remotely.  Going forward after May 13th, pleas and

24   sentencings, including Mr. Vo's sentencing, will have to be in

25   person.

1      Mr. Vo, where are you located?

2           THE DEFENDANT:  I'm currently in Florida, Your Honor.

3           THE COURT:  In Florida?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Okay.  Well, when it comes time to select

6      a sentencing date, we will need to keep travel in mind.

7      Mr. Vo, are you vaccinated?

8           THE DEFENDANT:  No, Your Honor, I'm not.

9           THE COURT:  Okay.  For everyone, vaccinated or not,

10     there are protocols that I require because of the pandemic,

11     including for those people who are not vaccinated a negative

12     COVID test 48 hours before the court appearance.  But those

13     protocols, Mr. Bradley can tell you where to find them.  If

14     they're not posted on my court Web page, they will be.

15     That's all about that.

16     Okay.  Mr. Vo, have you ever pleaded guilty in any court

17     before?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  You have.  In federal or state court?

20           THE DEFENDANT:  State court.

21           THE COURT:  All right.  Well, some of this may be

22     similar.  I mean, over in D.C. Superior Court, the plea

23     inquiries are very similar.  But there may be differences

24     because this is a federal case, and even among federal judges,

25     every judge does it differently.  My plea inquiry, which we're

1    about to embark on, is pretty lengthy, because this is an

2    important decision you're making, and I want to make sure you

3    are fully informed of the consequences of your plea.

4         So as we begin -- before we begin, I am going to ask

5    Mr. Bradley, my courtroom deputy, to place Mr. Vo under oath.

6         (Defendant sworn.)

7              COURTROOM DEPUTY:  Thank you.  You may put your hand

8    down.

9              THE COURT:  All right.  Mr. Vo, you are now under

10   oath, and I must ask you certain questions to ensure that you

11   are competent to plead guilty, that you understand your rights

12   to a trial and the rights that you're giving up by pleading

13   guilty, and that your plea is knowing and voluntary.

14        So the first thing is, because you're now under oath, if

15   you do not answer my questions truthfully, you could be

16   prosecuted for perjury or for making a false statement, and any

17   false answers you give here could be used against you in that

18   prosecution.

19        Do you understand?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Now, the decision you're making today is a

22   very, very important one, and it shouldn't be entered into

23   lightly.  Therefore, at any point during this hearing, if I ask

24   you a question and you don't understand it, either because you

25   didn't hear it or you just don't understand it, you should not

1  guess as to what you think the right answer is.  There's no

2  right answer.  The only right answer is the truth.  And so if

3  you don't understand a question, you should just say I don't

4  understand your question or I didn't hear.  I will either repeat

5  it, explain it, or allow you to discuss it with your lawyer in

6  private.  We're not going to rush through this, because it's an

7  important decision and it affects your rights.

8         Do you understand?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  What is your full name?

11             THE DEFENDANT:  It is Antony Vo.

12             THE COURT:  And how old are you, Mr. Vo?

13             THE DEFENDANT:  I am 29 years old.

14             THE COURT:  How far did you go in school?

15             THE DEFENDANT:  I finished my bachelor's of science

16  degree.

17             THE COURT:  All right.  Now, I ask this of every

18  defendant simply because of the amount of paperwork that's

19  involved in this case.

20        Can you read and write?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  All right.  And I'm not going to ask you

23  where you were born, but I also ask this of every defendant

24  pleading guilty.  It is important -- or inform you.  It is

25  important for you to know that if you are not a U.S. citizen,

there are certain things that may result from you pleading

guilty here today.  If you are not a U.S. citizen, you may be

deported, and that deportation will occur following the

completion of any sentence that I impose.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Also, if you're not a U.S. citizen, your

conviction may prevent you from obtaining citizenship or

permanent residence in the future or may result in you being

excluded from the United States after deportation.

Now, have you taken any alcohol or drugs in the last 48

hours or any medicine that could affect your ability to

understand what you're doing by pleading guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you received any treatment recently

for any type of mental illness or emotional disturbance or

addiction to narcotic drugs of any kind?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you completely satisfied with the

services of your lawyer, Ms. Jacob, in this case?

THE DEFENDANT:  Yes, I am, Your Honor.

THE COURT:  Have you had enough time to talk with

Ms. Jacob to discuss the charges against you and the

government's plea offer and whether or not you should accept it?

THE DEFENDANT:  Yes, I have, Your Honor.

1          THE COURT:  Have you received a copy of the criminal

2   information pending against you?  Those are the written charges

3   made against you in this case.

4          THE DEFENDANT:  Yes, I have, Your Honor.

5          THE COURT:  And have you read the charges and fully

6   discussed the charges and the case in general with Ms. Jacob?

7          THE DEFENDANT:  Yes, I have, Your Honor.

8          THE COURT:  Counsel, do either of you have any

9   question as to Mr. Vo's competence to plead at this time?

10  Ms. Jacob?

11         MS. JACOB:  No, Your Honor.

12         THE COURT:  Mr. Romano?

13         MR. ROMANO:  No, Your Honor.

14         THE COURT:  Okay.  Based on the answers that have been

15  provided here to me today, as well as my previous observations

16  of Mr. Vo, I find that Mr. Vo is fully competent and capable of

17  entering an informed plea.

18      So that's the first portion, Mr. Vo, and now we will move

19  on to the most complicated portion, which is me asking you

20  questions to determine whether your plea is knowing, that is,

21  whether you understand the rights that you're giving up.

22      Again, some of these questions may be complicated, and if

23  you don't understand them, just say can I talk to my lawyer.

24  That's totally fine.

25      You are forfeiting any right -- now, you are being charged

1    with misdemeanors.  And so you're pleading guilty to a

2    misdemeanor.  It is unclear -- were any of these counts jury

3    demandable?  Okay.

4        So two of your counts are jury demandable.  You are

5    pleading guilty to a count that is not jury demandable.  And

6    therefore, you have not executed what's called a Waiver of Trial

7    form, that is, waiving your rights to a jury trial on that

8    count, because you're not entitled to a jury trial on the counts

9    you're pleading guilty to.

10       But had you gone to trial on all the charges against you,

11   you would have been entitled to a jury trial.  And that means

12   that if you chose not to plead guilty and went to trial on all

13   the charges against you, you would have been entitled to have

14   your case heard by 12 citizens of the District of Columbia who

15   will determine your guilt or innocence based on evidence

16   presented in this courtroom.

17       Do you understand that?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  All right.  If you had a trial, you would

20   have a right to be represented by your lawyer at that trial and

21   at every other stage of the proceeding and, if necessary, have

22   the Court appoint counsel for you.

23       Do you understand that?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  If you had a trial, you would have the

right through your lawyer to confront and cross-examine any
witnesses against you.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And if you had a trial, you would have the
right if you wished to present your own witnesses and the right
to subpoena them to require them to testify in your defense.
You would also have the right to testify and to present evidence
on your own behalf if you wanted to.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, you would not have to testify or to
present any evidence at trial if you didn't want to, because
it's the government's job, it is their burden to prove you
guilty beyond a reasonable doubt, and you cannot be forced to
incriminate yourself or present evidence of your own guilt.  And
if you decided not to testify or present any evidence, that
decision could not be held against you.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, unless and until I accept your guilty
plea, you are presumed by the law to be innocent, because it's
the government's burden to prove your guilt beyond a reasonable
doubt, and until it does, you are presumed innocent and cannot
be convicted at trial.

1          Do you understand?

2               THE DEFENDANT:  Yes, Your Honor.

3               THE COURT:  Now, if you went to trial and you were

4     convicted, you would have a right to appeal your conviction to

5     the Court of Appeals and to have a lawyer help you prepare your

6     appeal.

7          Do you understand?

8               THE DEFENDANT:  Yes, Your Honor.

9               THE COURT:  Now, if you plead guilty, by pleading

10    guilty, you are giving up all your rights to appeal your

11    conviction of guilt in this case with three exceptions that I'm

12    going to discuss with you.

13         Do you understand that?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  And under the plea agreement, you are also

16    giving up the right to appeal the sentence that I set.

17         Do you understand that?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  And by "sentence," I mean not just the

20    term of imprisonment, but also any fine, forfeiture, award of

21    restitution, or term of supervised release.  All those things

22    are included in the term "sentence."

23         Do you understand?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Okay.  So the three exceptions I

mentioned, despite the fact that you're pleading guilty, you
will still have the right to appeal the sentence that I give you
if the sentence I give you is higher than the statutory maximum,
that is, if I give you what is called an illegal sentence.  In
other words, if the statutory maximum -- if the statute that
you're pleading to carries a maximum sentence of six months, for
example, and I give you 12 months, then you have a right to
appeal that sentence as an illegal sentence.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I have never given an illegal sentence,
but, you know, it's possible.

And the second -- not that I would ever do it, you know,
but just in case.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The second exception is you still have the
right to appeal your sentence if you claim you received
ineffective assistance from your lawyer.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that's why I asked you if you were
fully satisfied with Ms. Jacob's services as your lawyer.

And here is the third.  Under the plea agreement, you're
also giving up your right to challenge your sentence in what is
sometimes called a collateral attack.  A collateral attack is

1   just a challenge that you file at the end of the criminal --

2   your criminal case by a petition of habeas corpus or a motion

3   under Rule 60(b) through the Civil Procedure, a collateral

4   attack.  You are giving up your rights to a collateral attack,

5   except you still have the right to challenge your sentence after

6   your case is over if there is newly discovered evidence, that

7   is, evidence that was not known by your lawyer or the prosecutor

8   at the time I sentenced you.  If that happens, you can file a

9   motion asking -- challenging your sentence because of newly

10  discovered evidence.

11       Do you understand?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  So those are the three exceptions:  If I

14  give you an illegal sentence, you claim you received ineffective

15  assistance from your lawyer, or there's newly discovered

16  evidence.  Other than those three exceptions, you are giving up

17  your right to appeal and challenge your sentence and your

18  conviction.

19       Do you understand?

20            THE DEFENDANT:  Yes, I understand.

21            THE COURT:  Okay.  And there will be no trial.

22       Do you understand that?

23            THE DEFENDANT:  For pleading guilty to 5104 under the

24  parading and picketing, I guess, I plead guilty to parading,

25  standing, or moving in procession --

1          THE COURT:  Hold on a second.  It's difficult to hear

2   what you were saying.  Can you repeat yourself?

3          THE DEFENDANT:  So I guess if I'm pleading guilty to

4   the charge of parading, standing, or moving in procession on the

5   grounds --

6          THE COURT:  Yes, you're pleading guilty to Count 4,

7   which is parading, demonstrating, or picketing in a Capitol

8   building in violation of Title 40 U.S. Code Section

9   5104(e)(2)(G).

10          THE DEFENDANT:  Okay.

11          THE COURT:  And that carries a maximum sentence of six

12   months of imprisonment.

13          THE DEFENDANT:  And what is defined by "parading"?

14          THE COURT:  I'm sorry?

15          MS. JACOB:  Perhaps if Mr. Vo has a question, it would

16   be --

17          THE COURT:  If you have a question about the count

18   you're pleading guilty to, you should definitely stop for a

19   minute and talk to your lawyer.  I'm going to give you five

20   minutes or however much time you need, and then we will come

21   back.

22       Ms. Jacob, why don't you have a sidebar with Mr. Vo.

23          MS. JACOB:  Thank you, Your Honor.

24          THE DEFENDANT:  Thank you.

25       (Defense counsel and defendant conferred.)

1    THE COURT:  All right.  Mr. Vo, you had a question

2    regarding the charge that you are pleading guilty to.  Have you

3    had a chance to discuss that with your lawyer, Ms. Jacob?

4    THE DEFENDANT:  Yes, Your Honor.  I appreciate the

5    time.

6    THE COURT:  Oh, no problem at all.  Has your question

7    been answered?

8    THE DEFENDANT:  Yes.  I'm clear now.

9    THE COURT:  Okay.  Good.

10   Now, having discussed the rights that you have to trial and

11   to appeal and the rights you will be giving up if you plead

12   guilty, do you still want to plead guilty in this case and give

13   up your right to a trial and all the rights I've explained you

14   would have if your case went to trial?

15   THE DEFENDANT:  Yes, Your Honor.

16   THE COURT:  Are you sure?

17   THE DEFENDANT:  Yes.

18   THE COURT:  Okay.  Speak now, though.  I mean, well,

19   we still have some time.  But I really don't want you to stifle

20   any questions or concerns you have.  I want you to raise them

21   here.  This is not an assembly line.  We're not going to rush

22   through this.  This is important, and it's your life.  And I'm

23   not, you know -- I have infinite patience for any questions or

24   concerns you might have, because I really don't want anybody who

25   is not guilty pleading guilty before me, and I really don't want

1    anybody doing this who is not certain about the consequences of

2    what they're doing.

3        So I'm really sincerely telling you that it will not bother

4    me at all if you want to stop at any point --

5            THE DEFENDANT:  Okay.

6            THE COURT:  -- and ask your lawyer some questions.

7        Now, your lawyer and the prosecutor have given me a

8    document called Statement of Offense.  This is an important

9    document because it describes what you, your lawyer, and the

10   prosecutor agreed you did in this case.

11       Have you seen the Statement of Offense?

12           THE DEFENDANT:  Yes, I have, Your Honor.

13           THE COURT:  Have you read it and discussed it fully

14   with your lawyer?

15           THE DEFENDANT:  Yes, I have, Your Honor.

16           THE COURT:  And is that your signature on page 6,

17   which is the last page of the document, on March 11?

18           THE DEFENDANT:  That looks like -- March 11, yes, Your

19   Honor.

20           THE COURT:  Okay.  And by signing that document, did

21   you acknowledge that you read and understood the description of

22   your conduct, of your criminal conduct in this case?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  All right.  So here's the most important

25   question:  Does the Statement of Offense truly and accurately,

1    all of it, describe what you did in this case?

2        Are you reading it?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Oh, good.  Take your time.  Read it.

5    That's good.  I'm glad you are.  That's what I assumed you were

6    doing.

7                THE DEFENDANT:  I suppose there are portions that

8    are -- I guess for the charges that are not on this -- that I'm

9    not pleading guilty to in the plea agreement, it says willfully

10   and knowingly, has that language.  I just don't know --

11               THE COURT:  What paragraph are you talking about?

12               THE DEFENDANT:  Like right before Joseph Foster

13   Henry's signature.  For example --

14               THE COURT:  Oh, page 5?

15               THE DEFENDANT:  Yeah.  Like, I guess, I don't know I

16   willingly and knowingly uttered loud, threatening, or abusive

17   language.  But other than that, I would agree to the --

18               THE COURT:  So wait a second.  Just so we're clear for

19   the record, are you talking about paragraph 12, "The defendant

20   knowingly and voluntarily admits to all the elements of 40

21   U.S.C. Section 5104(e)(2)(G)"?  Is that what you're talking

22   about?

23               THE DEFENDANT:  It makes it a crime, yes.

24               THE COURT:  No, I don't have that.  Hold on.

25               MR. ROMANO:  I thought I heard Mr. Vo mention the name

1    Joseph Henry.  He is the agent in this case, and he would have

2    been the affiant on the arrest warrant.  So I'm wondering if

3    maybe Mr. Vo is looking at a different document than we are.

4            THE COURT:  Oh, Mr. Vo, are you looking at the

5    document captioned "Statement of Offense"?

6            THE DEFENDANT:  Statementoffacts.pdf.

7            THE COURT:  No.  What I'm referring to is a pleading.

8    It's a court document, and it says "Statement of Offense."

9            MS. JACOB:  Mr. Vo, there's two documents you signed,

10   the plea agreement letter, and then the other one is Statement

11   of Offense.

12           THE DEFENDANT:  Okay.  It's titled "Statement of

13   Facts" on the e-mail that you sent me, but that's the one I'm

14   referring to, Statement of Offense.

15           MR. ROMANO:  Those two are not the same thing.  The

16   Statement of Facts would have been the affidavit that Detective

17   Henry signed to --

18           THE COURT:  Statement of Facts, I don't have that.

19   That's not before me.  That's not what I'm accepting for your

20   plea.  What is forming the basis of your plea is the agreed-upon

21   Statement of Offense, which has your signature on page 6 dated

22   March 11, 2022.  That's what I'm referring to.  I don't have

23   before me a Statement of Facts.

24           MS. JACOB:  Your Honor, I sent him a copy of his

25   signed document to his e-mail so that he can pull it up.

```
 1           I just sent it again to you.

 2                 THE DEFENDANT:  Okay.  I guess I had a different.

 3                 THE COURT:  Do you see the document now that's

 4     titled "Statement of Offense"?

 5                 THE DEFENDANT:  Yes, I do.

 6                 THE COURT:  Do you want to take a minute to read it?

 7                 THE DEFENDANT:  Yes, please.

 8                 THE COURT:  Okay.  Sure.  In fact, I definitely want

 9     you to read it.

10           (Pause.)

11                 THE DEFENDANT:  I have reviewed it again, and I would

12     agree with the Statement of Offense, although I guess I have

13     heard that the door that Officer Henry (indiscernible) --

14                 THE COURT:  I'm having a hard time hearing you,

15     Mr. Vo.  Can you either speak into the microphone, maybe

16     enunciate a little more clearly, because I'm having a hard time

17     hearing you.

18           Are you referring to the Statement of Offense?

19                 THE DEFENDANT:  Yes.  I knowingly and voluntarily

20     admit to all elements of 40 U.S.C. 5104(e)(2)(G)?

21                 THE COURT:  Are you referring to a particular

22     paragraph?  Are you referring to the paragraph 12?

23                 THE DEFENDANT:  I'm just -- I guess I'm knowingly and

24     voluntarily admitting to the charge?  Is that what we need to

25     do?
```

1          THE COURT:  No, I realize that's what you're doing.

2   But I have to find that there's sufficient evidence to form a

3   basis for your plea, and that evidence that forms the basis for

4   your plea is set out in the Statement of Offense.  It's been

5   signed by you and your lawyer and the prosecutor as the basis

6   for your plea.

7      But what I have to hear from you is, first of all, have you

8   read the Statement of Offense?

9          THE DEFENDANT:  Yes, I have, Your Honor.

10          THE COURT:  Have you discussed it with your lawyer?

11          THE DEFENDANT:  I have.

12          THE COURT:  And did you sign it?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  And by signing it, did you intend to

15   acknowledge that you've read it and you agree with it?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Okay.  So here's the question I have to

18   ask you, and I do not want you to answer this any way but

19   truthfully, as I want you to answer all the questions:  Is

20   everything in the Statement of Offense, is it true?  Is that

21   what happened?

22          THE DEFENDANT:  Umm, I guess a lot of the facts that

23   happened before I entered, like --

24          THE COURT:  Okay.  So I'm going to direct your

25   attention -- look at paragraphs 1 through 7.  Okay?  Those

1    paragraphs are sort of the government's recitation of the events

2    that led up to your participation.  So what you're saying, in

3    paragraphs 1 through 7, some of that stuff you weren't there

4    for; is that right?

5              THE DEFENDANT:  Right.  I don't know -- like I can't

6    say for sure that, like, I know that's what happened, because I

7    wasn't there.

8              THE COURT:  Okay.  So when it says, for example, in

9    paragraph 2, for example -- well, no.

10         For example, where it says in paragraph 3, "The joint

11   session began at approximately 1:00 p.m.  Shortly thereafter, by

12   approximately 1:30 p.m., the House and Senate adjourned to

13   separate chambers to resolve a particular objection," are you

14   saying you weren't there, so you don't have any personal

15   knowledge of that?  Is that what you're saying?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Okay.  All right.  But let me ask you

18   this:  Starting in paragraph 8 where it says, "Antony Vo's

19   participation in the January 6, 2021, Capitol riot," everything

20   in paragraphs 8, 9, 10, 11, and 12, is that all true?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  You read all those paragraphs?

23             THE DEFENDANT:  7 -- or 8 through 11, yes, I have.

24             THE COURT:  Okay.  And is that all true?

25             THE DEFENDANT:  Triple-checking, yes, the Statement of

1    Offense is all true.

2         THE COURT:  Okay.

3         MR. ROMANO:  Your Honor, I apologize, but I heard

4    Mr. Vo say 8 to 11 when he was looking at those paragraphs, and

5    I know the Court had asked about paragraph 12 as well.

6         THE COURT:  Yes.  Paragraph 12, do you knowingly and

7    voluntarily admit to all the elements of the offense which

8    you're pleading guilty to?

9         THE DEFENDANT:  Yes, I do, 8 through 12.

10        THE COURT:  Okay.  On January 5th or 6th of 2021, did

11   you travel with a family member from Bloomington, Indiana, to

12   Washington, D.C., for the purpose of protesting Congress's

13   certification of the Electoral College results on January 6,

14   2021?

15        THE DEFENDANT:  I left from Indianapolis.

16        THE COURT:  Oh, Indianapolis, not Bloomington?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Although I know Bloomington is a suburb of

19   Indianapolis, because I actually lived there for a year.

20       But yes, did you leave Indianapolis or Indiana to come to

21   D.C.?

22        THE DEFENDANT:  I left Indianapolis to come to D.C. to

23   be a part of the rally, yeah.

24        THE COURT:  I'm sorry.  I spoke over you.  Can you

25   repeat that?

1          THE DEFENDANT:  I was there to be a part of the Trump

2     rally and to -- my purpose of being there was to voice my

3     concern for the election irregularities.

4          THE COURT:  You traveled from Indiana to D.C. to take

5     part -- to attend the rally, the protest rally; is that right?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  On January 6 of 2021, at

8     approximately 2:25 p.m., did you enter the U.S. Capitol through

9     a door on the west side of the Capitol building?

10          THE DEFENDANT:  Probably about that time, yes, I did

11     enter it.

12          THE COURT:  Okay.  At the time -- and you don't have

13     to know the exact time.  That's why I said approximately.

14       At the time you entered the Capitol building on January 6,

15     2021, did you know that you did not have permission to enter the

16     building?

17          THE DEFENDANT:  I think at first -- well, the thing

18     is, like, I was standing at the entrance for the longest time,

19     and I guess I wasn't given much indication, because police

20     officers were standing in front there, and they gave me no

21     indication that I couldn't enter in.  They never said that I

22     couldn't enter in.  They gave a thumb's up to, you know --

23          MS. JACOB:  Your Honor --

24          THE COURT:  Ms. Jacob, hold on one minute.  I just

25     don't see how we can go any further.

1          MS. JACOB:  Your Honor, if I could have a breakout

2     room with him, because I think -- if I may.  I'm sorry.

3          THE COURT:  Sure.  But I have to tell you that, you

4     know, what I'm hearing is cause for concern, because it's

5     inconsistent with the elements.

6        I have another matter at 11:00.  If you want to reschedule

7     this for another day and have further discussions -- I really

8     don't want to rush through this when I've had some red flags

9     raised here.

10          MS. JACOB:  I understand, and I think what Mr. Vo and

11     with a lot of other --

12          THE COURT:  He's being very careful, and he's being

13     very candid, and I appreciate that.  I want him to be candid.  I

14     want him to be honest, and I want him to ask any questions or

15     raise any concerns he has.  So Mr. Vo is doing what -- nothing

16     wrong.

17        It does raise some concerns for me.  What I'm going to do

18     is let you all talk briefly in a breakout room, and then we will

19     come back to see if we need to reschedule this.

20          MS. JACOB:  Thank you.  I would appreciate that.

21          THE COURT:  Okay.  No problem.

22        (Defense counsel and defendant conferred.)

23          MS. JACOB:  Your Honor?

24          THE COURT:  Yes, Ms. Jacob.

25          MS. JACOB:  I think we need a little bit more time to

```
 1     fully answer Mr. Vo's questions and go through this in a little
 2     bit more detail.
 3              THE COURT:  I absolutely agree.  This is not something
 4     I want to rush in to.  And Mr. Vo has some questions.  They
 5     should be answered.  I don't want anybody twisting anybody's arm
 6     here.  And Mr. Vo has an absolute right to have all his concerns
 7     answered, his questions answered.  This is fine.  No problem.
 8     Let's move this to another date.
 9          Mr. Vo, did you have something you wanted to say?
10              THE DEFENDANT:  I just want to say thank you.  That's
11     me saying thank you.
12              THE COURT:  Of course.  This is not an assembly line.
13     We're not going to try and push something through.  If you have
14     questions, they should be answered.
15          All right.  Counsel, have you talked about another date?
16              MS. JACOB:  No, Your Honor, we have not.
17              THE COURT:  How much time do you think you need?
18              MS. JACOB:  Maybe a couple weeks just to be absolutely
19     safe.
20              THE COURT:  That's fine.  I would rather not do this
21     in March.  I've got a very packed schedule this month.  And then
22     I'm away from the 12th through the 21st of April.  So I can do
23     it between -- I can do it next month up to the 12th or after the
24     21st.
25              MS. JACOB:  Is the Court and the government available
```

1   on April 1st?

2           THE COURT:  I am.  I have -- I've got one, two, three,

3   four, five hearings.  Oh, no, not the 1st.  My law clerk is not

4   going to be here.

5           MS. JACOB:  Or maybe April 5th?

6           MR. ROMANO:  The 5th isn't good for me.  I have a

7   bench trial set before Judge McFadden, which we anticipate just

8   taking a day.  So it's possible I would be available the 6th,

9   but I want to leave that free in case the trial spills over.

10          THE COURT:  How about the 8th?

11          MS. JACOB:  Your Honor, I am also -- I'm sorry.

12          MR. ROMANO:  I'm sorry, Ms. Jacob.  Go ahead.

13          MS. JACOB:  I'm going to be out of town the 7th

14   through the 12th.

15          THE COURT:  Okay.  I can do Monday, the 11th.  I'm in

16   town then.

17          MS. JACOB:  Sorry.  I'm not coming back into town,

18   Your Honor, until the 12th.  I'm going to be out the 7th to the

19   12th.

20          THE COURT:  Okay.  So let's look at the 25th in the

21   morning or afternoon.  I have a 1:00 doctor's appointment, but I

22   can do the morning or afternoon of the 25th.

23          MR. ROMANO:  Your Honor, I prefer the afternoon if

24   we're going to set it on the 25th.  I have a wedding which is a

25   Sunday evening wedding.  So I don't think I will be driving back

1   into town until the morning of the 25th.

2            THE COURT:  Okay.  How about the 26th?  The 27th?  I'm

3   available any time any of those dates.

4            MS. JACOB:  The 27th works, Your Honor, for the

5   defense.

6            MR. ROMANO:  For me as well.

7            THE COURT:  Okay.  I might be in a civil jury trial,

8   but I will break so we can do this.  So can we set it at noon on

9   the 27th?

10           MS. JACOB:  Yes, Your Honor.

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Okay.  Mr. Vo, that works for you?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  All right.  The plea, we will resume the

15   plea on April 27th at noon.

16        All right.  Thank you, all.

17        (Proceedings adjourned at 11:22 a.m.)

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3         I, Sara A. Wick, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7         Please Note:  This hearing occurred during the

 8    COVID-19 pandemic and is, therefore, subject to the

 9    technological limitations of court reporting remotely.

10

11

12    /s/ Sara A. Wick                    January 2, 2023

13    SIGNATURE OF COURT REPORTER         DATE

14

15

16

17

18

19

20

21

22

23

24

25
```