UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL OLIVERAS,<br><br>Defendant. | Criminal Action No. 21-738 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Defendant Michael Oliveras faces trial on February 20, 2023 on four misdemeanor charges stemming from his alleged conduct at the U.S. Capitol on January 6, 2021. Pending before the Court is defendant's pre-trial motion to dismiss Counts One and Two, charging him with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), respectively. Def.'s Mot. Dismiss Counts One and Two ("Def.'s Mot."), ECF No. 35. Both challenged charges stem from defendant's alleged presence in "a restricted building and grounds" where the Vice President was "temporarily visiting" on January 6, 2021. Information at 1, ECF No. 7.

Defendant argues that Counts One and Two should be dismissed because, first, for a location to be "a restricted building and grounds," the U.S. Secret Service ("USSS") must so designate the location and, absent such formal designation by USSS with respect to the Capitol on January 6, 2021, § 1752 cannot apply to defendant's offense conduct, Def.'s Mot. at 4–6; and second, because the Capitol could not have been designated "a restricted building or grounds" on January 6, 2021 regardless, as then-Vice President Pence was not "temporarily visiting," Def.'s

1

Mot. at 6–8.  As explained below, these arguments are meritless.  This Court therefore continues to join every other Judge on this Court to have considered—and consistently rejected—these arguments, and defendant's motion to dismiss Counts One and Two is denied.

I. **DISCUSSION**

Both of defendant's arguments boil down to the contention that the Capitol building and grounds on January 6, 2021 did not constitute "a restricted building or grounds," a required element of 18 U.S.C. § 1752.

A. **Designation of "Restricted Areas"**

Defendant claims first that "Section 1752 grants the Treasury Secretary the authority to 'designate by regulations the buildings and grounds which constitute the temporary residences of the President'" and to "'prescribe regulations governing ingress or egress to such buildings and grounds to be posted, cordoned off, or otherwise restricted areas where the President may be visiting,'" noting that when this statute was originally enacted, the USSS was part of the Department of the Treasury.  Def.'s Mot. at 4 (purportedly quoting 18 U.S.C. § 1752(d)).  From this statutory construction, defendant infers that for an area to be "restricted building or grounds" for purposes of § 1752, the area must be "designate[d]" as such by the USSS.  *See* Def.'s Mot. at 4–5.  Since the USSS did not make such a designation, defendant insists the Capitol was not a "restricted building or grounds" and these two counts must be dismissed.  *Id.* at 5–6.

The central problem with this statutory interpretation argument is that the statutory language on which the argument is predicated was removed from the statute in 2006.  When Congress passed the USA PATRIOT Improvement and Reauthorization Act of 2005 ("Reauthorization Act"), Pub. L. No. 109-177, 120 Stat. 192 (2006), Congress removed the authority (and responsibility) of the Secretary of the Treasury, the USSS, or anyone else to

"designate" the "buildings and grounds which constitute the temporary residences of the President or other person protected by the Secret Service," 18 U.S.C. § 1752(d)(1) (2004), and instead defined the locations covered by § 1752 as "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Reauthorization Act § 602(a)(1)(A), 120 Stat. at 252 (codified at 18 U.S.C. § 1752(a)(1) (2008)). The statute was further reorganized in 2012 to proscribe certain conduct simply in "any restricted building or grounds" and then separately defining "restricted buildings or grounds" as including, *inter alia*, "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Federal Restricted Buildings and Grounds Improvement Act of 2011 § 2, Pub. L. No. 112-98, 126 Stat. 263, 263–64 (2012) (codified at 18 U.S.C. § 1752(a), (c)(1)(B)). That language remains in force.

The plain meaning of the current text of § 1752 contains no requirement that anyone, including the USSS, formally "designate the area 'restricted.'" Def.'s Mot. at 5. As the government correctly notes, it is not appropriate to look past the text and tease out an extra-textual requirement, because "[s]ection 1752's text is clear" such that "the judicial inquiry is complete" after comprehending the words' "unambiguous" meaning. Gov't's Opp'n Def.'s Mot. Dismiss Counts One and Two of the Information ("Gov't's Opp'n") at 5, ECF No. 43 (quoting *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020)). To be sure, the USSS is still relevant to the definition of "restricted building or grounds" given that the Vice President is not expressly named in the statute but rather is included by his indisputable status as a "person protected by the Secret Service." *See* 18 U.S.C. § 1752(c)(2) (defining such a person as "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by

3

Presidential memorandum, when such person has not declined such protection"); *id.* at § 3056(a)(1) (authorizing USSS protection of the Vice President). Nevertheless, nothing about this text or any other authority supports defendant's leap to the conclusion that "[s]ince it is the Secret Service who protects the President or 'other person,' it is the Secret Service who must designate the area 'restricted.'" Def.'s Mot. at 5. If anything, the statutory history recounted above demonstrates a movement away from a formal "designation" process to one that operates automatically by virtue of the presence of a Secret Service protectee.

### B. "Temporarily Visiting"

Next, defendant argues that that § 1752 does not apply because then-Vice President Pence was not, in defendant's view, "temporarily visiting" the Capitol on January 6, 2021. *See* Def.'s Mot. at 6–8. As support for his strained reading of this fairly straightforward phrase, defendant makes three claims, asserting, first, that the Vice President's residence and ordinary workplace in the District of Columbia militates against him being a temporary visitor to the Capitol, as a federal government building in that District. *Id.* at 7. Second, defendant objects to the term "temporarily" because a "permanent office" for the Vice President exists in the Capitol for the Vice President's use in "his official capacity as the 'President of the Senate.'" *Id.* Finally, defendant contends that the Vice President was not "visiting" at all because he was at the Capitol working, "carrying out his sworn official duties to [sic] by 'presiding,' over the vote count ceremony." *Id.* at 7–8. Every Judge on this Court, including the undersigned, to consider these same challenges has rejected these exercises in wordsmithing and fabricating ambiguity, and no persuasive reason is presented here to deviate from this uniform and consistent denial of the arguments raised by defendant.

4

Common sense easily resolves these challenges to Counts One and Two. Despite having a limited role as President of, and tiebreaker for, the Senate, U.S. CONST. art. I, § 3, cl. 4, the Vice President is generally regarded as an executive branch officer, *see id.* art. II, § 1, cl. 1, and generally works in locations other than the Capitol. The fact that the Vice President has a space set aside in the Capitol for occasional use—notably, not the location where Vice President Pence was working inside the Capitol on January 6, 2021—makes this official no less a "visitor" and no less "temporary" when making an occasional appearance on the premises of the Capitol. *See United States v. Williams*, Case No. 21-cr-618 (ABJ), 2022 WL 2237301, *19-20 (D.D.C. June 22, 2022). Likewise, the Vice President's ordinary residence in the District of Columbia cannot have the repercussions that defendant suggests: namely, that the Vice President cannot be deemed to "temporarily visit" any place within the District of Columbia. Nor does the Vice President's presence for official duties by presiding over a session of Congress make him any less of a temporary visitor because a government official can clearly appear somewhere temporarily and still be doing official work in the process. Defendant cites to several cases where a President or Vice President was deemed to be "temporarily visiting" at rallies or out-of-town functions, *see* Def.'s Mot. at 8, but the fact that those situations clearly qualify does not mean that the situation on January 6 does not likewise count.

Even if the words "temporarily visiting" were at all ambiguous—a view at odds with a plain reading of the words—the structure of the statute makes clear that defendant's preferred reading would produce absurd results. Under § 1752, certain conduct is criminalized in certain sensitive areas around both the President and the Vice President. The residences of both, whether the occupant is present or not, are covered at all times. 18 U.S.C. § 1752(c)(1)(A). When either official is "temporarily visiting" some other location, a *de facto* bubble follows him

5

or her and affords similar protection. *Id.* § 1752(c)(1)(B). All of this makes sense. Defendant's interpretation, however, would inexplicably pop that bubble for an ill-defined set of destinations where the President or Vice President's presence is sufficiently "frequent" or the reason for their presence sufficiently "official." The Court declines to introduce such needless ambiguity into a simple statutory phrase.

\* \* \*

It is worth noting in closing that Judges on this Court have consistently rejected arguments similar to those of defendant. *See United States v. McHugh*, 583 F. Supp. 3d 1, 32–36 (D.D.C. 2022) (Bates, J.); *United States v. Bozell*, No. 21-cr-216, 2022 WL 474144, at \*8–9 (D.D.C. Feb. 16, 2022) (Bates, J.); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 27–28 (D.D.C. 2021) (Boasberg, J.); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at \*14–16 (D.D.C. Mar. 14, 2022) (Contreras, J.); *United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at \*13–16 (D.D.C. Mar. 19, 2022) (Friedman, J.); Mem. & Order at 2–5, *United States v. Williams*, No. 21-cr-377 (D.D.C. June 8, 2022), ECF No. 88 (Howell, C.J.); *United States v. Nordean*, No. 21-cr-175, 2021 WL 6134595, at \*18–19 (D.D.C. Dec. 28, 2021) (Kelly, J.); *United States v. Grider*, No. 21-cr-022, 2022 WL 3016775, at \*7 (D.D.C. July 29, 2022) (Kollar-Kotelly, J.); *United States v. Bingert*, No. 21-cr-91, 2022 WL 1659163, at \*14 (D.D.C. May 25, 2022) (Lamberth, J.); *United States v. Griffin*, 549 F. Supp. 3d 49, 53–57 (D.D.C. 2021) (McFadden, J.); Omnibus Order at 3–4, *United States v. Caldwell*, No. 21-cr-28 (D.D.C. Sept. 14 2021), ECF No. 415 (Mehta, J.). While these cases may not be binding, defendant makes no effort whatsoever to address or show any deficiency in the reasoning in any of these decisions— and this Court finds them to remain persuasive.

## II. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's Motion to Dismiss Counts One and Two, ECF No. 35, is **DENIED**.

**SO ORDERED.**

Date: January 17, 2023

_____
BERYL A. HOWELL
Chief Judge