UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL OLIVERAS,<br><br>Defendant. | Criminal Action No. 21-738 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Defendant Michael Oliveras faces trial on February 20, 2023 on four misdemeanor charges stemming from his alleged conduct at the U.S. Capitol on January 6, 2021. Pending before the Court is Oliveras's pre-trial motion to transfer venue to the District of New Jersey. Def.'s Mot. Transfer Venue ("Def.'s Mot.") at 1, ECF No. 36. According to Oliveras, he cannot obtain a fair and impartial trial related to the events of January 6, 2021, in the District of Columbia. For the reasons discussed below, and consistent with this Court's previous disposition of virtually identical arguments by other defendants facing charges for offense conduct at the U.S. Capitol on January 6, 2021, the motion is denied.

**I.  DISCUSSION**

Defendant contends that a transfer of venue for trial of this matter is warranted both to obtain a fair jury and for his own convenience. Each reason is addressed separately below and neither is persuasive.

**A.  Proceedings will not be transferred under Federal Rule of Criminal Procedure 21(a) for prejudice.**

The right to an impartial jury is constitutionally enshrined by the Fifth and Sixth Amendments, but its primary safeguard is in the *voir dire* process. *See United States v.*

1

*Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976) (en banc). In this Circuit, it is "well established procedure" to deny pre-*voir dire* requests for a change of venue; only once the *voir dire* process reveals that an impartial jury cannot be selected should a change of venue occur. *Id.* at 60–64. In extreme cases of "extraordinary local prejudice," however, juror prejudice should be presumed. *United States v. Skilling*, 561 U.S. 358, 378–81 (2010). *Skilling* guides courts to consider three factors in determining whether this presumption should attach: (1) "the size and characteristics of the community in which the crime occurred," (2) the presence of "blatantly prejudicial information" in news stories available to jurors, and (3) the time elapsed between the alleged crime and trial. *Id.* at 382. Contrary to defendant's arguments, and much like in *Skilling* itself, none of these factors weighs in favor of transferring venue.

As to the first *Skilling* factor—the size and characteristics of the District of Columbia—defendant's arguments about the nature of D.C. residents fail to establish that a fair jury cannot be found in the District. Further, they reveal Oliveras's caricatured assumptions about a diverse city that comprises far more than Capitol Hill. First, Oliveras argues that "a huge proportion" of D.C. residents are "closely connected to the federal government" because they work for the federal government or law enforcement groups, or because they know someone who does. Def.'s Mot. at 4–5. Federal employees, the motion contends, were uniquely affected by the attack on the Capitol because "[t]he government has characterized the events of January 6 . . . as an attack on our elections, government institutions generally, and democracy as a whole," suggesting that "District residents closely connected to the government are more likely to view themselves as the direct victims." Def.'s Mot. at 5. Under this logic, however, virtually no district would satisfy Oliveras: the direct victims of an attack on "democracy as a whole" comprises the entire American polity. *See United States v. Haldeman*, 559 F.2d 31, 64 n.43

(D.C. Cir. 1976) ("Scandal at the highest levels of federal government is simply not a local crime of peculiar interest to the residents of the District of Columbia.").[1]

Oliveras next argues that District of Columbia residents were "deeply traumatized" by the attack on the Capitol and its aftermath, including the city-wide curfew, enhanced law enforcement presence, and state of emergency. Def.'s Mot. at 5–6. To be sure, the immediate local impact on the residents of D.C. was undoubtedly substantial, but this fact alone is insufficient to necessitate transfer. Courts have declined to transfer venue in cases involving far more visceral local effects. *See, e.g., In re Tsarnaev*, 780 F.3d 14, 16 (1st Cir. 2015) (upholding district court's denial of venue transfer in prosecution of Boston Marathon bomber, whose actions killed three, injured hundreds, and resulted in a shelter-in-place order); *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) (upholding denial of venue transfer in prosecution of 1993 World Trade Center bomber, whose actions killed six and injured thousands). Moreover, only limited areas of D.C. in the immediate vicinity of the U.S. Capitol were subjected to enhanced law enforcement presence and all of the most visible security steps necessitated by the January 6, 2021 attack on the Capitol have long since disappeared.

Nor do the voting patterns of D.C. residents, another basis for Oliveras's argument, Def.'s Mot. at 7, give rise to a presumption of prejudice in this case. The D.C. Circuit, sitting *en banc*, has already rejected the argument that D.C. residents are incapable of fairness in highly politically-charged criminal prosecutions. *Haldeman*, 559 F.2d at 64, n.43. Biden voters will constitute substantial share of any jury pool, even outside of this District—after all, President Biden prevailed in the 2020 presidential election garnering over 7 million more votes than his opponent.

---

[1] Oliveras's argument that D.C. residents who know federal employees or law enforcement officers cannot be impartial is merely a more attenuated branch of this argument, and even less convincing.

As to the second *Skilling* factor—pretrial publicity—the extensive nature of local media coverage of the events of January 6, 2021 and their aftermath does not necessitate transfer. Defendant portrays the District of Columbia as "saturat[ed]" with coverage of the events of January 6, 2021 that is "almost entirely unprecedented" in its "volume, depth of coverage, and duration of the reporting," which coverage uses language that is "especially charged and inflammatory" and in some cases has been "factually inaccurate." Def.'s Mot. at 9–11. The mere fact of extensive and even hostile coverage is not sufficient to presume prejudice: "In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case," and presuming these jurors' prejudice would create an "impossible standard." *Haldeman*, 559 F.2d at 60 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961)). *Accord Murphy v. Florida*, 421 U.S. 794, 800 (1975) (holding that extensive press coverage about a defendant's previous trials and convictions did not corrupt the fairness of the jurors).

As defendant acknowledges, "some in the jury pool may not have heard of Mr. Oliveras specifically." Def's Mot. at 12. That is likely a vast understatement and this Court would be surprised if *anyone* in the jury pool has heard of this defendant. Indeed, defendant has pointed to no specific news report about himself to suggest that jurors would recognize him from coverage of January 6, 2021, and *voir dire* will draw out whether jurors have seen any media reports about him specifically. Oliveras's absence from recent publicity stands in stark contrast with the "foundation precedent" for this question, *Rideau v. Louisiana*, 373 U.S. 723 (1963), which involved news stories with "blatantly prejudicial information," namely, a televised in-custody confession by the defendant to the crimes for which he would be tried. *Skilling*, 561 U.S. at 379, 382. The Supreme Court held that the broadcast at issue in that case "in a very real sense was

4

Rideau's trial—at which he pleaded guilty to murder." *Rideau*, 373 U.S. at 726. Here, by contrast, the public is unlikely to even recognize Oliveras.

Recent media coverage of the attack on the Capitol may even be *helpful* to this defendant. The U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol has held several hearings over this past year. These hearings and ensuing media coverage have shifted media focus from the rioters to the actions of high-level officials. Rather than containing a "confession or other blatantly prejudicial information" about defendant, *Skilling*, 561 U.S. at 382, recent local and national news coverage about the attack on the Capitol has concerned the responsibility of persons other than this defendant.[2]

The final *Skilling* factor—the elapsed time between the charged conduct and the trial—also weighs against Oliveras. Nearly two years after the attack on the Capitol, the curfew and state of emergency have long since lifted; residents have resumed their daily lives, if they ever paused them; the National Mall has returned to its role as the host of kickball league competitions rather than barricades and police. The First Circuit held that two years after the Boston Marathon Bombings was sufficient for the "decibel level of publicity about the crimes themselves to drop and community passions to diminish." *Tsarnaev*, 780 F.3d at 22. So too here: any jurors who carry the memory of January 6 particularly heavily such that he or she cannot be fair to the defendant can be ferreted out in *voir dire*.

---

[2] Similar logic applies to undermine Oliveras's argument that statements made by this Court, and later reported by the media, support prejudice. The article to which defendant cites, *see* Def.'s Mot. at 12 & n.5 (citing Kyle Cheney and Josh Gerstein, *'Almost schizophrenic': Judge rips DOJ approach to Jan. 6 prosecutions*, POLITICO (Oct. 28, 2021), https://www.politico.com/news/2021/10/28/almost-schizophrenic-judge-rips-doj-approach-to-jan-6-prosecutions-517442), references the Court's observation about the government's "scorching rhetoric" used to describe the seriousness of the attack on the U.S. Capitol in a case where prosecutors charged merely a petty offense, Class B misdemeanor and described those who entered the Capitol building as "mere trespassers." *Id.* This critique of the *government*'s approach in litigating January 6-related cases was focused on *government* conduct without mentioning any defendant in particular, further shielding Oliveras and those similarly situated from any prejudicial sentiment by prospective jurors. *Voir dire* is also available to ensure the selection of only jurors with an unencumbered ability to decide issues before them, regardless of media reporting or statements made by the president, any member of Congress, or Judges in this Court or any other.

Judges on this Court have consistently rejected arguments similar to that of defendant. *See, e.g.*, *United States v. Bender*, No. 21-508, Memorandum & Order, ECF No. 78 (D.D.C. Nov. 22, 2022) (denying Def.'s Mot. Change Venue, ECF No. 49) (Howell, C.J.); *United States v. Ballenger*, 2022 WL 16533872 (D.D.C. Oct. 28, 2022) (Boasberg, J.); *United States v. Eicher*, 2022 WL 11737926 (D.D.C. Oct. 20, 2022) (Kollar-Kotelly, J.); *United States v. Nassif*, 2022 WL 4130841, at *8–11 (D.D.C. Sept. 12, 2022) (Bates, J.); *United States v. Herrera,* 21-cr-619, Memorandum & Order, ECF No. 54 (D.D.C. Aug. 4, 2022) (denying Def.'s Mot. to Change Venue, ECF No. 36) (Howell, C.J.); *United States v. Bledsoe,* 21-cr-204-1, Min. Order (July 15, 2022) (denying Def.'s Mot. to Change Venue, ECF No. 190) (Howell, C.J.); *United States v. Bochene,* 2022 WL 123893 (D.D.C. Jan. 12, 2022) (Moss, J.); *United States v. Garcia*, 2022 WL 2904352 (D.D.C. July 22, 2022) (Berman Jackson, J.); *United States v. Rhodes*, 2022 WL 2315554 (D.D.C. June 28, 2022) (Mehta, J.); *United States v. Williams,* 21-cr-377, Min. Order (June 10, 2022) (denying Def.'s Mot. to Change Venue, ECF No. 40) (Howell, C.J.). Oliveras does not acknowledge this brick wall of decisions by this Court that have already rejected his arguments, *see generally* Def.'s Mot. at 12–13, and makes no effort whatsoever to address or show any deficiency in the reasoning in any of the other decisions issued by this Judge and every other Judge on this Court denying venue transfer motions. This Court finds those decisions to remain persuasive.

### B. Proceedings will not be transferred under Federal Rule of Criminal Procedure 21(b) for convenience.

Finally, Oliveras requests that venue be transferred pursuant to Federal Rule of Criminal Procedure 21(b), which permits transfer "for the convenience of the parties, any victim, and the witnesses." Def.'s Mot. at 13–14. Defendant argues that a change in venue to the District of New Jersey will allow him to remain closer to his family and job and reduce his and his

6

counsel's travel costs to the District of Columbia. These arguments do not justify a Rule 21(b) transfer of venue.

As the government correctly notes, there is a constitutionally rooted "general presumption that a criminal prosecution should be retained in the original district." Gov't's Opp'n Def.'s Mot. Transfer Venue ("Gov't's Opp'n") at 13–14, ECF No. 42 (quoting *United States v. Bowdoin*, 770 F. Supp. 2d 133, 138 (D.D.C. 2011)). A Rule 21(b) change in venue is only justified where the defendant demonstrates that trial in the district where the crime occurred "would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *Bowdoin*, 770 F. Supp. 2d at 138 (internal quotation omitted). The ten factors to be considered as part of this inquiry are the:

> (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption to defendant's business if the case is not transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964); *see also Bochene*, 2022 WL 123893, at *1. Here, these factors strongly support retaining this prosecution in the District of Columbia. The location of the events at issue is here, as are the key law enforcement witnesses and the assigned prosecutors. *See* Gov't's Opp'n at 14–15. As a result, while defendant and his counsel will incur expenses traveling to D.C., so too would the government if it had to arrange travel to New Jersey for its counsel and numerous D.C.-based witnesses. *See id.* at 14. Oliveras readily traveled to D.C. for the events of January 6, 2021, and the fact that he may be inconvenienced by the need to travel here once more to stand trial for the offense conduct he allegedly engaged in while here, does not outweigh the many other factors establishing that retaining venue in D.C. best serves the overall interests of convenience.

## II. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's Motion to Change Venue, ECF No. 36, is **DENIED.**

**SO ORDERED.**

Date: January 17, 2023

_____
BERYL A. HOWELL
Chief Judge