UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANTONY VO,**<br><br>        **Defendant.** | Case No. 1:21-cr-0509 (TSC) |

**DEFENDANT'S REPLY TO THE SUPPLEMENTAL AUTHORITY RELATED TO DEFENDANT'S FACIAL CHALLENGE TO 40 U.S.C. §5104(e)(2)(G)**

Mr. Vo, through undersigned counsel, submits this reply to the government's notice of supplemental authority filed on January 24, 2023. [ECF 50 ("Gov't Notice. of Supp. Auth.")]. Part of the government's notice concerns the motion styled Second Motion to Dismiss Count IV of the Information Based on a Facial Challenge to challenges 40 U.S.C. § 5104(e)(2)(G) (June 29, 2022). [ECF 27]. *See also*, Memorandum of Points and Authorities in Support of Defendant's Second Motion to Dismiss Count IV of the Information Based on a Facial Challenge to 40 U.S.C. § 5104(e)(2)(G) (June 29, 2022). [ECF 27-1. ("Def. Mem. In Supp.")]. The Government filed the Government's Opposition to Defendant's Motion to Dismiss Count Four of the Information (July 26, 2022) [ECF 31. "Gov't Opp."]. Mr. Vo filed a Reply Memorandum of Points and Authorities in Support of Defendant's Second Motion to Dismiss Count IV of the Information Based on a Facial Challenge to 40 U.S.C. § 5104(e)(2)(G) (August 3, 2022). [ECF 34]. ("Def. Reply.")].

1

The Gov't Notice of Supp. Auth. includes reference to *United States* v. *Nassif,* 1:21-CR-00421 (JDB), 2022 WL 4130841 (September 12, 2022), a copy of which was attached to the Gov't Notice of Supp. Authority. [ECF 50-3 ("*Nassif* Opinion")].

Mr. Vo here files this reply related to Defendant's Facial Challenge to 40 U.S.C. § 5104(e)(2)(G). ("Def. Reply to Supp. Auth.") to address the import of the *Nassif* decision.

## ARGUMENT

In his initial motion to dismiss, Mr. Vo applied the reasonableness test as described *Bynum v. U.S. Capitol Police Bd.,* 93 F. Supp. 2d 50, 53 (D.D.C. 2000). This test includes asking whether there is any advantage to 40 U.S.C. § 5104(e)(2)(G) given other provisions in 40 U.S.C. § 5104 that address disorderly or disruptive conduct. *Nassif*, however, did not ask this question. The Vo analysis also includes a modern review of the problems with relying on dictionary definitions of "demonstrate," which is also absent from the discussion in *Nassif*. The interpretation of 40 U.S.C. § 5104(e)(2)(G) in the *Nassif* Opinion, much as the interpretation in *United States v. Rivera*, Crim. No. 21-060 (CKK) WL 2187851 (D.D.C. Jun. 17, 2022), does not properly address the issues addressed by Mr. Vo, which are critical to the First and Fifth Amendment. Moreover, as discussed below a case cited in *Nassif* illustrates Mr. Vo's central argument.

The statute at issue – 40 U.S.C. §5104(e)(2)(G) – criminalizes conduct constituting First Amendment modes of expression *because* such conduct is a First

2

Amendment mode of expression. There is no qualifier in the text. The proper, Constitutional, alternative route is to regulate using crowd management terms rather than First Amendment modes of expression terms. In many cases, 40 U.S.C. §5104(e)(2)(D), or something that could be similarly drafted, addresses disruptive conduct -- whether it is in the context of a demonstration or otherwise.

The First and Fifth Amendments do not bar crowd management rules in the Capitol. However, punishing people because of First Amendment modes of communication without regard to whether the expressive conduct is also disruptive conduct violates the First and Fifth Amendment. *Bynum* overturned regulations promulgated under 40 U.S.C. §5104(e)(2)(G) on First and Fifth Amendment grounds. The *Bynum* court held that:

> The Government has a legitimate interest in ensuring the activities of Congress proceed without disruption, and Congress may enact reasonable statutes, and its agents may issue reasonable regulations, to further that interest. *Id*. at 56.

*Bynum* overturned regulations by applying a disruptive/non-disruptive distinction that is not on the text. With respect to the First Amendment the *Bynum* Court states:

> The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve. While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive…*Id*. at 57 (Citations omitted)

With respect to Due Process and unconstitutional vagueness, the *Bynum* Court states, in part:

3

> In fact, the definition of "demonstration" in the regulation encompasses all expressive conduct, whether disruptive or not …. *Id.* at 58.

*See also Lederman v. U.S.*, 291 F.3d 36 (D.C. Cir. 2002) (reviewing facial First Amendment challenge to a regulatory prohibition on demonstration activities outside Capitol building). As stated in *Lederman*,

> We hold only that, as currently written, the demonstration ban imposes "a serious loss to speech . . . for a disproportionately small governmental gain," *Citing White House Vigil for the ERA Comm. v. Clark,* 746 F.2d 1518, 1544 (D.C. Cir. 1984)(Wald, J. concurring in the judgement in part and dissenting in part on other grounds). *Lederman* at 46.

The "reasonableness" analysis is about the trade-offs between the reasons for restricting First Amendment activity and the loss from 1) restricting First Amendment Activities, 2) overbreadth under the First Amendment, 3) overbreadth problems under the Fifth, 4) Vagueness and Fair Notice issues under the Fifth Amendment, 5) selective enforcement issues under the Fifth Amendment. .

The Court in *Nassif* noted that it "need not decide whether 40 USC §5104(e)(2)(G) bars only disruptive conduct to conclude that it is not overbroad; instead, it is enough that the statute is limited to the interior of the Capitol building, is view point, neutral, and is reasonable in light of the statute's purposes." *Nassif* at 4. But the reasonableness test itself asks, among other issues, whether the statute, and any judicial construction, has a negative impact on non-disruptive, First Amendments modes of expression. The question of how much non-disruptive, First Amendment activity is needlessly banned is fully relevant to the reasonableness test.

The Court in *Nassif* also discusses the reasonableness test when it argues that the statute "targets activities that Congress reasonably could have concluded would disrupt its legislative process." *Nassif* 2022 WL 413 0841 at *5. The reasonableness test, however, requires further analysis. We know there can be disorderly and disruptive activity in the context of demonstrations. However, there can also be peaceful, demonstrative and expressive activity that has no disorderly or disruptive impact inside the halls of Congress. Targeting requires language that does not needlessly prohibit peaceful, demonstrative and expressive activity that is not disruptive. Congress gave no indication why 40 U.S.C. §5104(e)(2)(G) was necessary at all given 40 U.S.C. §5104(e)(2)(D) and other provisions that do not ban First Amendment modes of expression.

The *Nassif* decision does not consider a wide range of non-disruptive First Amendment activity, including, for example, symbolic dressing as a group. As the *Bynum* court noted, a regulation that allows discretion to restrict behavior merely because it conveys a message or because it has a propensity to attract a crowd of onlookers cannot survive a due process challenge. *Bynum,* 93 F. Supp. 2d at 58.

The *Nassif* court stated that "40 U.S.C. §5104(e)(2)(G) prohibits taking part in an organized demonstration or parade that advocates a particular viewpoint…." *Nassif*, 2022 WL 413 0841at *5. However, the disruptive/non-disruptive distinction, which is the Constitutional underpinning of *Bynum*, should be included in the discussion. There are many examples of non-disruptive expressive activity that are

5

not necessarily distinguished when viewing the prohibition as an organized demonstration that advocates a particular viewpoint.

The *Nassif* Opinion then turns to the term "demonstration" using language from dictionaries.  The *Nassif* Opinion suggests that such a term could include "to make a public demonstration" or "to make a public display of sentiment for or against a person or cause." *Nassif*, 2022 WL 413 0841at *6.  However, this definition could also apply to parties that attend public hearings in Congress as witnesses, particularly if they use a display.

The *Nassif* Opinion also does not address the problems created in *Rivera. See* Def. Mem. in Supp. at 20-21. *Rivera* makes the relationship of a defendant to social media, communication to and through social media, and potentially use of smart phones for those purposes, elements to create liability under §5104(e)(2)(G).  The consequences of such an approach are extremely broad and a needless attack on the First Amendment.  Speaking from the Capitol through a phone, broadcasting from a phone, or being part of a large social media discussion is not disruptive and should be protected under the First and Fifth Amendment. .

The *Bynum* Opinion came 20 years before the recent spate of January 6 cases under §5104(e)(2)(G), and before technical advances like smart phones, livestreaming, Facebook, and the wide range of media and social media applications by which a person located in a Capitol Building may communicate. These advances make possible far more potential First Amendment activity. Relying on broad dictionary definitions of the term "demonstrate" as is the basis of

6

*Nassif* and *Rivera* casts an enormous net over non-disruptive First Amendment activity, part of which may be in the Capitol.

The *Nassif* Opinion cites to *United States v. Barry*, Magistrate Case No. 18-00111 (RMM) (D.D.C. Jun. 5, 2019), a case that illustrates Mr. Vo's argument. *Nassif* 2022 WL 413 0841at *5.  In *Barry*, the defendant pulled out a large sign and stood on top of his chair and allegedly began shouting in the direction of the hearing committee members.  *Barry* at 2. Barry's conduct was fully covered under 40 USC §5104(e)(2)(D) because his conduct was disruptive.  There is no additional benefit to 40 USC §5104(e)(2)(G) which flatly bans 3 modes of First Amendment expression including in the hallways of Capitol Buildings. Yet, in *Barry*, both charges applied. What if Mr. Barry had loudly argued with someone in the audience for personal reasons?  Such a fact pattern would still be disruptive and arguably not a demonstration.  The disruption is the same and there should not be greater sanctions for one circumstance than the other.  In addition to needless overbreadth and vagueness under the First and Fifth Amendment, there is also higher penalties for the same conduct in the context of First Amendment expression than when there is no First Amendment expression.  First Amendment expression becomes a criminal penalty enhancement. That should not be the case. There is no valid reason for First Amendment modes of expression to be criminally punished ahead of similar non-First Amendment Activity that poses the same risk.

7

Lastly, *Nassif* also does not address Mr. Vo's argument that, Congressman and Senators and related staff are allowed to do exactly the same thing with no threat of criminal sanctions. If a non-government employee or visitor is authorized to be in the Capitol building, the Government should not criminalize actions of those individuals when not criminalizing the identical actions of members of Congress with respect to modes of First Amendment expression.

## CONCLUSION

For the forgoing reasons, and reasons stated in Def. Mem. In Supp. and Def. Reply, Mr. Vo respectfully requests that the Court enter an order finding 40 U.S.C. § 5104(e)(2)(G) fails the First and Fifth Amendments of the U.S. Constitution for the reasons stated above and also dismissing Count IV of the Information based on such a finding.

Dated: January 27, 2023                                    Respectfully submitted,

                                                            A.J. KRAMER
                                                            FEDERAL PUBLIC DEFENDER


                                                            _____/s/_____
                                                            Maria N. Jacob
                                                            Assistant Federal Public Defender
                                                            D.C. Bar No. 1031486
                                                            625 Indiana Ave. NW, Ste. 550


                                                            Nandan Kenkeremath
                                                            DC Bar 384732
                                                            USDC DC 384732

                                                            *Counsel for Defendant*