IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ANTONY VO,

Defendant.

CASE NO. 21-cr-509 (TSC)

### UNITED STATES' OMNIBUS MOTION IN *LIMINE*

The government hereby moves in *limine* to preclude the following defense arguments and to admit certain evidence during trial in this case. Motions in *limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government presents these issues to the Court in an effort to prepare this case for an efficient trial. For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

I.    MOTION IN *LIMINE* NO. 1: TO LIMIT UNNECESSARY DISCUSSION OF SECURITY-RELATED TOPICS

The government moves to preclude the admission of any evidence, through cross-examination or through the defense case-in-chief, or argument by counsel, regarding certain sensitive, security-related topics. Specifically, the government seeks to preclude evidence or argument concerning 1) the exact locations of U.S. Capitol Police ("USCP") security cameras and 2) the protocols of the U.S. Secret Service ("USSS"). As explained below, these two topics have little to no probative value but would compromise significant security interests if needlessly

disclosed to the public. The government does not intend to elicit any of the following topics in its case-in-chief and, for that reason, cross-examination on such topics may simply be beyond the scope of direct examination and impermissible for that reason. *See* Fed. R. Evid. 611(b). To the extent that Defendant seeks to argue that any of the following topics are relevant and within the scope of the government's examination, the government requests an order under Fed. R. Evid. 401, 403 and 611(b) foreclosing unnecessary cross-examination on these topics.

> A.       This Court has the Discretion to Limit Cross-Examination of Witnesses at Trial.

It is well-established that a district court has the discretion to limit cross examination. *See Alford v. United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin*, 101

F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp*, 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related to an affirmative defense and not elicited through direct exam). Preventing the defendant from exploring the topics identified above will not infringe his Confrontation Clause right because those topics are not relevant to an element at issue in the case, provide no basis for impeaching the U.S. Capitol Police and Secret Service witnesses, and do not implicate any affirmative defense.

More specifically, even if marginally relevant, this Court may exclude evidence under Federal Rule of Evidence 403 on the ground that its marginal probative value is significantly outweighed by the national security risks implicated by that evidence's use at trial. The Supreme Court has recognized that trial courts' balancing under Federal Rule of Evidence 403 should account for concerns extrinsic to the litigation, such as "witness' safety." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988). Accordingly, courts have properly balanced the sensitivity of national security-related information against the probative value of such information to the case, excluding the evidence where its relevance is slight. *See, e.g., United States v. Marshall*, 544 F. Supp. 3d 1032, 1042 (D. Mont. 2021); *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005); *cf. United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (endorsing balancing test in context of Classified Information Procedures Act).

This Court should take the same step here for the reasons given below. The marginal probative value of the exact positions of USCP cameras, the camera map, and U.S. Secret Service

protocols are substantially outweighed by national security concerns, and any probative value can be addressed without compromising the protective functions of government agencies.

        B.      <u>Exact Locations of USCP Cameras</u>

The government produced the exact locations of USCP surveillance cameras ("CCTV"), including maps showing each camera's physical location, in discovery pursuant to the Highly Sensitive designation of the Protective Order. The purpose of that disclosure was to permit defendant to make use of such information in order to identify evidence and prepare for trial. However, those locations do not serve to illuminate any fact of consequence that is before the jury. To the extent CCTV footage is introduced, a general description of its location and the footage from the camera itself will make clear what the camera recorded and what it did not. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from evidence of specific camera locations or the map of all CCTV cameras.

On the other hand, the national security implications at stake are significant. The U.S. Capitol Police's surveillance system serves an important and ongoing function in protecting Congress. Furthermore, the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the Capitol Police Board before they may be released. If a map that revealed the location of all Capitol cameras were introduced in this trial, or in any trial, it would become available to the general public and foreign adversaries. Anyone could discern the Capitol Building's camera coverage as of January 6, 2021, including parts of the Capitol where cameras were not then installed.

Accordingly, the security considerations of introducing this evidence clearly outweigh significantly any marginal probative value of the specific locations or map of CCTV cameras.

C.      Secret Service Protocols

In Counts One and Two of the Information, the defendant, Antony Vo, is charged with violating 18 U.S.C. §§ 1752(a)(1) and (2) by knowingly entering or remaining in a restricted building or grounds without lawful authority, and knowingly, and with intent to impede or disrupt the orderly conduct of Government business and official functions, engaging in disorderly or disruptive conduct in, or within proximity of, any restricted building or grounds, when such conduct does in fact impede or disrupt Government business and official functions during the breach of the United States Capitol on January 6, 2021.

To meet its burden of proof at trial, the government may call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect former Vice President Mike Pence and his immediate family members, all of whom were present at the Capitol. The witness would further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members. The purpose of this testimony would be to explain—in part—the bases for enhanced security controls at the Capitol on January 6 as well as establish elements of several charges. With respect to Counts One and Two, that the Vice President was visiting the Capitol building on January 6, 2021, rendering the Capitol building and its grounds a "restricted building or ground" under 18 U.S.C. § 1752(c)(1)(B) (defining such term to include "any posted, cordoned off, or otherwise restricted areas—. . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting").

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive Branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the function

performed by the Secret Service as testified to on direct exam, in this case protecting the Vice

President and his family. The defendant should be specifically foreclosed from questioning the

witnesses about the following:

1.  Secret Service protocols related to the locations where protectees or their motorcades
    are taken at the Capitol or other government buildings when emergencies occur;

2.  Details about the nature of Secret Service protective details, such as the number and
    type of agents the Secret Service assigns to protectees.

These topics have no relevance to any issue at controversy, and even if they did, any

relevance would be substantially outweighed by the danger of prejudicing the government's

legitimate interest in the safety of senior government officials. *See* Fed. R. Evid. 403.

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope

of direct examination should be excluded as irrelevant or unduly prejudicial. But the Secret

Service's general protocols about relocation for safety should be excluded as irrelevant because

such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid.

401 (defining relevant evidence). Similarly, evidence of the nature of Secret Service protective

details is not relevant in this case. The number or type of assigned agents on a protective detail

does not alter the probability that the Capitol and its grounds were restricted at the time. None of

the other elements to be proven, or available defenses, implicates further testimony from the Secret

Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is

substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and

waste of time. *See United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding

that information having broader national security concerns can be excluded under Rule 403

because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can

result in undue prejudice that substantially outweighs any probative value). Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id*.

> D.      The Government Requests an In Camera Proceeding to Determine the Admissibility of Certain Evidence

If this court determines that a hearing is necessary to determine the admissibility of testimony by a witness from the U.S. Capitol Police or Secret Service, the government requests the hearing be conducted *in camera* and ex parte. As noted, in this case, disclosure of certain information could prove detrimental to the Secret Service's ability to protect high-level government officials and affect our national security. The disclosure of the specific location of USCP cameras could prove detrimental to USCP's ability to protect members of Congress and their staff.  Courts have found such considerations justify ex parte, in camera proceedings. *See Gilmore v. Palestinian Interim Self-Gov't Auth*., 843 F.3d 958, 968 (D.C. Cir. 2016) (finding that while ex parte proceedings should be employed to resolve discovery disputes only in extraordinary circumstances, they are appropriate where disclosure could lead to substantial adverse consequences, such as where a party sought intelligence materials generated in the midst of a geopolitical conflict); *United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera ex parte proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same).

II.      <u>MOTION IN *LIMINE* NO. 2:  TO PRECLUDE DEFENDANT FROM ARGUING OR COMMENTING IN A MANNER THAT ENCOURAGES JURY NULLIFICATION, WHETHER DURING *VOIR DIRE* OR DURING TRIAL.</u>

The Defendant should be prohibited from making arguments or attempting to introduce non-relevant evidence that encourages jury nullification. As the D.C. Circuit has made clear,

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983); *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (same). Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant").

The government has identified the following subject areas that are not relevant to the issues before the jury and that could serve as an improper invitation for the jury to nullify its fact-finding and conclusions under the law. The Court should preclude any reference to these issues, either during *voir dire*, argument or questioning by counsel, or in the defense case-in-chief. The Defendant may face significant prison time were he to be found guilty here, and the Defendant should not be permitted to arouse the jury's sympathy by introducing any evidence of or attempting to argue about the hardships of prison, the potential effect of incarceration on Defendant's family, or the possibility that a significant portion of his life may be spent in prison. It is black-letter law that the jury should not consider such penalties in reaching its verdict. *See, e.g.*, *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (a defendant's possible sentence "should never be

considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused."); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"). Indeed, courts in this district often give a jury instruction stating exactly that: "The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all." D.C. Redbook 2.505.

Thus, the above-mentioned issues are irrelevant, and any reference to them would invite jury nullification and should be excluded. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim . . . is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

III.   MOTION IN *LIMINE* NO. 3:  TO ADMIT DEFENDANT'S OUT-OF-COURT STATEMENTS AS STATEMENTS BY A PARTY OPPONENT UNDER FEDERAL RULE OF EVIDENCE 801(D)(2)(A)

Under Federal Rule of Evidence 801(d)(2)(A), an opposing party's statement is not hearsay if it "was made by the party in an individual or representative capacity," Fed. R. Evid. 801(d)(2)(A), or if it "is one the party manifested that it adopted or believed to be true" *id*. 801(d)(2)(B). *See, e.g., United States v. Blake*, 195 F. Supp. 3d 605, 609 (S.D.N.Y. 2016) ("[A] party's own statement, if offered against him, is not hearsay."). Here, the government intends to introduce the statements of the Defendant, including those made in communications (e.g., text messages, emails, Facebook posts) prior to, on and after January 6. Assuming proper foundation

is laid that the statements were made by the Defendant, the Court should admit these statements

when offered by the government against Defendant—even if offered for the truth of the matters

asserted—because they are statements by a party-opponent and, therefore, non-hearsay evidence

under Rule 801(d)(2)(A).

IV.     MOTION IN *LIMINE* NO. 4: TO PRECLUDE DEFENDANT'S USE OF HIS OWN
        OUT-OF-COURT STATEMENTS AS INADMISSIBLE HEARSAY

While the government may use the statements of a defendant against him under Federal

Rule of Evidence 801(d)(2), the defense may not admit a defendant's own out-of-court statements,

which are hearsay. *See e.g.*, *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) (A

defendant cannot present "self-serving hearsay" to the jury without the benefit of cross-

examination by the United States). Defendants who choose not to testify and subject themselves

to cross-examination thus do not have the right to present self-serving hearsay statements. *See*

*United States v. Wilkerson*, 84 F.3d 692 (4th Cir. 1996). "[W]hen the defendant seeks to introduce

his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."

*United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016), quoting *United States v. Marin*,

669 F.2d 73, 84 (2d Cir. 1982).

Nor does Federal Rule of Evidence 106, the "Rule of Completeness," provide an

unbounded end-run around that prohibition against hearsay. That rule provides that, "[i]f a party

introduces all or part of a writing or recorded statement, an adverse party may require the

introduction, at that time, of any other part—or any other writing or recorded statement—that in

fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 directs the Court to

"permit such limited portions [of a statement] to be contemporaneously introduced as will remove

the distortion that otherwise would accompany the prosecution's evidence." *United States v.*

*Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986) (emphasis added). The rule does not "empower[] a

court to admit unrelated hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (emphasis added). "The provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted to incorporate the common-law requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context . . . In almost all cases we think Rule 106 will be invoked rarely and for a limited purpose." *Sutton*, 801 F.2d at 1369.

Thus, Rule 106 only applies when the government's introduction of a defendant's statements is "misleading because of a lack of context," leading to a "distortion" of the defendant's meaning. *Sutton*, 801 F.2d at 1369; *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008) (rule applies only if the statements offered by the defendant are necessary "to prevent the Government from offering a 'misleadingly-tailored snippet'"). By contrast, the rule cannot be used to generally introduce exculpatory portions of a statement merely because they "they were made contemporaneously with other self-inculpatory statements" offered by the government. *Ortega*, 203 F.3d at 682; *United States v. Williston*, 862 F.3d 1023, 1038 (10th Cir. 2017) ("The rule of completeness . . . does not give an interview declarant a general right to introduce selected statements to try to counter the statements in the proponent's offered segment."). Courts therefore routinely preclude defendants from offering their own exculpatory or otherwise potentially relevant statements, even if those statements appear close in time to those offered by the government.  Accordingly, the Government respectfully moves that any relevant statements of the Defendant offered by the Defendant be strictly limited to those necessary to correct a misleading statement offered by the government (under Rule 106) or otherwise admissible under an exception to the hearsay rules.

V.       MOTION IN *LIMINE* NO. 5: TO ADMIT CERTAIN STATUTES AND RECORDS

   A.  Judicial Notice of the Federal Electoral College Certification Law

   The proceedings that took place on January 6, 2021, were mandated by, and directed under the authority of, several constitutional and federal statutory provisions. In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021, to proceed with the Electoral College Certification Official Proceeding, he quoted directly from, and cited to, Title 3, United States Code, Section 17.

   The government requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15-18 relating to the Electoral College Certification Official Proceedings. These are attached as Exhibits 1-6. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012). The government makes this request even though "no motion is required in order for the court to take judicial notice." *Moore v. Reno*, No. 00-5180, 2000 U.S. App. LEXIS 35425; 2000 WL 1838862 (D.D.C. Nov. 14, 2000). Further, "where a federal prosecution hinges on an interpretation or application of state law, it is the district court's function to explain the relevant state law to the jury." S*ee United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 49 (1st Cir. 2004). Here, that principle indicates the jury is entitled to an explanation of the relevant statutes and constitutional provisions that govern the certification of the Electoral College vote.

   B.  Admission of the Congressional Record and S. Con. Res 1

   The Congressional proceedings on January 6, 2021, were memorialized in the Congressional Record. The Congressional Record is a public record under Federal Rule of Evidence 902(5). *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503-504 (S.D.N.Y. 2017) (Congressional transcripts). The government may introduce portions of the

Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and Vice President of the United States," S. Con. Res. 1, 117th Cong. (2021). These records should be admitted as self-authenticating. Rule 902 provides that a record can be "self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. One example is an "Official Publication[]," defined as any "book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). The congressional record qualifies as one such congressionally published record, and so is self-authenticating under Rule 902(5).

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court grant the government's seven motions in *limine* as described in this omnibus motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Lynnett M. Wagner* _____
        LYNNETT M. WAGNER
        Nebraska Bar No. 21606
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Tel: (402) 661-3700
        Email: lynnett.m.wagner@usdoj.gov

And:    /s/ Eric Boylan _____
        Eric Boylan
        Texas Bar No. 24105519
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Email: eric.boylan@usdoj.gov