IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ANTONY VO,

Defendant.

CASE NO. 21-cr-509 (TSC)

## UNITED STATES' MOTION IN *LIMINE* REGARDING AUTHENTICATION OF VIDEO AND CELLPHONE EVIDENCE

## INTRODUCTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motion in *limine* regarding the authentication of video and cellphone evidence at trial.

The riot at, and attack on, the United States Capitol Building was an event of unparalleled size and scope. Much of the event was recorded on video: on surveillance footage captured by the U.S. Capitol Police ("USCP") cameras; on Metropolitan Police Department ("MPD") body-worn cameras; on cameras held by journalists, and on cameras and phones held by members of the mob, including the Defendant, Antony Vo. The government's case at trial will rely heavily on such evidence to explain the Defendant's specific conduct, to contextualize through other contemporaneous events, and to give the jury a sense of the riot as a whole. This memorandum outlines the types of exhibits the government plans to use and seeks a pretrial ruling on their authenticity.

## BACKGROUND

I.  FEDERAL RULES OF EVIDENCE 901 AND 902

The Federal Rule of Evidence 901 and 902 identify the requirements for authenticating or identifying evidence.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.
>
> […]
>
> (3) Comparison by an Expert Witness or the Trier of Fact. A comparison with an authenticated specimen by an expert witness or the trier of fact.
>
> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
>
> […]
>
> (9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.
>
> […]

Fed. R. Evid. 901(b)(1), (3), (4), (9).

Under Federal Rule of Evidence 902, certain items of evidence "are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted." Rule 902 provides a list of types of evidence that meet this standard, including the following:

> […]

(11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

[…]

(13) Certified Records Generated by an Electronic Process or System.  A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

(14) Certified Data Copied from an Electronic Device, Storage Medium, or File:  Fed. R. Evid. 902(11), (13) (14).  Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

These evidentiary rules are applicable to evidence that the Government will offer at trial in this case.

II.   APPLICATION OF FRE 901 AND 902 TO AUTHENTICATION OF EVIDENCE

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir.

2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349. *See also, e.g., Belfast*, 611 F.3d at 819 ("Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g., United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting United States v. Stewart, 104 F.3d 1377, 1383 (D.C. Cir. 1997)). *See, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the

pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable juror could reach the same conclusion regarding authenticity. *See, e.g., United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would

support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

A number of the Government's exhibits are business records. For business records, Fed. R. Evid. 803(6), specifically section (D), permits certificates by records custodians, rather than live testimony, to authenticate records of a regularly conducted activity by certifying that other parts of the rule have been met. The certification requirement is set out in Fed. R. Evid. 902(11) (for domestic records). A certification under Rule 902(11) establishes that the proffered item has satisfied the admissibility requirements for authenticity. Fed. R. Evid. 209, Advisory Committee Notes, 2017 Amendments. Under this provision, the custodian "need not have personal knowledge of the actual creation of the document." *United States v. Vazquez*, Criminal Case No. 21-597 (BAH), 2023 WL 4488910, at *2 (July 12, 2023), *quoting United States v. Adefehinti*, 510 F.3d 319, 325 (D.C. Cir. 2007). The certification requirement in Rule 902(11) also applies to the authentication of electronic evidence (Fed. R. Evid. 902(13)) and for data copied from an electronic device, storage medium, or an electronic file (Fed. R. Evid. 902(14)), which provides for self-authentication through a certification rather than through the testimony of a foundation witness. *See* Fed. R. Evid. 902, Advisory Committee Notes, 2017 Amendments.

## <u>ANALYSIS</u>

The government's evidence will show that all the videos described herein fairly and accurately depict events at the Capitol which are relevant to an issue of consequence in defendant's trial. While the government anticipates that the admission of USCP and MPD video footage will not be controversial, we discuss the evidentiary basis for authentication below. The bulk of the government's argument focuses on authentication of videos from other sources, the distinctive events and characteristics visible in those videos, and the corroboration that can be found from other pieces of evidence.

I.      U.S. CAPITOL POLICE VIDEO FOOTAGE CAN BE AUTHENTICATED
        PURSUANT TO FED. R. EVID. 901(b)(4) AND 901(b)(9)

Admission of footage from USCP's own camera systems is straightforward. The government will present a USCP witness to testify to their surveillance system. This witness will be able to explain how the system is used, that it reliably records and depicts the areas where USCP has installed cameras, and the internal characteristics of videos—such as date and time stamps—which allow USCP to identify and retrieve segments of video. A USCP witness who was present during the attack on the Capitol will be able to explain that the videos used by the government here are consistent with the events that occurred, generally, on January 6, 2021. Such evidence satisfies the requirement of Fed. R. Evid. 901(b)(4), which allows authentication by way of "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." It also accords with the requirements of Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result."

This case will focus on USCP cameras at multiple locations in and around the Capitol Building. For example, the USCP cameras will show rioters breaching the Upper West Terrace Door at approximately 2:33 p.m. The cameras will show USCP encounters with rioters, including the Defendant. Additional video will show the Defendant and other rioters approaching the Capitol from the West, and rioters in various other locations inside the Capitol including the Rotunda, Rotunda Door on the East side of the Capitol Building, and Statutory Hall. The cameras will depict the ongoing breach of and demonstrations within the Capitol as police worked to expel rioters from the Capitol. The USCP camera videos are identified as Series 300 exhibits. Prior to trial, the government will produce shorter segments of the full CCTV videos to show the portions of the recordings that are applicable to this case.

7

II.    BODY-WORN CAMERA FOOTAGE FROM THE METROPOLITAN POLICE
       DEPARTMENT CAN BE AUTHENTICATED PURSUANT O FED. R. EVID.
       901(b)(1)

The admissibility of footage from body-worn cameras, worn by MPD Officers on January

6, 2021, is likewise clear. Either the officer who wore the camera, or any other witness to the

events depicted in the video, can authenticate the video based on their personal knowledge that the

video fairly and accurately depicts the events that occurred. Fed. R. 901(b)(1) (allowing

authentication by "[t]estimony that an item is what it is claimed to be"). This is standard

authentication for any photograph or video. *See, e.g., United States v. Patterson*, 277 F.3d 709,

713 (4th Cir. 2002) ("The necessary foundation for the introduction of a photograph is most

commonly established through eyewitness testimony that the picture accurately depicts the scene

in question[.]"); *United States v. Rembert*, 863 F.2d 1029, 1026 (D.C. Cir. 1988) (noting one

method of authentication occurs where "a sponsoring witness (whether or not he is the

photographer) who has personal knowledge of the scene depicted testifies that the photograph

fairly and accurately portrays that scene").

While MPD officers deployed throughout the Capitol Building and grounds on January 6,

2021, the focus will be on MPD officers in the Upper West Terrace of the Capitol. The Upper

West Terrace is directly west of the U.S. Capitol Building. The government will seek to introduce

portions of MPD body-worn camera videos from approximately nine MPD officers in the Upper

West Terrace.  These videos are identified as Series 700 exhibits. Prior to trial, the government

will produce shorter segments of the full MPD officers' videos, to show the portions of the

recordings that are applicable to this case.

On January 6, by about 12:55 pm, rioters had penetrated USCP perimeters west of the

Capitol and pushed USCP officers back to the West Plaza. MPD officers began arriving in the

West Plaza shortly after 1:10 pm. From then until about 2:30 pm, MPD officers attempted to

maintain a police line that would prevent rioters from penetrating deeper into the Capitol grounds and, ultimately, breaching the Capitol building. At approximately 2:30 p.m., additional MPD officers arrived on the west side of the Capitol building on the Upper West Terrace.  There, the officers faced rioters that had broken through the police lines on the West Plaza, and those rioters that had reached the Upper West Terrace, including the Upper West Terrace door.

Due to the nature of the event—a crowd of rioters pushing against a line of police officers, MPD officers approaching the Upper West Terrace from the North and South—many cameras recorded slightly different angles on the same event. Any single officer who was present there will be able to testify that all the videos fairly and accurately depict what occurred. Fed. R. 901(b)(1)..

III.   THIRD-PARTY VIDEO, IMAGES AND OTHER ELECTRONIC EVIDENCE

The government also intends to offer numerous video clips from sources other than USCP and MPD. Some are from the defendant's own phone, seized the day of his arrest.  Some of these were taken from a reporter who was present in the Capitol that day. Others were taken by the defendant's fellow rioters or other members of the crowd. Many were obtained through open-source means and are publicly available.

A.   Exhibits That Are Self-Authenticating Pursuant to Fed. R. Evid. 902(13) and (14)

For a number of these videos and images, as described further below, the government will establish these exhibits are self authenticating, either as certified domestic records of a regularly conducted activity, certified records generated by an electronic process or system, or certified data compiled from an electronic device.

These self-authenticating exhibits include: (1) sixty-two videos and images from Defendant's Apple iPhone, obtained pursuant to legal process (contained within Series 400 exhibits); (2) six Facebook records produced from the Defendant's account pursuant to a search warrant served on Facebook (contained within Series 500 exhibits), and (3) eight videos taken by

freelance journalist Laura Brickman (Reporter videos) (Exhibits 601, 603, 605, 608, 613, 618, 623, 624). These exhibits are supported by certificates of authenticity pursuant to Fed. R. Evid. 902(11). *See* attached Government's Notification for the Facebook and Reporter records.

    B.    <u>The Authenticity of Other Third-Party Videos and Images Can Be Established Pursuant to Fed. R. Evid. 901(b)(3) and 901(b)(4)</u>

For a number of other third-party videos, as described further below, the government will establish authenticity by asking the jury to compare them with other, authenticated exhibits: USCP, MPD and the self-authenticating videos and images from Defendant's phone, Facebook account and Reporter videos. Fed. R. Evid. 901(b)(3). Footage from these authenticated sources will confirm these other videos are what they purport to be: recordings of the same events, captured from a slightly different perspective, and in some cases depicting events that were not captured by the USCP or MPD systems. The distinctive characteristics of the defendant's attire, combined with the distinctive characteristics of other rioters depicted captured on USCP and MPD footage, will further help support authentication of these exhibits. Fed. R. Evid. 901(b)(4) (authentication by comparison with another authenticated specimen).

In the following sections, the government will describe the USCP, MPD and self-authenticated videos that apply to different locations reflecting the Defendant's actions on January 6. The government will also describe the additional third-party videos that will be properly authenticated under Fed. R. Evid. 901(b)(3), 901(b)(4).

    1.    <u>The Defendant's Actions On The West Front of the Capitol</u>

On the west side of the Capitol, there were scaffoldings that were being set up for the upcoming inaugural ceremonies. The Defendant and his companion approached the Upper West Terrace by climbing stairs within the scaffolding. As the Defendant approached the scaffolding, rioters were climbing on the outside of the scaffolding and stairway.

The Government will seek to introduce videos and images from the Defendant's phone as he approached the Capitol on Pennsylvania Avenue, NW, and as he entered the restricted area on the west side of the Capitol, Series 400 exhibits. The Defendant took photographs using his cell phone within the restricted area beginning at approximately 2:15 p.m. (Exhibits 421 through 433). Also, there are Reporter videos showing the Defendant and other rioters approaching and inside a scaffolding that was being constructed for the upcoming Inaugural events. (Exhibits 601, 603, 605). Further, there is Capitol Police camera footage showing the Defendant on the staircase by the scaffolding, (Exhibit 301).

**Exhibits 602 and 604**:  There are two additional third-party videos showing the Defendant approaching and entering the scaffolding on the West side of the Capitol. These are Exhibit 602 – New Footage Shows What It Was Like Inside the Trump Mob At the Capitol On the Ground, and Exhibit 604 – My DC Experience – Capitol. These videos will be corroborated by USCP footage, the Defendant's videos and images on his phone, and the Reporter videos identified above.

2.     The Defendant's Actions at the Upper West Terrace

The Defendant occupied the Upper West Terrace prior to entering the Capitol. At this location, the Defendant interacted with other rioters and recorded some of these events, including other rioters scaling the Capitol and engaging in other disruptive behavior.

The Government will seek to introduce several videos and images from the Defendant's phone that show him on the Upper West Terrace. (Exhibits 403 through 408, 434 through 442). Additionally, there are nine MPD officer body-worn camera videos at the Upper West Terrace, identified as Series 700 exhibits, which the Government will introduce portions of those videos. Additionally, two of the Reporter videos show the Upper West Terrace, specifically approaching the Upper West Terrace Door (Exhibits 608, 613).

**Exhibits 605, 605A and 610**:  These third-party exhibits include two videos and one still image from a video that show the Upper West Terrace door at approximately the time the Defendant was at or approaching that location, but do not directly show the Defendant. These exhibits are Exhibit 605 - GOPRO0391 (video), Exhibit 605A – Clip of no entry sign (image), and Exhibit 610 - GOPRO391 (video). The third-party videos show both visual images and audio of the rioters approaching the Upper West Terrace door. The image file shows a sign that is present on the inside of the Upper West Terrace doors. These videos will be corroborated by USCP footage, the Defendant's videos and images on his phone, and the Reporter videos identified above.

**Exhibits 606 and 607**:  These third-party videos, Exhibit 606 – Hager 21cr381 20210106_142954 and Exhibit 607 – MCGREW, show the Upper West Terrace door from a vantage on the scaffolding above the West Terrace, showing rioters entering the Upper West Terrace door and the rioters confronting the MPD Officers outside the Upper West Terrace door. These videos will be corroborated by MPD Officer body worn camera footage (Series 700 exhibits).

**Exhibits 609, 610, 611, 612, 614 and 621**:  Additional third-party videos show the rioters moving from the Upper West Terrace and approaching the Upper West Terrace Door. This is the path that Defendant took before entering the Capitol through the Upper West Terrace Door. These exhibits are Exhibit 609 – C0073.MP4; Exhibit 610 – GOPRO391; Exhibit 611 – GOPRO776; Exhibit 612 – police watching; and Exhibit 614 – Hager shortened. An additional video shows the MPD officers retaking the Upper West Terrace Door, which shows the barricades the rioters built to aid their entry into the Capitol. This is Exhibit 621 - .05 YouTube-JosephACamp.  hese videos will be corroborated by MPD body-worn camera (Series 700 exhibits), Defendant Vo's phone videos and images (Exhibits 408, 434 through 442) and Reporter videos (Exhibits 608, 613).

Even for the third-party video that does not directly show Defendant Vo, such video should be authenticated because of several overlapping characteristics between the third-party video and authenticated video. The MPD body worn camera footage, video and images from Defendant Vo's camera, and Reporter videos are contemporaneous with that of the other third-party video. Taken together, these videos authentically depict the scene where the Defendant was on the Upper West Terrace and illegally entering the U.S. Capitol.

3.    The Defendant's Actions in the Capitol and East Plaza

At approximately 2:33 p.m., rioters breached the Upper West Terrace door.  The Defendant entered the Upper West Terrace door at approximately 2:38. The Defendant exited the Capitol building on the East side at approximately 3:05 p.m. During those 27 minutes, the Defendant moved throughout several areas of the Capitol.

The Government will seek to introduce portions of the USCP camera footage from inside the Upper West Terrace door, the Statutory Hall, the Rotunda, and the room between the Rotunda and the exit door to the East Plaza (Series 300 videos). Further, the Government will seek to introduce videos and images from Defendant Vo's phone (Exhibits 409 - 420, 443 - 453, 462) and Reporter videos (Exhibits 618, 623, 624) that show the Defendant in the Capitol or outside on the East Plaza.

**Exhibits 602, 615, 616, 617 and 620**:  Other third-party videos show the rioters entering the Capitol through the Upper West Terrace Door. This includes Exhibit 602 - New Footage Shows What It Was Like Inside The Trump Mob At The Capitol On The Ground; Exhibit 615 - RPReplay_Final1609976622; Exhibit 616 – 423; Exhibit 617 – IMG_0227; Exhibit 619 - 405-McGrew IMG_1558, and Exhibit 620 – Exit Only Sign (image). These videos will be corroborated with USCP Camera footage (Exhibits 302, 303), and Reporter video (Exhibit 618).

13

**Exhibit 622**:  In addition, there is third party video of the Rotunda.  (Exhibit 622 - Never-before-seen January 6 footage from our photographer). This video will be corroborated by video and images from the Defendant's phone (Exhibits 409 through 414, 443 through 448); USCP camera footage (Exhibits 304, 305) and the Reporter video (Exhibits 623, 624).

**Exhibit 625**:  This exhibit is an image taken outside the Capitol on the East side, named Exhibit 625 – Andrew Denney on Twitter. The Defendant appears in this image.  This third-party image will be corroborated by video and images from the Defendant's phone (Exhibits 415 - 420, 449 - 453).

Some of these third-party videos and images show the Defendant and can be authenticated by comparison of Defendant's distinctive clothing and appearance. Even for the third-party video that does not directly show Defendant Vo, such video should be authenticated because of several overlapping characteristics between the third-party video and authenticated video. The MPD body worn camera footage, video and images from Defendant Vo's camera, and Reporter videos are contemporaneous with that of the other third-party video. Taken together, these videos authentically depict the various locations where the Defendant was inside the U.S. Capitol.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule in *limine* that the government's evidence, including the USCP video, MPD body-worn camera video, self-authenticated evidence and other third-party videos and images identified herein meet the authenticity requirements of Fed. R. Evid. 901 and 902.

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Lynnett M. Wagner*
        LYNNETT M. WAGNER
        Nebraska Bar No. 21606
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Tel: (402) 661-3700
        Email: lynnett.m.wagner@usdoj.gov

And:    */s/ Eric Boylan*
        Eric Boylan
        Texas Bar No. 24105519
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        Email: eric.boylan@usdoj.gov