**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-509 (TSC)** |
| | ) | |
| **ANTONY VO,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**MOTION TO DISMISS FOR FAILURE TO PRESERVE AND PRODUCE *BRADY* EVIDENCE**

Mr. Antony Vo respectfully moves this Court to dismiss the Information in this case pursuant to Federal Rule of Criminal Procedure 16, Local Criminal Rule 5.1, and the Due Process Clause of the Fifth Amendment to the United States Constitution because of the government's intentional withholding of materially exculpatory evidence. Mr. Vo respectfully requests a hearing on this motion prior to the beginning of trial on September 18, 2023.

**Introduction**

At the heart of this Motion is the violation of Mr. Vo's due process rights. Mr. Vo's defense at trial is a simple: that he did not knowingly commit crimes and that he did not know that the Capitol building was restricted. The government's response is that Mr. Vo had to have known because of the circumstances surrounding January 6th. The grey area, however, lies within what are reasonably interpreted as mixed signals from law enforcement, that is, evidence that officers and officials stood aside and let individuals into the building. That grey area is what is at issue in this case and this Motion details the government's efforts to suppress evidence supporting the Defense contention that Mr. Vo walked into the Capitol because he reasonably believed that he was permitted to do so.

**BACKGROUND**

Mr. Antony Vo, is a Vietnamese-American young man who, at age 27, came from Indiana with his mother to attend then-President Donald Trump's rally on January 6, 2021. The government alleges that he entered the U.S. Capitol building through the Upper West Terrace doors at approximately 2:38 pm. Central to this case is whether Mr. Vo knew that the building was restricted and whether his conduct was knowing and willful. It is uncontested that Mr. Vo walked through the Upper West Terrace doors without using any force. It is also beyond dispute that he was on the Upper West Terrace when he followed a stream of people through the open Upper West Terrace door and into the Capitol. Finally, the evidence is clear that five officers stood aside just inside the doorway when Mr. Vo entered the Capitol.

On July 26, 2023, the government filed a Motion in Limine to Preclude Entrapment Related Defenses, ECF No. 68. In the Motion, the government aggressively asserted that Mr. Vo should be precluded from arguing that he perceived that officers allowed him to enter the building. In particular, the government noted that at 2:37 p.m., "less than a minute" before Mr. Vo entered the building, video evidence demonstrated that one of five Capitol officers manning the door stated to another person, "No you can't come in. Nobody can come in." ECF No. 68 at 17-18. The government also relied upon a stillshot of a video where officers are told, "It ain't safe for you guys" but the government tellingly does not include a time for that statement. ECF No. 68 at 18.

Although the government appears to understand the relevance of information conveyed to the line of protestors entering through the Upper West Terrace door, it was not until September 11, 2023 – a week before trial – that the government provided, in a case-specific manner, clear and

related *Brady* evidence[1]. Specifically, in its "Revised Trial Exhibit" file, it noted a video where one of the five USCP officers told passing protestors, "I disagree with it but respect it." Govt Exh 628. This exhibit was not included in the initial disclosure of exhibits. When it was finally included, there was no time stamp associated with the statement. Mr. Vo is depicted in the video at 00:02, in line to enter the building. The officer's statement occurs at 00:20-00:22, placing Mr. Vo in the immediate vicinity of an officer whose statement could be reasonably interpreted as permission to enter the building.

On September 11, 2023, the government also provided "potential impeachment information" for two MPD officers. At the same time, but in a file labeled Jencks, the government disclosed for the first time Office of Professional Responsibility report dated March 18, 2021. Although the report is heavily redacted, it contains statements from Sergeant Millard where he acknowledges that he made the statement referred to above and references video of the statement that had been shared on social media. He told OPR that his statement was in response to an individual saying "Thank you for supporting us" and that he replied "I disagree with it, but respect it" and "respect the building." Although the government has not provided a time stamp of the statement, it appears to be around 2:37:43 based upon the clothing of passersby. Mr. Vo passes the same officer less than a minute later. Significantly, the government had produced an additional video showing the same officer say "Treat this place with respect guys." The new late disclosure provides, for the first time, an indication that officers made—and even repeated—comments that could fairly be interpreted as inviting, to multiple protestors as they pass by.

Moreover, in the OPR report, Sergeant Millard states that he did not "see an opportunity to

---

[1] The government did not, however, identify this exculpatory information as *Brady*. It was provided as an exhibit. This was the first time the video was produced in this case.

close or resecure the door." The below depicts the doors approximately four minutes prior to Mr. Vo's entry.




The importance of the accuracy of the officers' perspective is demonstrated by the government's Motion in Limine. Somehow avoiding disclosure of the exculpatory evidence of Sgt. Millard's statements, the government details the officers' perception of what was occurring in its Motion. ECF No. 68 at 19-20.

Moreover, Sgt. Millard's statements to OPR also revealed that the superior officer amongst the five individuals told the other officers "It's not worth it. It's just a building."

On Friday, September 15, 2023, counsel reviewed the so-called Jencks material and requested an unredacted copy of the OPR report from the government. Later in the evening, the government produced redacted copies of reports from all five officers, in addition to a less redacted copy of Sgt. Millard's report and a table of radio calls.

In those reports, the following statements were made by officers.

- "Some did leave though, so that helped but some leaving also gave the indication that the door was able to open for anyone to come back in."
- "I mean personally, I wanted to hold the line there. I wanted to fight them so at least we would give time so if members needed to get out or if things need to be secured, maybe another door could have been secured while we held those people back."
- "Personally yes I [believe there was a failure to take appropriate police action during the incident at the Upper West Terrace Door.] But seeing it from an official's standpoint that was there, I understand the decision. Based on the day, based on what was going on, other locations at the Capitol, we were vastly outnumbered. Who knows whether we would have gotten hurt or worse if we tried to stop them there. But I personally was frustrated that at least we didn't try."
- When viewing the portion where Mr. Vo enters, "This is a result of the department's failures on so many levels here."

Later on September 15th, counsel requested the names of the individuals that passed the officers in the relevant times, their statements to the police and any audio or video footage that might be relevant to these interactions. The government has not yet responded to these requests.

**ARGUMENT**

The government has attempted mightily to prevent Mr. Vo from presenting evidence that corroborated his repeated statements that he was "let in" to the Capitol building on January 6th, claiming that suggestions or invitations from officials were irrelevant because they were not heard by Mr. Vo. At the same time, the government has suppressed the most direct evidence that Mr. Vo and the individuals that he was following into the Capitol reasonably believed that they were

let in. Now, on the eve of trial, the government has produced new information that is central to the defense's theory. Although some of this information could now be used at trial, the government's late disclosure has thwarted the defense from fully investigating its case and finding additional evidence to corroborate its theory. The timing of the initial disclosure is egregious enough – but the prosecution has slowly revealed the exculpatory information in a manner that makes it impossible for the defense to be made whole in time for trial. As a result, the Court has no choice but to dismiss this case with prejudice as a sanction for the government's violation of *Brady*, the Due Process Protection Act, and this District's local rules.

Mr. Vo "has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to [his] guilt . . . or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This District and this Court construe the government's *Brady* obligations broadly. Under Local Rule 5.1, *Brady* information "includes, *but is not limited to*[,]" "[i]nformation that is inconsistent with or tends to negate the defendant's guilt as to any element" of the offense charged, information probative of "an articulated legally cognizable defense theory or recognized affirmative defense" to the offense charged, and "[i]nformation that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial." LCrR 5.1(b)(1), (3)-(4) (emphasis added).

Evidence is "materially exculpatory" if there is any "reasonable probability" that, considering the evidence "collectively, not item by item," the results of trial would be different. *Kyles v. Whitley*, 514 U.S. 419, 433-36 (1995); *see also Bell v. Cone*, 556 U.S. 449, 470 (2009) ("In other words, favorable evidence is subject to constitutionally mandated disclosure when it could reasonably be taken to put the whole case in such a different light as to undermine confidence

in the verdict." (quotation marks and citation omitted)). Significantly, "[t]he question is not whether the defendant would more likely receive a different verdict with the evidence, but whether in its absence he received a fair trial" and sentencing. *Kyles*, 514 U.S. at 434; *see also id.* at 435 ("The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict.").

The government's *Brady* obligations extend to any "others *acting on the government's behalf in the case*." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2009) (emphasis added) (quoting *Kyles*, 514 U.S. at 438); *see also United States v. Linder*, No. 12-cr-22, 2013 WL 812382, at *33 (N.D. Ill. Mar. 5, 2013) ("An 'arm of the prosecution' is any government agent or agency that investigates and provides information specifically aimed at prosecuting a particular accused." (citation omitted)); *United States v. Libby*, 429 F. Supp. 2d 1, 7 n.11 (D.D.C. 2006) (noting the D.C. Circuit's "view that documents will be presumed to be in the government's possession, custody and control" for the purposes of *Brady* and Rule 16 "if the government has both knowledge of and access to the documents").

## I. THE EVIDENCE WAS MATERIALLY EXCULPATORY AND IN THE GOVERNEMNT'S POSSESSION.

Here, it cannot seriously be disputed that the original reports and videos constituted materially exculpatory *Brady* evidence in the government's possession. The evidence was quintessential *Brady* information because it conclusively demonstrated that at the *time and place* Mr. Vo entered the Capitol, officers were making statements that reasonably could be interpreted as permission to enter the building. *See In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 877, 893 (D.C. Cir. 1999) (evidence that impeaches a government witness "is almost invariably 'favorable' to the accused, because by making the government's case less credible it enhances the defendant's chances of acquittal"). And this is not solely impeachment evidence.

Mr. Vo, who had to that point demonstrated no intent to enter the Capitol, found himself in a group of people that was permitted to enter the Capitol. When he reached the doors and saw officers present, that interpretation was verified – the officers stood by and allowed him to enter.




Although only two officers are in view here, three other officers, including Sgt. Millard (the individual who was twice recorded telling individuals to respect the building), are closer to the door.

Here, the evidence possessed an exculpatory value that was readily apparent to the government. The government has tried many versions of this same case, and as noted in its Motion in Limine, is well aware that the lack of knowledge of the restricted area is the primary defense in cases involving misdemeanor offenses. The government cannot claim that it was not aware of the exculpatory and material value of the evidence. Moreover, the government turned its suppressed evidence to its advantage in pretrial litigation by arguing that evidence of such videos is irrelevant even though it was aware of such a video taken within a minute of Mr. Vo's entry that it knew the defense could use.

The government also cannot claim that the evidence was disclosed if it was turned over in the volumes of global discovery involved in January 6th cases generally. The government has provided "case-specific" discovery and repeatedly assured the defense of its understanding of *Brady* obligations. "[T]he government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials." *United States v. Saffarinia*, 424 F.Supp.3d 35, 85 (D.D.C. 2020) (citation omitted); *see also United States v. Bortnovsky,* 820 F.2d 572, 575 (2d Cir. 1987) ("The government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided….'").

The defense is further prejudiced because of the evidence that the government *did* produce (but also failed to identify as Brady). Eighty seconds before Mr. Vo entered the building, a third party GoPro video shows individuals gathered just feet away from Mr. Vo chanting "Let us in!" at the same Upper West Terrace doors. The video shows the perspective of protestors just outside those doors. Within seconds of the beginning of the chant, officers step aside and individuals freely walked into the Capitol. Mr. Vo, at the back of the group, follows their lead and enters also.[2] One can hear protestors thanking the officers as they walk in peacefully and calmly. The report produced on September 15, 2023 corroborates this impression – one of the five officers report that they gave up their position when they realized there were protestors behind them as well.

It cannot seriously be disputed that the evidence "might be expected to play a significant role in [Mr. Vo]'s defense." *Trombetta*, 467 U.S. at 488. Indeed, much of the other evidence from

[2] In its initial exhibits, the government includes a video of the individuals at the front of that group who are attempting to convince officers to allow entrance just prior to the beginning of the "let us in" chant. While one individual is speaking to Sgt. Millard, three others squeeze by and enter the building. The officers appear to then step aside. This conversation is not audible in the "Let us in" video.

the same location at the same time has been identified as exhibits the government had always intended to introduce. What the government left out was the evidence most favorable to Mr. Vo – the admission from Sgt. Millard that he told at least one passing individual, "I disagree with it but respect it" and "Respect the building," as well as the existence of, and documentation relating to, an official investigation into the conduct of the officers who stood by when Mr. Vo and others walked inside for doing exactly that.

Ultimately, whether the prosecution "succeeds or fails" to comply with its "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," "the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is *inescapable*." *Kyles*, 514 U.S. at 437-38 (emphasis added). The government cannot disclaim its knowledge and control of the original video evidence – in fact the reports indicate that the information was known to the government for two and a half years. The suppression of such material evidence violated Mr. Vo's constitutional right to due process and entitles him to relief "irrespective of the good faith or bad faith of the prosecution." *Giglio*, 405 U.S. at 153 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

## II. THE GOVERNMENT'S SUPPRESSION OF THE BRADY EVIDENCE PREVENTED MR. VO FROM PROPERLY PREPARING FOR TRIAL

The immense prejudice against Mr. Vo from the government's suppression is incalculable. That is because the government's failure to provide this evidence and its apparent intentional decision not to identify it as exculpatory has also thwarted Mr. Vo's investigation, violating his Fifth and Sixth Amendment rights.

The government will undoubtedly argue that Mr. Vo has all the information that he needs. But the defense is not required to accept the government's version of events. In particular, it appears that Sgt. Millard at least twice told passersby to respect the building without advising them

that they should not be in the building. But the defense is only aware of those two instances because of two videos that contained audio. The only other information gathered by OPR regarding Sgt. Millard's statements was reported by Sgt. Millard himself. Sgt. Millard experienced trauma that day that may have affected his memory and he had incentive to minimize such interactions while the subject of an OPR investigation.

According to the OPR report, nearly 200 individuals passed Sgt. Millard as he stood at the entrance to the Upper West Terrace. Each of those are individuals have potential exculpatory information because they were present while Sgt. Millard at least twice made statements reasonably interpreted as permission to enter the building. The government is required to identify these individuals for the defense and to provide information in its possession about their interactions with officers as they entered the Capitol.

Under these circumstances, the Court need not find the government acted in bad faith in order to find Mr. Vo's due process rights violated. Nevertheless, the government's "failure to preserve [even] *potentially useful* evidence" "constitute[s] denial of due process of law" when the government acts in bad faith. *Id*. at 58 (emphasis added); *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991). Here, the government's bad faith is evident.

The government first argued in its Motion in Limine that Mr. Vo was not entitled to introduce evidence of the officers' "alleged inaction." ECF No. 68 at 35. At the same time, the government was aware that: 1) the officers did not, in fact, act; 2) the officers' statements went beyond inaction and suggested that entry was permissible; 3) those statements were made within a minute[3] of Mr. Vo's entry, likely influencing the group that he was in. Still, the government

---

[3] The government's withholding of this evidence is even more egregious given its repeated arguments based upon temporal proximity. ECF No. 68 at 12 ("He entered approximately five

chose to: 1) disclose the exculpatory information a week before trial labeled under a file for "Jencks" material; 2) redacted those same documents beyond use; 3) only provided the OPR reports after additional requests and did so three days before trial; 4) suppressed evidence that at least one of the five officers believed that officers failed to take appropriate action; and 5) misleadingly relied upon contrary statements made by officers ("No one is allowed in") while suppressing statements that could be viewed as permitting entry into the Capitol.

Thus, withholding this evidence was *not* "mere negligence or oversight." *Taylor*, 312 F. Supp. 3d at 179. Rather, the government was "motivated by improper purposes or tactical considerations when [it] failed to preserve" this evidence. *Id.* at 177. Unlike in other failure-to-preserve cases, the government here has made a "calculated effort to circumvent the disclosure requirements," *Trombetta*, 467 U.S. at 488, and "engaged in gamesmanship in deciding what evidence to collect and what to leave behind" for this prosecutions, *Taylor*, 312 F. Supp. 3d at 183.

**III. DISMISSAL IS WARRANTED.**

Because of the suppression of evidence in this case, Mr. Vo does not have "a meaningful opportunity to present a complete defense." *Trombetta*, 467 U.S. at 485. The government's failure to provide materially exculpatory evidence violated Mr. Vo's constitutional right to due process and, as a result, this case should be dismissed. Dismissal is the only sanction sufficient to vindicate Mr. Vo's due process rights and prevent similar violations in the future.

This Court may exercise its supervisory authority to dismiss this case. "In the exercise of its supervisory authority, a federal court 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.'" *Bank of Nova Scotia v. United States*,

minutes after the initial breach of the UWT door"); ECF No. 68 at 17 ("The defendant entered the UWT door and passed by [an officer saying you can't come in] less than a minute later.").

487 U.S. 250, 254 (1988) (quoting *United States v. Hastig*, 461 U.S. 499, 505 (1983)); *see also id.* at 264 (Scalia, J., concurring) ("[E]very United States court has an inherent supervisory authority over the proceedings conducted before it, which assuredly includes the power to decline to proceed on the basis of an indictment obtained in violation of the law."). Dismissal of an indictment is appropriate "in narrow circumstances where[,]" as here "the government engaged in serious misconduct and such misconduct prejudiced the defendant[]." *United States v. McLaughlin*, 910 F. Supp. 1054, 1057 (E.D. Pa. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988)).

At minimum, the government's conduct here was reckless, and both the Third and Ninth Circuits have recognized dismissal as an appropriate sanction for a *Brady* violation resulting from reckless government conduct. According to the Third Circuit, "a constitutional violation that results from a reckless disregard for a defendant's constitutional rights constitutes willful misconduct" and therefore justifies dismissal, "because . . . cases [involving deliberate misconduct] call for penalties which are not only corrective but are also highly deterrent." *Government of the Virgin Islands v. Fahie*, 419 F.3d 249, 254-56 (3d Cir. 2005). And the Ninth Circuit likewise has held that "reckless disregard for the prosecution's constitutional obligations" qualifies as "flagrant" prosecutorial misconduct justifying dismissal pursuant to the court's supervisory powers. *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). It has specifically rejected the government argument that dismissal is warranted only in the case of intentional misconduct. *Id.*

If the Court does not order dismissal, the Court should give a missing evidence instruction at trial instructing jurors that the government's failure to produce evidence permits them to infer that the evidence would have been unfavorable to the government and favorable to Mr. Vo. *See*

*United States v. Vega*, 826 F.3d 514, 532 (D.C. Cir. 2016). Mr. Vo should be permitted to argue that further investigation may have revealed that officers were repeating similar statements to other protestors walking through the Upper West Terrace during the relevant time period. To the extent that the government disputes any of Mr. Vo's factual assertions at trial, the jury should draw all inferences and make all material factual findings in favor of Mr. Vo and against the government.

In sum, Mr. Vo cannot receive a fair trial without the ability to investigate and interview witnesses who interacted with USCP officers at the Upper West Terrace around the time Mr. Vo entered the Capitol. He can no longer do that in advance of trial because the government's late and half-hearted Brady disclosure. Due process requires dismissal of the indictment or, at a minimum, relief that would render Mr. Vo whole.

**CONCLUSION**

For the foregoing reasons, and for any other reasons set forth at a hearing on this motion, and that this Court may deem just and proper, Mr. Vo respectfully requests that the Court grant this motion and dismiss this case.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
Eugene Ohm
Kate Adams
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500